UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ISADORA GUGGENHEIM LNP, RN

Civil action:

**VERIFIED COMPLAINT
FOR A MANDATORY
PRELIMINARY INJUNCTION
PURSUANT TO FED. R. CIV.
P. 65; PROHIBITIVE
PRELIMINARY INJUNCTIO
PURSUANT TO FED. R. CIV.
P. 65; INJUNCTIVE RELIEF
PURSUANT TO 42 U.S.C. § 1983
AND DECLARATORY
JUDGMENT PURSUANT TO
28 U.S.C. § 2201 ET SEQ.**

        Plaintiff,

  -against-

James McDonald MD in his official
capacity as Commissioner of NYS
Department of Health;  Joseph A. Giovannetti
in his official capacity as Director of Bureau of
Investigations NYS Department of Health;
Brendan "Doe" (the last name of this defendant
is unknown to the Plaintiff, the individual
intended being an officer and investigator
of the NYS Department of health, in his official
capacity as investigator of  New York State
Department of Health;  "John Doe" and/or
"Mary Roe", the last two names being fictitious
whose identity is unknown to the Plaintiff,
the individual(s) intended being the director
or head officer of the NYS Department of
Health Immunizations Bureau.

        Defendants.
-----------------------------------------------------------X

   The Plaintiff Isadora Guggenheim LNPFH, MT, RPN by her undersigned attorneys,

complaining against the defendants alleges the following pursuant to   files and   complaining

against the defendants hereby sets forth as follows:

1

## IDENTITY OF THE PARTIES

1.      At all of the relevant times hereinafter mentioned, Plaintiff was and at all of the relevant times was and still is a Licensed Nurse Practitioner in Family Health ("LHPFH") and possessed and still possesses license No. 34569. Plaintiff is certified as a Nurse Practitioner with prescriptive privileges.  At all of the relevant times hereinafter mentioned  Plaintiff was and still is a licensed massage therapist and possessed and still possesses license No. 003813. At all of the relevant times hereinafter mentioned Plaintiff was and still is a Registered Professional Nurse ("RON")  and possessed and still possesses an active license No.  668578. At all of the times hereinabove and hereinafter mentioned, Plaintiff possessed and still possesses a Naturopathic Doctor license No. 303 issued by the Connecticut Department of Health. At all of the times hereinabove and hereinafter mentioned the Plaintiff had and still has a principal place of business c/o Second Nature Naturopathic Care LLC.  located at 8 Rockland Place, Nyack, NY 10960.

2.      At all of the relevant times hereinabove and hereinafter mentioned, the Defendant James McDonald MD ("McDonald") was and still is the Commissioner, appointed state official and head executive officer of the Department of Health  ("DOH").

3.      At all of the times hereinabove and hereinafter mentioned McDonald maintained and still maintains a principal place of business in the principal regional office of the  DOH  located at 90 Church Street, New York, NY 10007, 4th Floor, in the county and City of New York within the territorial venue of the U.S. District Court of the Southern District of New York.

4.      Defendant McDonald is sued herein in his official capacity because the Plaintiff is seeking relief against the said Defendant as follows: (a) Pursuant to Fed. R. Civ. P. 65 a prohibitive and a mandatory temporary injunction in the form and substance set forth in this Complaint aimed at prospectively enjoining the defendants, their servants and assigns from: (i) continuously

violating Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the US Constitution; (ii) continuously violating  Plaintiff's Fifth Amendment and Fourteenth Amendment rights to practice her profession without unreasonable government interference; (b) prospective permanent injunctive relief pursuant to 42 U.S.C. § 1983 in the form and substance set forth in this complaint aimed at prospectively enjoining the defendants, their servants and assigns from: (i) continuously violating Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the U.S. Constitution; (ii) continuously violating Plaintiff's Fifth Amendment and Fourteenth Amendment rights to practice her profession without unreasonable government interference; (c) a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. granting the Plaintiff prospective declaratory relief against the defendant as set forth in this Complaint.

5.      At all of the relevant times hereinabove and hereinafter mentioned, the Defendant Joseph Giovannetti ("Giovannetti") was and still is an investigator and the Director of the Bureau of Investigations of the DOH. At all of the times hereinabove and hereinafter mentioned  Defendant Giovannetti maintained and still maintains a principal place of business in the regional office of the  DOH 90 Church Street, New York, NY 10007, 4th Floor, in the county and City of New York within the territorial venue of the US District Court of the Southern District of New York and a principal place of business c/o NYS department of health, Corning Tower, Room 2438 Albany, NY 12237.

6.      Giovannetti is sued herein in his official capacity because the Plaintiff is seeking relief against the said Defendant as follows: (a) Pursuant to Fed. R. Civ. P. 65 a prohibitive and a mandatory temporary injunction in the form and substance set forth in this Complaint aimed at prospectively enjoining the defendants, their servants and assigns from: (i)  continuously violating Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the U.S. Constitution;

3

(ii) continuously violating Plaintiff's Fifth Amendment and Fourteenth Amendment rights to practice her profession without unreasonable government interference; (b) prospective permanent injunctive relief pursuant to 42 U.S.C. § 1983 in the form and substance set forth in this complaint aimed at prospectively enjoining the defendants, their servants and assigns from: (i)  continuously violating Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the US Constitution as set forth in this Complaint; (ii) continuously violating Plaintiff's Fifth Amendment and Fourteenth Amendment rights to practice her profession without unreasonable government interference as set forth in this Complaint; (c) a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. granting the Plaintiff prospective declaratory relief against the defendant as set forth in this Complaint.

7.      At all of the times hereinabove and hereinafter mentioned, upon information and belief the Defendant Brendan "Doe" (hereinafter "Brendan") was and still is an investigator of the DOH.  At all of the times hereinabove and hereinafter mentioned  Defendant Brendan maintained and still maintains a principal place of business in the regional office of the  DOH  located at 90 Church Street, 4th Floor, New York, NY 10007 within the territorial venue of the US District Court for the SDNY.

8.      Defendant Brendan is sued herein in his official capacity because the Plaintiff is seeking relief against the said defendant as follows: (a) Pursuant to Fed. R. Civ. P. 65 a prohibitive and a mandatory temporary injunction in the form and substance set forth in this Complaint aimed at prospectively enjoining the defendants, their servants and assigns from: (i)  continuously violating Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the U.S. Constitution; (ii) continuously violating  Plaintiff's Fifth Amendment and Fourteenth Amendment rights to practice her profession without unreasonable government interference; (b) prospective

permanent injunctive relief pursuant to 42 U.S.C. § 1983 in the form and substance set forth in this complaint aimed at prospectively enjoining the defendants, their servants and assigns from: (i) continuously violating Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the U.S. Constitution; (ii) continuously violating Plaintiff's Fifth Amendment and Fourteenth Amendment rights to practice her profession without unreasonable government interference; (c) a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. granting the Plaintiff prospective declaratory relief against the defendant as set forth in this Complaint.

11.    The defendants John Doe" and/or "Mary Roe", are fictitious names whose identity is unknown to the Plaintiff, the individual(s) intended being the director or head officer of the NYS Department of Health Immunizations Bureau. Upon information and belief, the defendants John Doe and Mary Doe maintain regional offices the regional office of the DOH located at 90 Church Street, 4th Floor, New York, NY 10007 within the territorial venue of the US District Court for the SDNY.

12.    The defendants "John Doe" and/or "Mary Roe", are sued herein in their official capacities as the director or head officer of the NYS Department of Health Immunizations Bureau because the Plaintiff is seeking relief against the said defendant as follows: (a) Pursuant to Fed. R. Civ. P. 65 a prohibitive and a mandatory temporary injunction in the form and substance set forth in this Complaint aimed at prospectively enjoining the defendants, their servants and assigns from: (i) continuously violating Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the U.S. Constitution; (ii) continuously violating Plaintiff's Fifth Amendment and Fourteenth Amendment rights to practice her profession without unreasonable government interference; (b) prospective permanent injunctive relief pursuant to 42 U.S.C. § 1983 in the form and substance set forth in this complaint aimed at prospectively enjoining the defendants, their servants and

assigns from: (i)  continuously violating Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the U.S. Constitution; (ii) continuously violating  Plaintiff's Fifth Amendment and Fourteenth Amendment rights to practice her profession without unreasonable government interference; (c) a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. granting the Plaintiff prospective declaratory relief against the defendant as set forth in this Complaint.

## JURISDCTION

13.     The United States District Court for the Southern District of New York has subject matter federal question jurisdiction over this matter because pursuant to 28 U.S.C. § 1331, the claims set forth herein arise under the Constitution and statutes of the United States, namely the Fifth and Fourteenth amendments of the US Constitution.

## VENUE

14.     Pursuant to 28 USC §1391(b)(1) venue is properly based in the Southern District of New York because all of the defendants maintain a principal place of business at the DOH office located at 90 Church Street, New York, NY 10007, which is located in the territorial venue of the US District Court of the Southern District of New York. Pursuant to 28 USC  §1391(b)(2)  venue is properly based in the Southern District of New York because a substantial part of the events or omissions giving rise to the claim occurred at Plaintiff's place of business Second Nature Naturopathic care LLC located at 8 Rockland Place Nyack, NY 10960 and at defendants' place of business identified above. Both the principal place of business  of the defendants and the place where a substantial part of the events giving rise to this action occurred in New York and Rockland Counties New York which are within the territorial judicial district of the Southern District of New York.

## RELIEF SOUGHT

15.     The Plaintiff is seeking a mandatory preliminary injunction pursuant to Fed. R. Civ. P. 65 mandating that the defendants reinstate Plaintiff's access to the New York State Immunization Information System ("NYSIIS") over which they have exclusive possession and control. Such access is necessary to prevent immediate and continuous harm to the Plaintiff through the continued violation of her Fourteenth Amendment rights as set forth below in this pleading.

16.     The immediate reinstatement of access to NYSIIS is necessary  to allow the Plaintiff to comply with the legal mandates of PHL § 2168, regulations and requirements and to log in information pertaining to vaccine administration pursuant to the Commissioner's regulations and requirements.  The continuous and prospective denial of the same  access to the NYSIIS under the facts of this case amounts to a continuous violation of Plaintiff's due process under the Fourteenth Amendment and a further violation of Plaintiff's constitutional right to practice her profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in this Verified Complaint;

17.     The Plaintiff is seeking a mandatory injunction  pursuant to Fed. R. Civ. Proc. 65 directing the defendants, their agent, servants and assigns  to remove Plaintiff's name and information    posted    in    defendants'    official    web    site    at https://health.ny.gov/prevention/immunization/schools/fraud.htm   (EX A hereto) because the posting violates and prospectively continues to violate Plaintiff's Fourteenth Amendment due process rights and Plaintiff's constitutional right to practice her profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in the Verified Complaint;

18.     The Plaintiff is seeking  a mandatory injunction pursuant to Fed. R. Civ. Proc. 65 directing the defendants, their agents, servants and assigns to revoke their directions given to school                districts                through                their                posting                at https://health.ny.gov/prevention/immunization/schools/fraud.htm which directs that the same school districts reject Plaintiff's vaccination records and to affirmatively mass mail official notices to all school districts in the state advising them that the foregoing instructions have been revoked based upon the grounds stated in the Verified Complaint. Defendants' continuous directives given on their web site violate Plaintiff's Fourteenth Amendment due process rights and Plaintiff's constitutional right to practice her profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in this Verified Complaint.

19.     The Plaintiff is seeking a prohibitive preliminary injunction pursuant to Fed. R. Civ. Proc. 65 prohibiting the defendants their agents servants and assigns from blocking Plaintiff's access to NYSIIS because under the facts of this case this continued action amounts to a continuous violation of Plaintiff's due process under the Fourteenth Amendment and a further violation of Plaintiff's constitutional right to practice her profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in the Verified Complaint.

20.     The Plaintiff is seeking a prohibitive preliminary injunction pursuant to Fed. R. Civ. Proc. 65 prohibiting the defendants from continuing to maintain the posting regarding the Plaintiff                on                their                official                web                site                at https://health.ny.gov/prevention/immunization/schools/fraud.htm based upon the fact that such continued posting amounts to a continuous violation of Plaintiff's due process under the Fourteenth

Amendment and a further violation of Plaintiff's constitutional right to practice her profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in the Verified Complaint.

21.    The Plaintiff is seeking a prohibitive preliminary injunction pursuant to Fed. R. Civ. Proc. 65 prohibiting the defendants from continuing to direct school districts to reject Plaintiff's vaccination records for all of the reasons articulated in the Verified Complaint because such continuous actions taken by the defendants under the facts of this case posting amounts to a continuous violation of Plaintiff's due process under the Fourteenth Amendment and a further violation of Plaintiff's constitutional right to practice her profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in the Verified Complaint.

22.    The Plaintiff is seeking a permanent injunction pursuant to 42 U.S.C. § 1983 prospectively enjoining the state defendants, their agents' servants, and assigns from violating Plaintiff's Fifth and Fourteenth Amendment rights as set forth below in this Complaint and barring the defendants from continuing to violate Plaintiff's constitutional rights through their unauthorized and unconstitutional actions described below in this pleading.

23.    The Plaintiff is seeking a declaratory judgment pursuant to 28 U,S.C, § 2201 et seq. as follows:

(a)    Declaring Defendants' conduct in barring Plaintiff's access to NYSIIS as unconstitutional, and a violation of Plaintiff's Fourteenth and Fifth Amendment rights for all of the reasons articulated hereinabove.

(b)    Declaring the prospective and continuous postings on defendants' official banding site - EX A hereto - and further directing school districts to reject Plaintiff's signed written vaccine

records as acts which are unconstitutional and violative of plaintiff's Fifth and Fourteenth Amendment rights set forth below

## BRIEF STATEMENT OF THE CASE.

24.    This case arises from defendants' multiple initiated and continued violations of Plaintiff's constitutional rights safeguarded by the Fifth and Fourteenth Amendments of the U.S. Constitution. In this case the plaintiff is seeking prospective injunctive and declaratory relief enjoining the state officials from continuing to violate Plaintiff's constitutional rights under the color of the New York investigative process of the Health Department and in an unauthorized fashion acting by administrative fiat while bypassing due process.

25.    Notably none of the defendants and main actors in this action are state agencies charged with the investigation and prosecution of professional nursing conduct. That task is specifically reserved by the legislature who enacted Educ. Law §§ 6510(1)–(9) to  the Board of Nursing in its oversight investigative and adjudicative capacity.

## FACTUAL BACKGROUND

### (i)    Relevant facts pertaining to the Plaintiff.

26.    As stated below, the Plaintiff has impressive professional credentials. She is both a licensed registered nurse and a licensed nurse practitioner in Family Health with prescriptive authority. She is also a licensed naturopathic physician in Connecticut with her designated specialty in primary care.

### (a)    General background.

27.    Plaintiff has an unrestricted active license in New York to practice advance practice nursing with prescriptive rights. Plaintiff was and at all of the relevant times was and still is a

10

Licensed Nurse Practitioner in Family Health ("LHPFH") and possessed and still possesses license No. 34569. Plaintiff is certified as a Nurse Practitioner with prescriptive privileges. EX B hereto. The Plaintiff has no disciplinary enforcement history that relates to her LHPFH license. See Ex B hereto.

28.    At all of the relevant times hereinafter mentioned  Plaintiff was and still is a licensed massage therapist and possessed and still possesses an active New York license No. 003813. See EX C hereto. The Plaintiff has no disciplinary enforcement history that relates to her massage therapist license. See Ex C hereto.

29.    At all of the relevant times hereinafter mentioned  Plaintiff was and still is a Registered Professional Nurse ("RN")  and possessed and still possesses an active New York license No.  668578. EX D hereto. The Plaintiff has no disciplinary enforcement history that relates to her Registered Nurse license. See Ex D  hereto.

30.    At all of the relevant times hereinafter mentioned  Plaintiff was and still is a Naturopathic Physician and possessed and still possesses an active Connecticut license No.  303. EX E hereto. The Plaintiff has no disciplinary enforcement history that relates to her Naturopathic Physician license. See Ex E  hereto.

31.    Plaintiff has been a board certified and licensed primary care naturopathic physician in CT since 2003. Her degree is Doctor of Naturopathy from University of Bridgeport CT. Her license number as a Naturopathic Physician is 303. The university was affiliated with Yale Medical School and the Naturopathic Doctor curriculum was taught by instructors from Yale University. Many classes were physically attended as part of the Yale Medical School program at Yale University.

32.     After graduation form naturopathic medical school Plaintiff started a traditional sponsored Thanksgiving lunch event, broke ground and got contributions for the first herbal garden, created the first community medical fair with media coverage and created the first Naturopathic 911 clinic post 9/11 to treat all affected by 9/11 for free.

33.     New York does not have a Naturopathic Doctor license program or requirement. However, Naturopathic doctors have a legitimate group, called "NYANP in NYS". As part of that group, Dr. Guggenheim  organized a lobby group  and tried  for years on end to get licensure in Albany. The group hired lobbyists for years who failed to help us get a licensure.

34.     Wanting to practice health care  in New York State – Dr. Guggenheim was accepted into a lottery for the accelerated nursing program at Rockland Community College ("RCC")  which would give her a different licensed scope of practice in NYS.

35.     Plaintiff was licensed as a Registered Nurse by the Board of Regents on November 30, 2013. See Ex D hereto.

36.     To further her  career and expand her scope of practice, the Plaintiff applied to Pace University for an Advanced Nurse Practitioner program and attended from 2013 – 2017. According to Plaintiff's perspective, it was a difficult program.

37.     Plaintiff  passed all the requirements to become an Advance Nurse Practitioner. She received an Advance Nurse Practitioner license with prescription privileges from the Board of Regents on January 30, 2018. EX B hereto.

38.     The focus of Plaintiff's practice is functional medicine, complimentary medicine and evidence-based treatment protocols. Dr. Guggenheim  completed 3600 additional required supervised hours with a licensed M.D. – Dr. Janis L. Enzenbacher with a signed collaboration AOPN - physician agreement submitted to NYS Department of Education.

**(b)**    **Relevant facts which precipitated this action and the request for relief.**

39.    This matter started back during the COVID vaccine time when the defendants obsessed with vaccine fraud and became what they are known as the Vaccine Complaint Investigation Team. The checkered history of the defendants who became intoxicated with self-anointed unauthorized powers will be discussed below.

40.    According to the plaintiff, and in her own words, COVID was terrifying and people were dying. In November of 2019, doctor patients came into her office for I.V. Ozone therapy with some kind of illness that was affecting their breathing, heart rate, neurological symptoms, etc. The Plaintiff thought it might be some kind of flu, but the current testing back then was NEGATIVE.

41.    Plaintiff treated several patients whose pulse oximetry was dropping and with one session it climbed back up and stabilized to 96 and above. The more accurate testing did not come out until after the lockdowns in March of 2020. Initially, Dr. Guggenheim did not even have PPE until more information came out.  Then she got SONOVO masks from Israel and N95 respirators and moon suits for protection.

42.    Plaintiff was at loss on how to help COVID patients initially in the absence of any treatment. She experienced a great personal loss when her own dentist died in a hospital in New Jersey while being intubated. His family could not visit, and they had to say goodbye on the phone while he was in a coma. This was shocking to the Plaintiff.

43.    The Plaintiff was in search of an answer as she wanted desperately to help her patients and felt helpless in the absence of any known treatment or cure. She wanted to find a solution(s) to this terrible disease that was killing people. She had an elated hope when the vaccines came out later in 2020/2021 with Operation Warp Speed.

44.    Plaintiff had patients who rushed to get the vaccine, lied to get the vaccine, crossed state lines to get the vaccine – anything to get some protection. One of the Plaintiff's patients went to a pop-up state site to get Moderna vaccine, and she almost died after the injection. They had to give her emergency care on the spot.

45.    At the time when patients were relying on the state pop up vaccination sites, Plaintiff's patients returned to her with negative experiences from the pop-up sites. They described that the staff manning the pop-up sites had no gloves, no aseptic technique, vaccines were improperly stored, there was no informed consent even at Walgreens and CVS and patients were not watched for 30 minutes for adverse reactions to the vaccines.

46.    Wanting to do better than the pop-up sites for her patients, and wanting to impart better care, the Plaintiff developed a vaccine program in her office that included giving the vaccine and a Post Vax Detox Protocol while watching the patient for one hour for adverse reactions.

47.    The Post Vax Detox Protocol was developed with input from other international doctors from Plaintiff's Medical Groups which she belonged to at that time. The goal of the Detox Protocol was to inhibit any inflammatory cascade, cardiac effects, stroke and autoimmune reactions.

48.    The Plaintiff also had several patients who were hesitant to get vaccinated because they were terrified of negative side effects. To make the patients feel safe, the Plaintiff offered the patients that either wanted the vaccine and or were mandated for their job/school to take the vaccine the Post Vax Detox Protocol as a kind of insurance policy to protect against negative side effects. This proved to be a sound healthcare plan as Plaintiff's existing patients and new patients sought this program out.

49.    All the vaccines were administered at Plaintiff's offices; everyone was documented and the vaccinated; vaccinated people were reported to the central database of NYSIIS in accordance with the emergency relevant statutory and regulatory requirement which have been suspended since that time.

50.    Dr. Janis L. Enzenbacher M.D., Plaintiff's supervising physician, did not want to be a part of the New York State Covid vaccine program. According to her, Dr. Enzenbacher suspected that like with any other new healthcare program the healthcare authorities and the state government would make mistakes, and take no responsibility for any mistakes and they would penalize the providers in the program. Turns out his suspicions were correct.

51.    As a result of the foregoing, the Plaintiff was the only provider in the practice who administered the COVID vaccines and then together with Dr. Enzenbacher they both administered the Post Vax Detox Protocol.

52.    Dr. Guggenheim applied to the NYS government vaccination program and was accepted on October 2021.

53.    Dr. Guggenheim bought specialized equipment to store the vaccines, started to research generators and called to state to ask questions about the protocols and the equipment to be acquired. When she did call the state Health department to ask questions, almost all questions were answered with "We don't know, or we can't tell you what to buy." This was frustrating as the Plaintiff felt that she was without guidance and felt alone in the process.

54.    Later on, after joining the vaccination program, the Plaintiff found out by accident that she was assigned to a Department of Health liaison named Anne Sheridan who should have contacted her at the beginning of the program to ensure that she was set up correctly with the state government's program requirements. The liaison never called or contacted the Plaintiff.

15

55.    At one point in 2020 the DOH liaison came to Plaintiff's office for a checkup visit, and she broke a temperature data logger that cost the Plaintiff $800.00 dollars. It was replaced the next day with a defective temperature data logger from the state. The emails from the state stated that she could write down the temperatures of the fridge and freezer on a daily sheet OR have temperature data loggers. The loggers were not a mandatory requirement. This was the beginning of Plaintiff's understanding of how poorly the program was run and we were all on our own.

56.    In the aftermath and during the COVID vaccine mandates, the Plaintiff did receive telephone calls from individuals who were desperate and would call, as they called all alternative providers and say they needed the vaccine, but they did not want to get it. Plaintiff's consistently and without exception replied: "you just asked me to do something illegal. This is a 5-year prison sentence and a $50,000 dollar fine."  Plaintiff's interns were instructed to say the same response. Most were from the Jewish Hassidic community.

57.    As the plaintiff rejected individuals who sought to circumvent the vaccine mandates, the Plaintiff's actual patients came to receive the CVID vaccinations and Post Vax Detox Protocols. The Plaintiff was known for not making the Covid vaccines a political issue at a time when it became a very contentious issue. The Plaintiff  treated patients whether they were vaccinated or not. Plaintiff's agenda was their health and improving their baseline of health.

58.    At some point in 2021 Dr. Guggenheim  was contacted by the NYS Department of Health for a site visit related to the COVID state vaccine program and her participation in the same. Plaintiff acquiesced  and was told at that time that a person called Barbara Joyce would be making a visit.

59.     Barbara Joyce showed up with  in April 2022 with two other people, Anne Sheridan, Plaintiff's supposed Department of Health liaison for the Covid program and an

individual who called himself "Brendan" without a last name who was introduced as a shadow. Barbara Joyce asked several questions which the Plaintiff answered.

60.    There were some questions that Joyce asked that the Plaintiff answered correctly. However, Joyce was factually incorrect in her queries as per 24 pages of information sent to the Plaintiff by Barbara Joyce the Friday before their visit.

61.    The Plaintiff was so thrown by Joyce's factually incorrect questions that it took her a minute to answer the doses for each Covid vaccine. The PFIZER vaccine needed to be diluted whereas Moderna and J&J did not.

62.    NYS health officials sent an email to all COVID vaccine providers saying that due to shortage in supply, the providers could go ahead and administer vaccines beyond the expiration date by several months.

63.    NYS Health Department officials failed to say in their communication to the Plaintiff that the freezer in which vaccines were to be stored needed to go below minus 80 degrees and to give specific instructions for the storage of the covid vaccines at such temperature.

64.    In the absence of such crucial information, the Plaintiff did not know that these requirements of the freezer temperature existed. Consequently, her freezer only went to minus 25 degrees. This caused an uproar with Barbara Joyce during the site inspection. Barbara Joyce privately told the Plaintiff that everyone made this mistake including CVS and Walgreens and in the state official's own words "it was a big mess."

65.    After the visit, the Plaintiff was given 4 days to create over 174 VAERS reports advising that vaccines which were not stored below minus 80 degrees were administered, even where NO adverse events occurred or were reported to the Plaintiff by her patients or anyone else. The state officials then notified the patients involved who received the vaccines which were

improperly stored at the minus 25 degrees temperature of the storage issue. None of them reported any adverse reaction known to the Plaintiff before or after the notification. Because almost all of the patients who came to be vaccinated by the Plaintiff sought the post detox program after the vaccination it would stand to reason that had any adverse reactions been experienced by the patients who were vaccinated with the improperly stored vaccines they would have been reported to the Plaintiff by the patients.

66.     Plaintiff  also called the affected  patients to explain the situation and even told them they could get another vaccine from CVS or Walgreens if they were concerned, and would give them a free Post Vax Detox Protocol treatment.

67.     During the office visit in April 2022 with Joyce, Sheridan and Brendan, "Brendan" appeared agitated and continued to get up and leave the room where the Plaintiff, Barbara Joyce and Anne Sheridan were sitting.

68.     The Plaintiff observed Brendan wondering around the office space without permission, in effect effectuating a search without a warrant and without plaintiff's permission. When he got up Plaintiff observed that he had handcuffs sticking out of his back pocket. Plaintiff directly looked at Barbara Joyce and Anne Sheridan and inquired as follows: "Is he law enforcement? If he is he must identify himself as that is against the law to impersonate a law enforcement agent." They replied – "He is highly caffeinated." The Plaintiff replied that this was the "wrong answer."

69.     After several times of leaving the consult room where the Plaintiff, Joyce and Sheridan were meeting, "Brendan" returned with Dr. Enzenbacher's RX pad in hand and he said, "Do me a favor – put this away." Plaintiff asked Brendan verbatim as follows:  "why do you have

that? You should not be touching anything. You said you are a shadow." Plaintiff has shadowed medical practices throughout her educational process and shadows do not speak or touch anything.

70.     Plaintiff reported Brendan's behavior and the lack of consent to the illegal search and sent an email to the head of The Covid Vaccine Program.

71.     During the visit "Brendan" then became obsessed with Plaintiff's last name. He was focusing on name repeatedly wanting to know if Plaintiff was in any way related to The Guggenheim Museum family. Plaintiff replied, "Everything I have I made myself. I was one of the few in my class who paid back her loans."

72.     Subsequent to the meeting the plaintiff started to get calls from patients about Brendan who was harassing them about their vaccine status. He was interrogating patients about Plaintiff's administration of their vaccines and Post Vax Detox Protocol while intimidating them into some sort of an admission that the Plaintiff did not administer the vaccines at all. To Plaintiff's knowledge none of the patients who reported this coercion would give in to it because they were all vaccinated.

73.     Several patients wanted to sue Brendan for his behavior and one patient investigated him and found out that he did some Oxycodone arrests. It was brought to Plaintiff's attention that allegedly Brendan went to a patient's house and tried to illegally gain entrance while the patient was not there, so the patient's tenant took photos of his car which oddly enough was not registered and the patient then made a police report. Brendan apparently traversed the state questioning other patients and pressuring them to state that they never received the COVID vaccine from me.

74.     All of the patients who were questioned by Brendan called the plaintiff to alert her to the conversation and to let her know without exception one by one that that all said they got the

vaccine and one patient who is a federal agent said, "You know the quote "by the book" well, Dr. Guggenheim invented the book."

75.    The Plaintiff  has a myriad of patients from all walks of life including: doctors, lawyers, a Supreme Court Judge, retired Head of Immunology at NYU, police officers, first, responders, firefighters, nurses – all contributing members of society. None of them would lie or give in to pressure from the state investigators and all of them that were questioned, and that reported back to the Plaintiff advised her of the status of affairs and of the state agent's questioning and staging a case for vaccine fraud where none occurred.

76.    At some point in 2022, Brendan came back with a subpoena signed by Joseph Giovanetti addressed to the  Plaintiff and Dr. Enzenbacher demanding random medical records. Plaintiff  would not let him into the office as Dr. Enzenbacher did not want him back in.

77.    Unsuspecting and unaware of her rights to challenge the subpoena, both the Plaintiff and Dr. Enzenbacher responded with requested information and produced the records without the benefit of advice of counsel.

78.    At some later date the plaintiff learnt that the defendant Joseph A. Giovannetti, Esq, was  Brendan's boss and contacted him. Plaintiff relayed that Brendan was not allowed inside her office, but she acquiesced that  Giovanetti  could send other people to look at her medical  records.

79.    Two more people from the state came into Plaintiff's office to collect copies of the medical records demanded by the subpoena  and Plaintiff  complied with their requests for xeroxed copies of patient charts. The Plaintiff cannot remember who many pages we xeroxed. These people thanked the Plaintiff for being compliant.

80.    After the records were produced in response to the subpoena issued by defendant Giovanetti, Plaintiff  was contacted by the defendants and their employees who advised her that

they found clerical errors that the state found in the entry of the vaccine data in the NYSIIS database and that they directed Plaintiff to correct the same. All identified issues were corrected by the Plaintiff in the NYSIIS as per NYS defendants' direction. Plaintiff followed every correction direction that the state authorities asked her to do.

81.    At no time was the Plaintiff given any information about an open investigation or about any type of a scheduled hearing. On the last conversation that the Plaintiff had with defendant Giovannetti, her last words to the Plaintiff were that he and Dr Guggenheim are on the same page about vaccines and he said that the Plaintiff could still have access viewing NYSIIS, but not to change anything that was entered before. Plaintiff found defendant Giovannetti's statement to be bizarre in light of the fact that she was already directed by Department of Health NYSIIS officials (names not recorded or recollected) to make the corrections to the administrative errors in the NYSIIS record and she complied with such directions.

82.    After the last conversation with Giovanetti and the first time when the Plaintiff found out in 2024 that her access to the NYSIIS system was blocked since about July, 2022, the Plaintiff naively believed that everything was ok as she was never formally advised by anyone of any restrictions on her licenses, on any restriction to the access to NYSIIS, on any refusal by schools to accept her records of vaccination, and of any restrictions on her the ability to provide vaccinations to her patients.

83.    Then Plaintiff still had patients who wanted the NYS COVID mandated vaccines for school or patients who were medical personnel and who were still mandated to take the COVID vaccines. Dr. Guggenheim continued to vaccinate children not knowing that any investigation was going on or that her access to NYSIIS had been summarily blocked. No notice was given to her by the defendants regarding the denial of access to the NYSIIS.

21

84.     The Plaintiff believed that she could not get into NYSIIS due to a password change. At some point the Plaintiff was able to get a password change corrected and then there still seemed to be a block.

85.      During this entire time when the Plaintiff could not access the NYSAIIS database she did not know that her access to the same was summarily blocked because she never received any formal notice form anyone regarding this license restriction placed summarily and by administrative fiat upon all of her nursing licenses by defendants Commissioner and Giovanetti. In cases where a patient was given any type of a vaccine, she had them either photograph and or videotape the vaccines and her administration thereof so there would be no question about the administration. The Plaintiff even included the NDC or barcode information. She kept all packing slips, credit card payments, temperature information, vaccine inserts, etc.

86.     The practice of vaccinating and providing paper proof of vaccinations continued through the fall of 2004 without any official or unofficial information or communication from the defendants regarding their summary action taken by administrative fiat against the Plaintiff.

87.     In the fall of 2024, children from one family who were patients of the Plaintiff came in for their mandated vaccines for school. The family came to the Plaintiff for the vaccines and Post Vax Detox Protocols.

88.     The children had been traveling and home schooled and the parents wanted them to enter into NYS schools. The school nurse took all of the vaccine information provided by the Plaintiff on her signed letterhead and checked their NYSIIS status.

89.     The nurse did not find the children in the registry. They were thrown out of school and forced to be re-vaccinated against CDC guidelines. Reportedly, the school nurse was strange in that she wanted them to do several vaccines to stay in school then she told the parents to slow

the vaccine process down and then speed it up. These were very confusing and mixed messages, which the Plaintiff did not understand and could not explain to the parents.

90.    It was during the second week in October 2024 that the plaintiff recontacted Mr. Giovanetti and asked about this situation. In response, Mr. Giovannetti started screaming on the phone that the plaintiff was under investigation and that she was blocked from NYSIIS.

91.    The Plaintiff relayed to Mr. Giovanetti that this is the first time she heard about it and inquired where her Notice of hearing was and whether one was coming at all. She had no explanation for the summary action taken by the defendants against her and in fact she did continue to vaccinate the patients and provide paper proof of the vaccinations to the schools and healthcare employers who still demanded that employees be vaccinated for COVID. The paper documents were never rejected and therefore Plaintiff's practice remained unaffected between July 2022 and October 2024.

92.    When the plaintiff told defendant Giovanetti stated that she was unaware that actual governmental action was taken against her. Mr. Giovanetti kept screaming at her saying "Stop talking stop talking."

93.    Plaintiff's final words to defendant Giovanetti were: "well you just had these children re-vaccinated against CDC guidelines and I guess I will have to take legal action against NYS to prevent medical abuse against CDC Guidelines.

94.    The purported suspension from NYSIIS was imposed and continues to be imposed by the defendants through administrative fiat without Notice and Opportunity to be heard and without affording the Plaintiff the due process rights safeguarded by the Fourteenth Amendment of the U.S. Constitution and by N.Y. Pub. Health Law § 12-a.

195.    The Board of Nursing is the only administrative agency authorized to conduct

23

disciplinary proceedings against its licensees, which include the Plaintiff. See N.Y. Educ. Law § 6508(3). The statutory provisions of N.Y. Educ. Law § 6510(1) through § 6510(9) govern the due process disciplinary process procedural steps which streamline disciplinary proceedings maintained by the New York Nursing Board.

96.    The array of penalties which the Nursing Board can impose on the licensees is set forth in Educ. Law § 6511. Educ. Law § 6511(5) provides for the imposition of a limitation of registration or issuance of a further license. Any imposition of sanctions is reviewable by the Board of Regents. See Educ. Law § 6511. The contested hearings described in Educ. Law § 6510(1) through 6510(9) are to be conducted in accordance with the due process mandates applicable to contested hearing provisions of N.Y. State Admin. Procedure Act §§ 301–401.

97.    The action taken by the defendants, namely the continued denial of Plaintiff access to NYSIIS without due process is not only an unauthorized de facto license limitation taken without the due process mandates of the foregoing statutes and a continuous violation of Plaintiff's constitutional Fourteenth Amendment rights but it is also an unreasonable interference with Plaintiff's Fifth and Fourteenth Amendment right to practice her profession without unreasonable government interference.

98.    After she found out that her access to NYSIIS was blocked in November 2024, the Plaintiff also came across to the posting of the branding site https://health.ny.gov/prevention/immunization/schools/fraud.htm - EX A hereto.

99.    Succinctly stated, the defendants placed Plaintiff's name on a public branding list maintained by them on their official web site. The branding site in effect states as follows - EX A hereto:

School Vaccination Fraud Awareness: Learn More - link included leading to a public displayed document on defendants' official web site at https://health.ny.gov/prevention/immunization/schools/docs/spotting_fraudulent_record.pdf (EX A hereto).

100.    The heading of the posting itself suggests that the defendants are branding the Plaintiff as a vaccine fraudster, without any formal due process which they have to afford to her under PHL Sec. 12-a before such branding and determination is being made.

101.    As it can be seen from the link attachment (EX A hereto) the official web site includes an attachment  to the public posting which states Spotting a Fraudulent Record.

102.    In the attachment the defendants state in no uncertain terms  that "Acceptable forms of Immunization of "Acceptable Forms of Immunization records include according to defendants' own postings   **Record signed by New York State licensed practitioner**" inter alia. See EX A hereto.

103.    Notwithstanding the foregoing posting the defendants continue to restrict Plaintiff's nursing licenses by illegally and unconstitutionally  directing school district to reject paper records of vaccination signed by the Plaintiff without any formal determination reached pursuant to the due process mandates of PHL Sec. 12-a. See EX A hereto stating " Isadora Guggenheim, NP, RN (Second Nature Naturopathic Care, LLC) – Currently suspended from using the New York State Immunization Information System as of 06/29/2022. Paper-only records of vaccinations administered after this date from this provider must not be accepted.

104.    The foregoing continuous  posting amounts to state governmental action which violates Fourteenth Amendment due process for several reasons: (a) first it falsely represents and holds out the suspension as a legal governmental  action reached after notice, opportunity to be heard and a formal decision was made by the Commissioner pursuant to PHL Sec. 12-a to suspend Plaintiff's NYSIIS. No such formal action or determination ever took place and the continuous

suspension is in fact an unauthorized illegal and unconstitutional act which continues to presently and prospectively violate Plaintiff's Fifth and Fourteenth Amendment rights as set forth in this Verified Complaint; (b) in the absence of any finding of vaccine fraud by any administrative authority such as the Commissioner after conducting the formal procedural due process steps mandated by PHL Sec. 12-a and Stated Administrative Procedure Act Secs. 301 through 401 or by the Nursing Board after conducting formal hearings and affording the plaintiff all of the due process steps mandated by Education law Sec. 6510 or by a court of competent jurisdiction after conducting a full trial and reaching a formal decision, and in the absence of a definitive formal order finding that the Plaintiff committed vaccine fraud, the defendants have no authority to instruct school districts or anyone to reject Plaintiff's paper only medical records documenting vaccinations. No such formal proceeding were ever conducted in this case and no such formal orders exist adjudicating the Plaintiff as a vaccine fraudster.

105.    The posting also amounts to a de facto unconstitutional license restriction imposed without due process on all of Plaintiff's nursing licenses because in effect it bars her from vaccinating  here patients by directing school districts not to accept Plaintiff's paper medical records evidencing such vaccinations.

106.    In the posting - EX A hereto the defendants then list "Red Flags that warrant investigation" and then list some 14 items which the defendants state that are "red flags". None of them are applicable to the Plaintiff. Moreover, none of the matters published by the defendants amount to binding regulatory action enacted pursuant to the State Administrative Procedure Act or pursuant to any section of the public health law including PHL § 2168 which governs the establishment and use of the NYSIIS system.

107.    The defendants further post as follows on their official web site:

26

When students are impacted by school vaccination fraud:

School administrators must immediately exclude any student who no longer meets school immunization requirements due to a fraudulent immunization record;

School nurses or administrators must notify parents that the student must be excluded and which vaccines are required to return to school;

School nurses or administrators must notify their county health department of all immunization-related exclusions; and,

Excluded students must receive the next required dose for each incomplete vaccine series before returning to school.

Students must then stay up to date using the minimum dose intervals in the ACIP Catch-Up Schedule or be excluded again when they become overdue for follow-up doses.

Be aware when reviewing school vaccination records (these directives may be expanded to include records issued by a provider on any date as investigations continue).

108.    The foregoing posting in conjunction with the specific posting regarding the Plaintiff violates Plaintiff's due process rights under the Fourteenth Amendment and Plaintiff's Fifth and Fourteenth Amendment rights to practice her profession without unreasonable government interference because: (a) it associates and summarily adjudicates the Plaintiff with vaccination fraud without any formal determination of this status pursuant to PHL Sec. 12-a and without any such determination made by the Nursing Board pursuant to Educations Law Sec. 6510; (b) it issues specific orders to school districts on how to proceed once the defendants are positing a practitioner's name to the branding site EX A hereto.

109.    The defendants then proceed to post Plaintiff's name with the false narrative that her access to NYSIIS was restricted by official government action and that no paper records should be accepted past the given suspension date.

110.    The foregoing continuous post on defendants' branding web site EX A continues to violate Plaintiff's due process rights for the following reasons: (a) it amounts to government

27

action taken without due process against Plaintiff's professional licenses and a continued violation of Plaintiff's Fourteenth Amendment rights; (b) it amounts to a de facto unauthorized license restriction without due process and a violation of Plaintiff's Fourteenth Amendment rights and an unauthorized governmental  action against Plaintiff's license without due process  whereby the defendants prohibit the Plaintiff from providing school districts and the latter from accepting signed vaccination records from the Plaintiff as acknowledged documentation records as  provided even in defendant's own post - EX A hereto; (c) it continuously and in perpetuity  brands and adjudicates the Plaintiff as a vaccine fraudster without any due process, where no formal finding of vaccine fraud has been made by the Board of Nursing pursuant to Education Law Sec. 6510 or by the Commissioner pursuant to PHL § 12-a; (d) it acts as a de facto continuous and perpetual license limitation penalty imposed by administrative fiat and without authority and in violation of Plaintiff's due process rights to a full formal adjudication on the merits of the issues posted on the branding web site EX A hereto; (e) it continuously convicts the Plaintiff of federal and state criminal vaccine fraud when no such determination was ever made by any jury or court of competent jurisdiction; (f) it continuously and prospectively  amounts to an unreasonable interference with Plaintiff's constitutional right to practice her profession free of  such interference thereby and therefore it violates her Fifth and Fourteenth Amendment rights.

111.    The issues in this case are clear and simple: (a) government action taken against the Plaintiff without due process in the blocking of her NYSIIS access and (b) a posting placed on defendants' official "branding site" accusing the Plaintiff of vaccine fraud when none exists and directing school districts not to take paper only vaccine records, despite defendants' own position that such records are sufficient to satisfy proof of vaccination. EX A.

(ii)    **Relevant facts pertaining to the defendants**.

112.    As set forth below - the state defendants continue to cause and precipitate the violations of Plaintiff's Fourteenth Amendment due process rights and her Fifth and Fourteenth Amendment right to practice her vocation without governmental interference lack authority to take any action against the Plaintiff without affording her the due process rights of PHL § 12-a.

113.    Nonetheless, that does not stop the defendants from violating Plaintiff's due process rights by continuously acting against her  by administrative fiat, imposing restrictions on her licenses without authority and due process while contending that she has no rights when it comes to their actions.

(a)    **General facts regarding the identity and actions of the defendants and their unwavering contention that their actions against the Plaintiff are not subject to any constitutional or legal limitations.**

114.    To keep things in context, upon information and belief, the Defendants Giovannetti, and "Brendan" are part of a NYS Department of Health team who act at the pleasure, direction and under the supervision of the Commissioner. The team was purposely formed by the past DOH Commissioner in January 2021 at the height of the COVID-19 pandemic to hunt down healthcare practitioners and other individuals who provided fake COVID-19 vaccination cards and fraudulent COVID-19 vaccine documentations to individuals seeking to avoid the draconian and politically imposed New York vaccination mandates on healthcare practitioners and the public as a whole.

115.    The hunt team was actually given a name: The Department of Health Vaccination Complaint Investigation Team and was tasked with looking into complaints of COVID-19 vaccine fraud. https://health.ny.gov/press/releases/2021/2021-10-01_doh_statement.htm.

116.    In its inception, and during the COVID-19 emergency, the hunt team uncovered various individuals who provided fake vaccination cards to their patients or to rando individuals

and further provided fake vaccine documentation aiding and abetting members of the public to evade the vaccine mandates due to health concerns that the same vaccines may cause.

https://health.ny.gov/press/releases/2021/2021-10-01_doh_statement.htm;

https://www.health.ny.gov/press/releases/2022/2022-12-20_vaccination_card.htm

https://wjla.com/news/nation-world/ny-man-facing-felony-charges-for-presenting-a-fake-vaccine-card.

https://www.msn.com/en-us/news/crime/ny-nurse-guilty-in-15m-covid-vaccine-scam-blames-government-mandates/ar-AA1gOEQN.

https://www.health.ny.gov/press/releases/2024/2024-01-17_baldwin_midwifery.htm

117.     Clearly, the hunt team gathered celebrity status and notoriety during the COVID-19 emergency vaccination mandates during 2021-2022 as set forth above.

118.     As the COVID vaccine mandates dwindled, a matter which the New York public never thought that it would be possible, and as the past DOH Commissioner Mary Basset started to phase in the idea that the mandate periods will come to an end, the hunt team faced an existential threat which needed to be overcome by a justification for their operation and existence.

119.     On May 24, 2023 the DOH announced as follows: "Due to the changing landscape of the COVID-19 pandemic and evolving vaccine recommendations, the  DOH  has begun the process of repealing the COVID-19 vaccine requirement for workers at regulated health care facilities. Throughout the public health emergency, this vaccine requirement served as a critical public health tool, helping to protect both health care workers and the patients under their care. As the repeal of this regulation awaits consideration for approval by the Public Health and Health Planning Council (PHHPC), the Department will not commence any new enforcement actions." https://www.health.ny.gov/press/releases/2023/2023-05-24_statement.htm."

120.    On October 4, 2023, the COVID-19 vaccine mandate for health care workers in New York was officially repealed. On September 18, 2023, the DOH (NYSDOH) submitted a Notice of Adoption to repeal 10 N.Y.C.R.R. 2.61 (the Regulation), which was the emergency regulation requiring covered health care employers to ensure that their personnel were fully vaccinated against COVID-19.

121.    The vaccine mandates imposed upon private employers in New York City were terminated on November 1, 2022. On September 12, 2022 the New York State Governor terminated the COVID-19 state of emergency and did not extend it beyond September 12, 2022.

122.    Apparently intoxicated by their own fame and harboring a delusion that they are above the U.S. Constitution, the defendants violated and continue to violate every possible applicable aspect of protection afforded to the Plaintiff by the U.S. Constitution's Fifth and Fourteenth Amendments.

123.    As the COVID vaccine mandates dwindled, the defendants had no purpose for their existence. They had to come up with something quick to reinvent themselves in order to stay relevant. They did, at the expense of Plaintiff's constitutional protected due process rights and that of similarly situated healthcare practitioners. Where no more COVID vaccine fraud complaints would come in, the defendants were determined to create their own and turn everything into something that it was not without any formal administrative or judicial process and formal adjudication and determination and without any due process being afforded to the accused healthcare practitioner.

124.    To bypass any judicial or administrative scrutiny of their unconstitutional and unauthorized actions as well as all requirements of due process, the hunt team and the commissioner devised a system by which they are continuously employing the following

approach: (a) scour the NYSIIS database for technical defects in the reporting of the vaccines; (b) assume that any technical inconsistency in reporting is proof of vaccine fraud; (c) send teams of state officials and investigators to practitioner's office to gain illegal access to the premises under the guise of asking legitimate questions; (d) issue unconstitutional overboard subpoenas which violate the Fourth Amendment signed by the head investigator in violation of the Fourth amendment; (e) illegally obtain medical records from unsuspecting health care providers with the unconstitutional subpoenas; (f) set up a web site where the defendants can act against the healthcare providers extra judicially and outside any administrative or judicial scrutiny; (g) summarily deny access to the healthcare practitioner to NYSIIS without any hearing or formal determination and without any formal notice of such block or denial and further without any notice of the reason for the block; (h) summarily brand the healthcare practitioner on defendants' web site as vaccine fraudsters (https://health.ny.gov/prevention/immunization/schools/fraud.htm) without any hearing or formal determination,  pass off the branding on the website  as a formal DOH determination, without any due process as mandated by PHL § 12-a; (i) impose a license restriction on the healthcare practitioner's license by acting without nay authority and  directing schools to refuse paper records of vaccinations regarding the health care practitioner's patients; (j) bypass the entire extensive  license discipline process by simply posting one's name to the branding list described above.

125.    The factual pattern described by the Plaintiff above identifies each step in the foregoing scheme which the Plaintiff was subjected and continues to be subjected by the state defendants in violation of her constitutional rights as discussed below.

126.    As published by the media and upon information and belief, according to Joseph Giovannetti, the department's director of investigations, the team began looking into frauds

involving all sorts of vaccines, not just for COVID, and at the end of 2022, they came up with the above referenced scheme to deprive healthcare practitioners in the entire state of due process and to interfere of the practice of their branch of healthcare in which they were licensed. https://nymag.com/intelligencer/article/midwife-vaccines-new-york-long-island-false-immunization-records.html

127.    In short, even now, after the repeal of all COVID-19 emergencies and mandates in this state,  by Defendants' own admission made by Defendant Giovannetti himself to the media, and as set forth in the subpoena in this case, the Defendants commence unfettered inquiries into New York licensed physicians' businesses and vaccination practices based upon NYSIIS data in hopes of finding violations of the law.

128.    Apparently, the defendants continue to use their own website as a conduit for the continued violation of plaintiff's due process rights as set forth below and as a further conduit for evading judicial review and any semblance of due process safeguarded by the Fourteenth Amendment and by PHL Sec. 12-a.

129.    As a conduit and a pretext to anointing themselves with formidable extra judicial powers which neither the legislature nor the constitution afford them the defendants use the pretext of enforcing Public Health Law ("PHL") § 2168. However, as discussed below, that statute does not empower the defendants to act extra judicially by administrative fiat  and without the process in the manner in which they did and continue to do in this case as described above and below.

130.    Specifically, no statutory or constitutional provision empower the defendants to summarily suspend the Plaintiff from NYSIIS by administrative fiat, without any given reason whatsoever and without due process. To the contrary, PHL § 12-a prescribes for the precise formal due process procedure, which has to be followed by the defendants in any case where they find

that violations of any provision of the Public Health Law exist. PHL § 2168 itself does not vest the defendants with any powers to take summary action against the Plaintiff in the manner specified in this complaint.

131.    No statutory provisions empower the defendants to maintain a branding web site - EX A hereto which lists the names of healthcare practitioners declaring them as vaccine fraudsters without a formal adjudication of such status  by the relevant licensing authorities, in this case the Board of Nursing after all of the due process protections of New York Education Law specified above including the formal hearing and adjudication process are followed by the relevant licensing authorities.

132.    No statutory provision empowers the defendants to summarily direct school boards to reject signed paper documentation of a pediatric patient's vaccination from the Plaintiff based upon any grounds let alone the illegal and unconstitutional suspension from NYSIS of the Plaintiff by defendants' administrative fiat.

133.    No statutory provision enables the defendants to use a public website disguised as an authoritative order issuing tool in the hands of the defendants for imposing summary and extra judicial license restrictions on the Plaintiff.

**(iii)    The plain meaning of the relevant provisions of PHL § 2168 reveals that this statutory provision does not vest the defendants with any powers or subject matter jurisdiction to act unconstitutionally and extra judicially as they are in <u>this case.</u>**

134.    An explanation of the purpose and substance of  Pub. Health Law § 2168 and 10 NYCRR § 66-1.2 is now in order so as to keep matters in context and to eviscerate the notion that the defendants have any authority or powers to act unconstitutionally and illegally as they have here.

135.    In 2006 the legislature enacted PHL § 2168 thereby creating the New York State

Immunization Information System ("NYSIIS") for the entire state and the Citywide Immunization

Registry for New York City ("CIR"). In short, both the NYSIIS and the NYCIR are centralized

database system that keep track of all immunization in New York. The statute does not create any

type of formidable powers in the hands of the defendants aimed at bypassing due process and the

formal adjudicative mandates of PHL Sec. 12-a and State Administrative Procedure Act Sec. 301

through 401.

136.    The purpose of the enactment of PHL § 2168 is stated in the statute itself. While

the statute mixes and matches vaccine reporting and lead level testing reporting, for the purposes

of this complaint only the provisions related to the central vaccination reporting system are

relevant and discussed.

137.    PHL § 2168(1) provides in relevant part as follows:

The [NYS department of Health] is hereby directed to establish a statewide automated and
electronic immunization information system that will serve, and shall be administered
consistent with, the following public health purposes:

(a) collect reports of immunizations and thus reduce the incidence of illness, disability and
death due to vaccine preventable diseases....

(b) establish the public health infrastructure necessary to obtain, collect, preserve, and
disclose information relating to vaccine preventable disease as it may promote the health
and well-being of all children in this state;

(c) make available to an individual, or parents, guardians, or other person in a custodial
relation to a child or, to local health districts, local social services districts responsible for
the care and custody of children, health care providers and their designees, schools, WIC
programs, and third-party payers the immunization status of children; and

(d) appropriately protecting the confidentiality of individual identifying information and
the privacy of persons included in the statewide immunization information system and their
families.

138.    The very purpose of the statute as cited in PHL § 2168(1) is the centralized

gathering of information regarding vaccination and making the same available to the individuals and entities specified in PHL § 2168(1)(c) while "appropriately protecting the confidentiality of individual identifying information and the privacy of persons included in the statewide immunization information system and their  families."

139.     PHL § 2168(1) was never intended to be a sword in the hands of the Commissioner, state investigators and intermediate and low lever administrative officials to be used for summarily terrorizing health care practitioners who get on their radar.

140.     PHL § 2168 was never intended to give state administrative officials, who are the defendants in this case, the powers to: (a) act by administrative fiat against a healthcare practitioner without authority and due process; (b)  take summary administrative actions against healthcare practitioners without due process such as the ones described in this complaint ; (c) summarily invalidate bona fide vaccinations and prohibit schools from accepting paper documents signed by a healthcare practitioner despite defendants' admissions in their own posting EX A hereto that such documentation is valid proof of vaccination; (d) in general create chaos under the cover of both the investigative powers conferred upon the Commissioner and; (e) impose summary license restrictions against healthcare practitioners without the minimum due process mandates of hearing and opportunity to be heard. As set forth below, this is exactly how the defendants in this case have used and are using the color of PHL § 2168 to deprive the Plaintiff of due process.

141.     The statute speaks of the establishment of two separate centralized database systems by the State DOH in PHL §§  2168 (2)(b) and 2168(2)(c) for the purposes of vaccine database reporting and maintenance as follows:

> (b) The term "statewide immunization information system" or "system" shall mean a statewide-computerized database maintained by the department capable of collecting, storing, and disclosing the electronic and paper records of vaccinations received by persons under nineteen years of age.

(c) The term "citywide immunization registry" shall mean the computerized database maintained by the city of New York department of health and mental hygiene capable of collecting, storing, and disclosing the electronic and paper records of vaccinations received by persons less than nineteen years of age....

142.    Having clarified what the purpose of PHL § 2168 is and what it establishes, we now turn on the obligations that PHL § 2168 imposes upon New York  healthcare practitioners including the Plaintiff herein.

143.    PHL  § 2168 (2)(d) provides that:

(d) The term "health care provider" shall mean any person authorized by law to order an immunization or analysis of a blood sample for lead or any health care facility licensed under article twenty-eight of this chapter or any certified home health agency established under section thirty-six hundred six of this chapter; with respect to a person seeking or receiving a health care service from the health care provider.

144.    PHL  § (3)(a)(i) imposes the following obligation on healthcare    providers:

Any health care provider who administers any vaccine to a person less than nineteen years of age... or, on or after September first, two thousand nine, conducts....immunizations received by a person less than nineteen years of age in the past if not already reported, **shall report all such immunizations...within fourteen days of administration of such immunizations**.... Health care providers administering immunizations to persons less than nineteen years of age in the city of New York shall report, in a format prescribed by the city of New York commissioner of health and mental hygiene, all such immunizations to the citywide immunization registry....

145.    Thus, the statute imposes a mandatory  obligation on healthcare providers to report vaccinations to the central database of NYSIIS and NYCIR for vaccinated persons under the age of 19.

146.    PHL § 2168(3)(b)(i) provides in relevant part as follows:

**(i)** Any health care provider who administers any vaccine to a person nineteen years of age or older, may report, with the consent of the vaccinee, all such immunizations to the department in a format prescribed by the commissioner within fourteen days of administration of such immunizations. Health care providers administering immunizations to persons nineteen years of age or older in the City of New York may report, with the consent of the vaccinee, in a format prescribed by the city of New York

commissioner of health and mental hygiene, all such immunizations to the citywide immunization registry.

147.    PHL § 2168(8)(a)  provides in relevant part as follows:

148.    Access and use of identifiable registrant information shall be limited to authorized users consistent with this subdivision and the purposes of this section. (a) The commissioner **shall provide a method by which authoriz**ed users apply for access to the system. For the City of New York, the commissioner of health and mental hygiene **shall provide a method by which authorized users apply for access to the citywide immunization registry.**

149.    Under the provisions of PHL § 2168 the state defendants have no alternative or discretion but to grant access to the NYSIIS to a licensed practitioner such as the plaintiff. Both the relevant statute and the Commissioner's regulation provide for the same. The statute PHL § 2168 as well as Commissioner's own regulations 10 NYCRR Sec. 66-1.2 are clear as to who shall have access.

150.    PHL § 2168(8)(c) provides in relevant part that:

(c) health care providers ....**shall have access to the statewide        immunization information system**.... only for purposes of submission of information about vaccinations received by a specific registrant, determination of the immunization status of a specific registrant....review of practice coverage, generation of reminder notices, quality improvement and accountability, including professional responsibility proceedings of the office of professional medical conduct and the state education department, and printing a copy of the immunization or lead testing record for the registrant's medical record, for the registrant's parent or guardian, or other person in parental or custodial relation to a child, or for a registrant upon reaching eighteen years of age.

151.    Commissioner's regulation 10 NYCRR Sec. 66-1.2 provides that:

(a)((3) Health care provider for the purposes of this section shall mean any person authorized by law to order an immunization.

(b) Mandated reporting.

(1) Mandated reporters to NYSIIS and the CIR include any health care provider, as defined in section 66-1.2 who administers an immunization or conducts a blood lead analysis of a sample.

(2) Mandated reporters must report any immunization to a child less than 19 years of age to either NYSIIS or the CIR, depending on the location of administration of the vaccine.

(c) Information required to be reported, methods of reporting, exceptions and timeliness of reporting.(1) Information required to be reported to NYSIIS or the CIR, to the extent available to the provider shall include: the patient's name (first, middle and last); date of birth; gender; race; ethnicity; address, including zip code; telephone numbers; birth order (if multiple birth); birth state/country; mother's maiden name; mother's or other responsible party's name (first, middle and last); vaccines for children program eligibility; Medicaid number; and vaccine administration date, type, lot number and manufacturer, except as noted in paragraph (3) of this subdivision. A provider should report elements for any additional data fields in NYSIIS or the CIR when available.

(d) Allowable access levels and permitted uses of NYSIIS and/or CIR data by authorized users specific to the organization they are representing.
(1) Allowable access levels.
(i) Read/write access. Only health care providers providing services to the registrant and State and local Department of Health staff may compile reports, read immunization information, enter immunization information and change immunization information, with limitations as specified below.

152.    There is no provision in the state statute PHL § 2168 or anywhere else that gives the state defendants discretion or powers to shut down  access to the NYCIR to healthcare providers who are mandated to report the data of vaccinations administered to patients under 19 years of age. There is no provision in the state statute PHL § 2168 or anywhere else that gives the state defendants discretion and the option to restrict Plaintiff's licenses by administrative fiat as described in this complaint.

153.    Entities and individuals other than healthcare providers who are mandated to report vaccinations in the NYCIR by PHL § 2168(8)(c) or by Commissioner's regulations 10 NYCRR Sec. 66-1.2 can ask permission to access the NYCIR and the NYSIIS database for limited purposes. Those recognized and the permitted limited purpose access are listed  in 10 NYCRR Sec.66-1.2(d)(i) through (xii) and PHL § 2168(8)(d). None of them are healthcare practitioners such as

the Plaintiff who are mandated to report vaccinations to the NYSIIS and none of those provisions apply to the plaintiff.

154.    With respect to the latter class of individuals contemplated by 10 NYCRR Sec.66-1.2(d)(i) through (xii) and PHL § 2168(8)(d) which excludes  healthcare providers mandated to report and enter vaccines into the NYSIIS or NYCIR databases, the legislature provided in PHL § 2168(9) "the commissioner may judge the legitimacy of any request for immunization system information and may refuse access to the statewide immunization information system based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation."

155.    In this case, the Plaintiff does not fall in the discretionary access category contemplated by PHL § 2168(9). The commissioner's discretionary refusal for access to the NYSIIS provided by PHL  §  2168(9) by definition does not apply to healthcare practitioners mentioned in PHL § 2168(8)(c) simply because healthcare practitioners must report vaccine information , not retrieve vaccine information  to determine eligibility of school/college admission and vaccination status. See PHL§ 2168(3)(b)(i). The remaining provisions of PHL §§ 2168(9)–(14)are not applicable to the facts of this case. In short, there is no authority in PHL § 2168 for the actions taken by the defendants in this case against the plaintiff in violation of her constitutional rights as set forth in this pleading.

156.    Because state agencies and their agents are creatures of the legislature, which do not have any inherent powers except for those given to them by the legislature, the defendants in this case cannot grant themselves the powers to summarily suspend access to NYSIIS and brand the Plaintiff a vaccine fraudster without due process while at the same time directing the school districts to reject Plaintiff's paper documentation for vaccinations without formal findings and the

application of due process as mandated by PHL § 12-a.

157.    Moreover, the defendants have no inherent power to restrict both of Plaintiff's nursing licenses by placing a de facto license restrictions though administrative fiat as they did in this case and as discussed above. License restrictions can only be imposed by the  relevant disciplinary authority in this case the nursing Board pursuant to the provisions of New York Education law discussed above in this complaint.

### (iv)    An explanation of the due process protections afforded to licensed who are subject to the provisions of the New York <u>Public Health Law.</u>

158.    The degree and nature of procedural due process afforded to the plaintiff under the facts  of this case is dictated by several factors; (a) the state action involved in this case; (b) plaintiff's status as a licensed registered nurse and a license nurse practitioner and her property interest in her license which cannot be limited or revoked without due process; (c) the statutory due process provisions afforded by the legislature to parties subjected to state defendants' action; (d) the lack of authority of the state defendants to act against the Plaintiff in the manner described hereinabove in. this complaint.

122.    With the foregoing paradigms laid out, to elucidate the argument of violation of Fourteenth Amendment due process,  a seriatim discussion of each one of the elements set forth above follows.

### (A)    The state officials' actions being challenged <u>as violative of Plaintiff's due process rights</u>.

123.    The following actions were and continuously and prospectively are affirmatively taken by the state and city officials against the Plaintiff by administrative fiat and without due process:

(a)    Suspension of the Plaintiff's access to NYSIIS by administrative fiat and without due process;

(b)    The de facto imposition of license restriction of both of Plaintiff's registered nurse license and Advanced Nurse Practitioner's license without due process through the use of administrative fiat and of defendants' own web site designated for summary action and the bypassing of due process;

(c)    The designation by the defendants of the Plaintiff as an individual who engages in vaccine fraud without any due process and without any formal finding supporting such designation by state authorities as provided by PHL § 12-a and Educ. Law § 6510(1)–(9). See Ex A hereto

(d)    The designation by the defendants of the Plaintiff as an individual who engages in criminal conduct of vaccine fraud without any due process and without any formal finding supporting such designation by a judge or jury of a court of competent jurisdiction;

(e)    The unauthorized directives given by the defendants to school districts though publication and administrative fiat to reject Plaintiff's signed vaccination records, while the defendants are wrongfully and unconstitutionally restricting Plaintiff's access to NYSIIS and falsely represent that such a restriction amounts to authorized governmental action.

(h)    The imposition of a de facto license restrictions upon Plaintiff's registered nursing and advance nurse practitioner licenses without due process;

**(B)    Plaintiff's status as a licensed Advanced Nurse Practitioner ("APN") and a licenses Registered Nurse with unencumbered nursing licenses entitles her to due process protections with respect to any governmental action aimed at imposing a license limitation or professional discipline.**

124.    Then Plaintiff is a licensed Nurse Practitioner with prescribing privileged and a licensed Registered Nurse. The plaintiff has unrestricted licenses and has never been subject to

disciplinary action by the relevant Nursing Board. See Ex B and D hereto.

125.    Any official state action aimed at restricting Plaintiff's licenses and her healthcare practice which includes vaccinations  and prescription privileges has to be taken by the relevant agency created by the legislature and by the Board of Regents for such purposes.  See Educ. Law § 6510.

126.    The State Defendants do not have any authority to take any type of an adverse action such as the ones specified in this complaint against the Plaintiff and her unencumbered licenses to practice nursing and advance nursing which includes vaccination of Plaintiff's patients and providing proof of vaccinations to school districts.

127.    Most importantly, no statute empowers the  defendants to prohibit school districts to accept from the Plaintiff paper record proving of pediatric vaccination under any circumstances. Even their own postings state that paper records signed by the licensed healthcare practitioner are sufficient proof of vaccination of the pediatric patients. See EX A hereto.

128    While the defendants are prospectively barring the Plaintiff from administering vaccines through the barring of acceptance of paper vaccination records and through the summary unconstitutional violation of license restrictions though the restrictions of Plaintiff's action to NYSIIS,  and while their actions themselves taken without due process create Plaintiff's  inability to report vaccines to the NYSIIS, PHL § 2168 provides zero authority to the city and state defendants to prohibit the submission and acceptance of paper vaccinations by the Plaintiff to school districts.

129.    The only thing that PHL § 2168 provides is the input of vaccination data into the centralized databases. It provides nothing on imposing restrictions and prohibitions on accepting paper records of vaccinations and imposing license restrictions against a healthcare practitioner

who cannot comply with the reporting mandates of the statute because of defendants' illegal and unconstitutional bar of access to NYSIIS.

130.    Moreover, the Plaintiff has a property interest in her nursing licenses which can neither be encumbered nor taken away without due process.

131.    Consequently, any summary action taken, and prospectively continuing to be taken, by the state defendants, as set forth above, against the plaintiff and her unencumbered licenses and practice of advanced nursing and nursing, which includes the vaccination of her pediatric patients and providing them with vaccination records, is a violation of plaintiff's Fourteenth Amendment due process rights.

132.    The prospective and continuous actions taken by the state defendants against the Plaintiff also amounts to an unreasonable unauthorized state interference with Plaintiff's Fifth and

Fourteenth Amendments rights to practice her vocation free of unreasonable state governmental interference.

**(C)    The procedural due process provisions of PHL § 12-a and PHL § 6510 are the exclusive provisions which empower the defendants to act in any manner against the Plaintiff and her professional licenses as they did and <u>continue to do in this case</u>.**

133.    The legislature provided two tiers of due process applicable in this case.    In   the event that the defendants contend that somehow the Plaintiff  was violating the reporting requirements of PHL § 2168 in any manner or form, the legislature unequivocally mandates that the Commissioner proceed with formal hearings and formal administrative determinations PHL § 12-a.

134.    Contested proceedings such as the ones anticipated by PHL §12-a are also covered

by due process provisions of the N.Y. State Admin. Proc. Act §§ 310–401.

135.    In short, prior to taking any action such as the ones specified in this complaint with respect to the violation of any provision of the PHL, including Sec. 2168, the defendants have to afford the plaintiff the formal due process safeguards set by the legislature in PHL §12-a. Undisputedly, no such formal process was followed here.

136.    Consequently, to the extent that the defendants took and continue to take the actions specified in this complaint against the Plaintiff based upon any contended violation of PHL § 2168, first they had to follow the due process mandates of §12-a.

137.    They did not. Consequently, defendants' continuous and prospective summary actions against the Plaintiff which continues unless enjoined and revoked by the Court continuously and prospectively violate Plaintiff's t Fourteenth Amendment due process rights.

138.    In the case where the state defendants allege that the Plaintiff violated any part of the disciplinary statute constituting unprofessional conduct, in this case Educ. Law § 6509, they cannot take summary action against the Plaintiff such as the one described in this complaint without a formal adjudication of Plaintiff's status as a "vaccine fraudster" and a willful violator of PHL § 2168.

139.    As set forth above the only manner in which any action can be taken against the Plaintiff which restricts her license and ability to practice advanced nursing and nursing without restrictions is for the Nursing Board to afford the Plaintiff all the due process mandates of Educ. Law § 6510. That includes a formal hearing and an opportunity to be heard conducted in accordance with Educ. Law § 6510 and SAPA § 310 et seq.

140.    No such formal due process was afforded to the Plaintiff and no formal adjudication was made by the Nursing Board that the Plaintiff is restricted from providing vaccinations and

paper proof of vaccinations to her patients.

141.    Consequently, not only that the continuous summary action taken by the state against  the Plaintiff as specified in this complaint are without authority  but they prospectively violate due process because the same were taken without due process.

**(D)    An explanation of defendants' lack of authority and continuous
to take summary action against the Plaintiff and the
<u>continuous violation of Plaintiff's due process rights.</u>**

142.    PHL § 2168 does not empower either one of the State of City Commissioners or any one of the defendants to take summary action against an advance nurse practitioner's or a nurse's license and impose a limitation on such license by denying, access  or revoking access to NYSIIS.

143.     PHL § 2168 does not empower staff of the commissioner to summarily black list a physician on their official web site as having been barred from providing vaccinations without a hearing and opportunity to be heard and without a quasi-judicial or judicial determination that the licensed physician did something wrong.

144.    PHL § 2168 does nor empower any one of the Commissioners and their staff to use information from the NYSIIS for the purposes other than the ones specified PHL §  2168(8)(b).

145.    PHL § 2168 does not empower either one of the defendants to vest themselves with authority and powers through administrative fiat beyond those given to the administrative officials by the statute.

146.    PHL § 2168 does not empower either one of the defendants to precondition participation in either the NYSIIS or the CIR programs upon a licensee's abandoning his/her due process rights to a hearing and opportunity to be heard and a formal determination regarding any allegations or investigations of allegations conducted by the Vaccine Complaint Unit of the DOH

46

or any other state or City investigative agencies.

147.    PHL § 2168 does not empower the state and city defendants to bypass all the due process requirements of the SAPA § 301 et seq. regarding contested administrative proceedings when it comes to enforcing allegations of violations of PHL § 2168.

148.    PHL § 2168 does not empower the Commissioners to bypass the notice and opportunity to be heard mandate of PHL § 12-a in the event that the commissioner and/or his staff determine that a violation of PHL § 2168 took place.

149.    PHL § 2168 does not vest the commissioner with any powers to delegate the subpoena issuance powers of the commissioner to any investigator including the Director of DOH investigations.

150.    PHL § 2168 does not provide either one of the defendants to vest themselves with powers to violate the unconstitutional condition doctrine by forcing physicians and healthcare practitioners to sign agreements and forms as a condition to the approval of their application for access to NYSIIS and the CIR which utterly divest the licensees of their constitutional due process rights and their constitutional rights to practice medicine without unreasonable state interference.

145.    PHL § 2168 was meant to provide a centralized database for vaccinations of children in New York for the purposes specifically articulated in PHL § 2168(1).

146.    PHL § 2168 does not bar nor does it intend to supplant individual paper or electronic medical records of pediatric patients substantiating a patient's vaccination records.

147.    PHL § 2168 does not vest the defendants with authority to summarily issue orders to schools to reject medical paper records as proof of vaccinations.

148.    The understanding of the interplay of PHL § 2168 with other parts of the Public Health law and in this case, New York State Education law governing the regulation of practice of

nursing and advance nursing is also central to understanding how the defendants are continuously violating Plaintiff's Fifth and Fourteenth Amendment.

149.    The legislature only granted one remedy to the administrative state defendant officials when and if they believe that a violation of PHL § 2168 occurred and when and if they refuse to do that which is enjoined to them by law, which is facilitate access to the NYSIIS and NYCIR to healthcare practitioners for the purposes of implementing the mandate of the legislature, namely the reporting of vaccines to the centralized vaccine database.

150.    Enforcement of a violation of the provisions of PHL § 2168 are relegated exclusively to the Commissioner through the formal due process provisions of PHL § 12-a. PHL § 12-a does not empower the Commissioner and/or the low and intermediate tier state agents to use the branding web site and give directives to school authorities to exclude Plaintiff's vaccination records and subject Plaintiff's patients to the re vaccination and testing mandates posted on the web site. PHL § 12-a certainly does not empower the state defendants to impose a restriction on Plaintiff's unrestricted nursing licenses.

151.    The statute does not empower the state defendants to: (a) restrict the plaintiff from administering vaccines to her pediatric patients; (b) it does not empower the state defendants to simply brand the Plaintiff a vaccine fraudster by administrative fiat instead of affording her due process; (c) it does not empower the defendants to direct school authorities to reject Plaintiff's vaccine records and (d) it does not empower the state and City defendants to simply ignore plaintiff's application for registration with the NYCIR and them misrepresent it as a suspension; (e) the statute does not empower the state defendants or the city defendants to do anything and take any action without following due process.

152.    PHL § 12-a providers in relevant part and verbatim as follows:

2. The commissioner and those designated by her shall not be bound by the laws of evidence in the conduct of hearing proceedings, but the determination shall be founded upon sufficient legal evidence to sustain it.

3. Notice of hearing shall be served at least fifteen days prior to the date of the hearing, provided that, whenever because of danger to the public health it appears prejudicial to the interests of the people of the state to delay action for fifteen days, the commissioner may serve the respondent with an order requiring certain action or the cessation of certain activities immediately or within a specified period of less than fifteen days and the commissioner shall provide an opportunity to be heard within fifteen days after the date the order is served.

4. Service of notice of hearing or order shall be made by personal service or by registered or certified mail. Where service, whether by personal service or by registered or certified mail, is made upon an infant, incompetent, partnership, corporation, governmental subdivision, board or commission, it shall be made upon the person or persons designated to receive personal service by article three of the civil practice law and rules.
5. The attorney-general may prefer charges, attend hearings, present the facts, and take any and all proceedings in connection therewith.

6. At a hearing, the respondent may appear personally, shall have the right of counsel, and may cross-examine witnesses against her and produce evidence and witnesses in her behalf.

7. Following a hearing, the commissioner may make appropriate determinations and issue an order in accordance therewith.

8. The commissioner may adopt, amend and repeal administrative rules and regulations governing the procedures to be followed with respect to hearings, such rules to be consistent with the policy and purpose of this chapter and the effective and fair enforcement of its provisions.

9. The provisions of this section shall be applicable to all hearings held pursuant to this chapter, except where other provisions of this chapter applicable thereto are inconsistent therewith, in which event such other provisions shall apply.


153.    The defendants did not use the formal due process mandates of PHL Sec. 12-a to

support their summary actions against the Plaintiff and to reach any type of formal adjudication

supporting their actions or to even give notice to the Plaintiff od that it is that she stands accused

of. Defendants' continuous actions taken against the Plaintiff as specified in this complaint

continue to prospectively violate due process because the same were not taken in accordance with

the formal due process requirements of PHL § 12-a.

**(v)** **The defendants, state officials admit that according to them the defendant has no due process rights when it comes to them acting summarily and by administrative fiat against her license and her constitutionally protected right to practice her profession <u>without government interference.</u>**

152.    In an existing similar but not identical case now pending sub judicia in the Eastern District of New York before Judge Azrack, titled *Faiz Khan M.D. v. James McDonald M.D. et.al.*, Case No. 2:24-cv-07475-JMA-ST (E.D.N.Y. Jul. 8, 2024), the defendants made the astounding admission that under their procedures there is no pre or post deprivation remedy to their summary denial of access to either the NYSIIS or the NYCIR and their summary directions to school districts to refuse Plaintiff's paper vaccination records and to their labeling the Plaintiff as a vaccine fraudster without any formal determination being made to that effect.

153.    The defendants also made the stunning admission of their violation of the unconstitutional condition doctrine  by actually producing specific documents which strip licensees such as the Plaintiff of all constitutional due process as a pre-condition to obtaining access to NYSIIS.

154.    Annexed hereto as EX F  is the affidavit of Vajeera Dorabawila, a NYS DOH official familiar with the documentation needed to be signed by licensees to be approved for access to the NYSIIS and exhibits annexed thereto.

155.    As it can be seen from the same the state defendants, precondition access to the NYSIIS upon the execution of the attached forms which outright force a licensee to abandon his/her due process rights to a notice and opportunity to be heard and vest the state officials and investigators to take summary action without any notice and opportunity to be heard.

156.    It is also state defendants' formal position that the Plaintiff has no due process

rights. See EX G annexed hereto at pp. 13-15 when it comes to smearing Plaintiff's name and placing her on the branding list EX A. As discussed above that posting falsely accuses the Plaintiff of being a vaccine fraudster and it forbids the Plaintiff from submitting paper proof of vaccinations to school districts and further forbids school districts from accepting any written and signed vaccination records form the plaintiff while falsely stating and representing that the Plaintiff was formally suspended from NYSIIS.  The continuous  posting - EX A wrongfully and in violation of due process makes it appear that such suspension amounts to authorized bona fide state action after all procedural due process safeguards were afforded to the Plaintiff. For all of the above referenced reasons it does not.

157.    For all of the reasons articulated above in this complaint, defendants' official position that they are above the constitution they do not need to follow the constitutional due process mandates of the Fourteenth Amendment as articulated in PHL Sec 12-a  is nothing short than absurd.

158.    In fact the defendants truly believe that; (1)  the Plaintiff is not entitled to any  due process; (2)  that she that does not have any right to have access to NYSIIS in the practice of medicine; (3)  that she does not have a property right in her nursing license which cannot be restricted without due process; (4)  and that pretty much they can do anything to the plaintiff under the form of formal state action without due process, namely: (i)  summarily declare her as a vaccine fraudster and (ii) summarily directing school districts to reject Plaintiff's paper records  without any recourse while (iii) at the same time misrepresenting to the public  that the Plaintiff was suspended from NYSIIS, when in fact the defendants' summary actions are legally without authority and constitutionally void.  See EX G hereto at pp. 13-14.

159.    The defendants truly acknowledge their unconstitutional position in EX F   hereto at p. 15 that: (a)  healthcare practitioners such as the Plaintiff  do not have (and never have had) any right to access the State's NYSIIS database, or in this case the NYCIR database; (b) the Plaintiff  has neither a property nor a liberty interest in such access and has no right to due process before or after her access was supposedly suspended from NYSIIS. In short, the defendants contend that the constitution does not apply to any of their adverse state government actions taken against anyone. All of the foregoing as stated in defendants' court papers EX F  and H hereto is simply incorrect and gives a glimpse into how the defendants crown themselves with powers which they do not have.

160.    For starters the Plaintiff does have an unfettered and mandatory right to have access to NYCIR in order to be able to practice medicine without restrictions and in order to have an unrestricted registered nursing and advance nurse practitioner licenses .

161.    The reason why he has such unfettered right is because the legislature gave it to him. See PHL § 6128(8)(c). "[H]ealth care providers and their designees, registered professional nurses, and pharmacists authorized to administer immunizations pursuant to subdivision two of section sixty-eight hundred one of the education law **shall have access to the statewide immunization information system** for purposes of **submission of information about vaccinations received by a specific registrant,** determination of the immunization status of a specific registrant....review of practice coverage, generation of reminder notices, quality improvement and accountability, including professional responsibility proceedings of the office of professional medical conduct and the state education department, **and printing a copy of the immunization**...record for the registrant's medical record, for the registrant's parent or guardian,

or other person in parental or custodial relation to a child, or for a registrant upon reaching eighteen years of age.

162.    Access to the NYSIIS is mandatory for the practice of nursing without a license restriction because PHL § 6128(3)(a)(i) provides that "(i) Any health care provider who administers any vaccine to a person less than nineteen years of age or, on or after September first, two thousand nine.... and immunizations received by a person less than nineteen years of age in the past if not already reported, **shall report all such immunizations and the results of any blood lead analysis to the department in a format prescribed by the commissioner within fourteen days of administration of such immunizations or of obtaining the results of any such blood lead analysis.**

163.    The Plaintiff is a "health care provider" within the definitions of Sec. 2168(2) which encompasses "any person authorized by law to order an immunization ...with respect to a person seeking or receiving a health care service from the health care provider".

164.    Insofar as defendants contend that that The Plaintiff " has neither a property nor a liberty interest in such access and had no right to due process before her access was suspended", that statement is wrong.

165.    The property and liberty right and interest attaches to Plaintiff's unrestricted registered nursing and advance nurse practitioner licenses which enables the Plaintiff to provide vaccination services for her patients as defined by PHL § 2168(2).

166.    In addition, where the legislature provides for due process in PHL § 12-a, in connection with any mandates and rights provided statutorily in PHL § 2168 as discussed above, due process right attaches to the deprivation of such rights by state officials in their prospective adverse actions taken against the plaintiff as described in this pleading.

168.    For all of the foregoing reasons the defendants' affirmative actions and postings and directives given to school districts regarding the Plaintiff's vaccination practices and the

administrative fiat bar of school districts from accepting vaccination records from the Plaintiff violate due process as the same actions were not taken in accordance with PHL § 12-a.

169.    Moreover, the administrative posting on the defendants' official web site equating the Plaintiff with vaccine fraud in the absence of the conduct of formal proceedings and findings as mandated by PHL § 12-a continues to violate due process because no such formal determinations were ever made.

170.    The continuous restriction imposed by the defendants on plaintiff's license through the denial of the NYSIIS access without notice and opportunity to be heard and without affording the plaintiff the full array of due process protections of PHL § 12-a or Education Law 6510 in proceedings maintained by the Board of Nursing is therefore a continuous and prospective due process violation.

171.    First the foregoing action imposes a license restriction by administrative fiat which can only be imposed by the Board of Nursing pursuant to Education law 6511 only after the conduct of due process protected formal hearing and after affording the Plaintiff the entire array of due process steps and remedies codified by the legislature in Education law Sec. 6510.

172.    Second, Plaintiff's license cannot be restricted without formal proceedings and due process afforded by Educ. Law § 6510.

172.    Third, even if assuming arguendo that a nursing license and an advanced nurse practitioner license is not entitled to due process protections, and to the formal procedural due process afforded by the Education Law Sec. 6510, any perceived violation of PHL § 2168 by the Plaintiff be subject to formal due process including the filing of formal charges, notice of charges, opportunity to respond and formal opportunity to be heard during an adjudicative hearing by an impartial adjudicator. New York legislature encompassed this due process right in PHL § 12-2. Holding up access to NYSIIS without that due process in perpetuity is a live and continuous

violation of the Fourteenth Amendment which constitutes a true injury within the analysis of Article III standing.

173.    State investigators' and the Commissioner's self-crowning themselves with powers to bypass the US Constitutional due process under the Fourteenth Amendment is not something that the legislature contemplated when it enacted either PHL § 6128 (which establishes NYSIIS) or PHL § 12-a mandating that due process and formal hearings be held where statutory violations are found to exist.

178.    Where the defendants continue to deny Plaintiff's access to NYSIIS  and at the same time they are restricting her license by preventing school districts from accepting paper records and represent her to be a vaccine fraudster without any formal determination of the same,  which they are doing here, their actions are nothing short than a continuous violation of Plaintiff's due process rights safeguarded by the Fourteenth Amendment and of her constitutional right to practice her profession without government interference safeguarded by the Fifth Amendment. A double prospective constitutional due process violation continues to exist. One is the de facto registered nursing and advance nurse practitioner license restriction taken without the due process formalities of Education law Sec. 6510, the other is the due process denied in contravention of PHL §  12-a before the license restriction is imposed or before any action related to PHL § 2168 is taken by state officials against the plaintiff as they have done in this case.

**AS AND FOR A FIRST CAUSE OF ACTION –
MANDATORY TEMPORARY INJUNCTION
PURSUANT TO FED. R. CIV. P. 65.**

179.    The Plaintiff repeats reiterates and realleges each and every allegation set forth hereinabove with the same force and effect as if the same is set forth at length herein.

(i)    **The grounds based upon which the Plaintiff is seeking a mandatory injunction and the <u>substance of the injunctive relief sought.</u>**

180. *  Pursuant to Fed. R. Civ P. 65 the Plaintiff requests the issuance of a mandatory temporary injunction mandating that the defendants immediately reinstate Plaintiff's access to NYSIIS because the defendant's administrative lock out of the Plaintiff from the NYSIIS amounts to a de facto license restriction without authority and it further amounts to continuous violations of Plaintiff's  Fourteenth Amendment due process rights. Defendants' summary revocation of Plaintiff's access to NYSIIS without due process amounts to a further violation of Plaintiff's constitutionally protected Fifth and Fourteenth Amendment rights to practice her profession without unreasonable government interference.

181.    Pursuant to Fed. R. Civ P. 65 the Plaintiff requests the issuance of a mandatory temporary injunction mandating that the defendants immediately remove any reference to her name form the branding list maintained by the defendants at https://health.ny.gov/prevention/immunization/schools/fraud.htm EX A hereto, together with any directives given to New York schools that they must reject paper documentation of vaccinations provided by the Plaintiff to her pediatric patients.

182.    Such summary action taken by administrative fiat amounts to a de facto license restriction which the defendants have no authority to impose and to a deprivation of Plaintiff' due process rights safeguarded by the Fourteenth Amendment for all of the reasons articulated above.

183.    Moreover, the defendants cannot act against the Plaintiff and impose any restrictions with respect to any issue related to their purported enforcement of any provision of the Public Health Law without affording the Plaintiff the procedural due process as mandated by PHL § 12-a as discussed above.

184.    Defendants' continuation of the posting in EX A discussed above  amounts to a continuous violation of the due process clause of the Fourteenth Amendment as well as a further violation of Plaintiff's constitutionally protected Fifth and Fourteenth Amendment right to practice her profession without unreasonable government interference for all of the reasons articulated above.

### (i)    In general – standard for issuance of mandatory injunction .

185.    Courts in the Second Circuit refer to preliminary injunctions as prohibitory or mandatory. Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it. A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.

186.    Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing "a clear or substantial likelihood of success on the merits.".

### (iii)    Irreparable harm – violation of constitutional rights.

187.    Federal courts in this jurisdiction defined and addressed the existence of the element of irreparable harm where violation of constitutional rights is alleged. An alleged prospective violation of a constitutional right "triggers a finding of irreparable harm" in the context of injunctive relief.

188.    A  party applying for a preliminary injunction satisfies the requirement to show irreparable harm by alleging violations of constitutional rights. A court will presume that a movant has established irreparable harm in the absence of injunctive relief if the movant's claim involves

the alleged deprivation of a constitutional right. When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.

189.    Moreover, courts can only enjoin existing and prospective violations of constitutional rights occasioned by the actions of state actors and officials. Past constitutional violations are not actionable through injunctive relief.

190.    The alleged present or prospective violation of a constitutional right triggers a finding of irreparable injury. Because violations of constitutional rights are presumed irreparable, the very nature of such allegations" satisfies the requirement that it show irreparable injury.

191.    For all of the reasons articulated hereinabove, with respect to all of the actions of the defendants which are the subject matter of this litigation,  as stated in this complaint, the Plaintiff has shown and present and proactive constitutional violation of her rights under the Fifth and Fourteenth Amendment of the U.S. Constitution exist which necessitate the issuance of both a mandatory preliminary injunction and a prohibitive temporary injunction as set forth below.

192.    Defendants' continuous and prospective summary suspension of Plaintiff's access to NYSIIS without affording the Plaintiff the procedural due process protections specified in PHL § 12-a amounts to a constitutional due process violation of plaintiff's Fourteenth Amendment due process rights.

193.    Defendants' continuous and prospective summary suspension of Plaintiff's access to NYSIIS amounts to a de facto restriction of Plaintiff's registered nursing and advance nursing licenses for all of the reasons articulated hereinabove.

194.    Nursing license restriction is a formal penalty for professional misconduct which is imposed pursuant to Educ. Law § 6511(5) by the sole state agency vested with powers to conduct disciplinary proceedings and impose such penalty, namely the Nursing Board. See Educ. Law §

6508. Such action can only be taken after the full array of due process protections mandated by Educ. Law § 6510(1)–(9)are afforded to the Plaintiff. The defendants are not authorized to impose license restrictions upon the Plaintiff under any provisions of New York Law. The Board of Nursing neither conducted disciplinary proceedings pursuant to Educ. Law § 6510 nor ever imposed a license restriction on either one of Plaintiff's licenses. See EX B and C hereto.

195.    Defendants' present and prospective unauthorized imposition of a license restriction on Plaintiff's nursing licenses by administrative fiat continues unabated and  without due process. The defendants continue to act  acting extra judicially  by restricting the Plaintiff from access to the NYSIIS. They are also  by barring the plaintiff presently and prospectively from providing vaccines through their unconstitutional postings on the branding site of statements and directives given to school districts regarding the rejection of Plaintiff's paper documentation of vaccinations of her pediatric patients. Such actions  prospectively violate Plaintiff's due process rights as set forth above in this complaint.

196.    Defendants' existing postings on the branding site EX A hereto of the information regarding the Plaintiff and the directives given to school districts to reject paper documentation of Plaintiff's vaccination record of her pediatric patients prospectively violate Plaintiff's constitutionally protected due process rights for all of the reasons articulated above in this complaint.

197.    In addition, all of defendants' present and prospective actions which are subject to this litigation and discussed hereinabove amount to an unreasonable state governmental interference with plaintiff's right to practice her professions free of such interference. Consequently, defendant's actions violate Plaintiff's Fifth and Fourteenth Amendment right to practice her profession free of unreasonable government interference.

198.    For all of the foregoing reasons, the Plaintiff has shown that a continued violation of her Fourteenth and Fifth Amendment rights exist as long as the defendants restrict her right to access the NYSIIS and therefore are imposing a license restriction without due process while interfering with her right to practice the profession of nursing without having an unauthorized license restriction issued in an unauthorized manner by administrative fiat and without due process.

199.    For all of the foregoing reasons, the Plaintiff has shown that a continued violation of her Fourteenth and Fifth Amendment rights exist as long as the defendants continue in full force and effect the posting on their branding website EX A hereto, which hold the plaintiff out as a vaccine fraudster without any formal protections of due process imposed by the Fourteenth Amendment and by PHL § 12-a and without any determination made by the Nursing Board that the Plaintiff engaged ever in such unprofessional conduct as defined by Educ. Law § 6509(2),

200.    For all of the foregoing reasons, the Plaintiff has shown that a continued violation of her Fourteenth and Fifth Amendment rights exist as long as the defendants continue in full force and effect the posting on their branding website, EX A hereto, which directs school districts to reject paper medical records from the Plaintiff evidencing the vaccination of her pediatric patients and which holds out the Plaintiff as a vaccine fraudster without the existence of any formal adjudication of any kind of such branding status.

**(iv)    The Plaintiff has shown a strong likelihood of
success on the merits to warrant the issuance
of a mandatory preliminary injunction.**

201.    As set forth above, the Plaintiff has made a strong showing of likelihood of success on the merits regarding application for a mandatory injunction.

202.    Specifically, Plaintiff  has shown that the defendants imposed a de facto license restriction upon her nursing license without authority and without any due process by using

60

administrative fiat and blocking her access to NYSIIS.

203.    A restriction of access to the NYSIIS has the net effect of imposing a license restriction upon Plaintiff's license to practice nursing pursuant to Educ. Law § 6511(5). Only the Board of Nursing can impose such license restriction, and only after it affords the plaintiff the array of procedural due process steps provided by Educ. Law § 6510 and SAPA §§ 301–401.

204.    In addition to having no authority to impose license restrictions on Plaintiff's nursing licenses, the defendants herein are knowingly and willfully continuing to violate Plaintiff's due process rights by maintaining such restriction without an order from the Nursing Board and without affording the Plaintiff her due process rights to notice and opportunity to be heard at a meaningful time and in a meaningful manner pursuant to PHL Sec. 12-a. Such conduct clearly violates the Fourteenth Amendment.

205.    Even the statute which governs the limited powers of the Defendants to act with respect to any violations of PHL § 2168 and 10 NYCRR Sec. 66-1.2 (none were ever identified or specified by the Defendants in this case) mandates that in case that such a violation occurs, notice an opportunity to be heard through formal hearings have to be given to the Plaintiff before any action is taken against him by the Commissioner. See PHL §. 12-a.

206.    No such procedure as specified in PHL § 12-a has ever been followed in this case. The reason could be simple, the Defendant investigator and the Bureau of immunizations simply do not have authority to restrict Plaintiff's license by administrative fiat.

207.    In addition, the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment.

208.    The due process clause of the Fifth and Fourteenth Amendment provides people

with a constitutional "right to pursue an occupation" free of unreasonable government interference.

209.    Defendants' use of administrative fiat to deny Plaintiff's right to access NYSIIS, which in turn amounts to a de facto license restriction is an unreasonable government interference which continues to violate Plaintiff's Fifth and Fourteenth Amendment rights.

210.    For all of the foregoing reasons the Plaintiff has made a strong showing of a likelihood of success on the merits of his application for a mandatory injunction against the defendants directing them to reinstate her access to NYSIIS.

211.    Moreover, the Plaintiff has made a strong showing of likelihood of success on the merits regarding her claims for prospective violations of the Fifth and Fourteenth Amendment rights by the  defendants' posting on the branding site EX A hereto accompanied by unauthorized directives given to school districts to reject Plaintiff's signed paper medical records evidencing vaccination of her pediatric patients for all of the reasons set forth above.

    **(v)**    **Balance of equities and public interest militate in favor of the
    issuance of a mandatory preliminary injunction.**

212.    The balance of equities and public interest favor a preliminary injunction here because there is a public interest in avoiding violations of constitutional rights.  The government does not have any legitimate interest on acting unconstitutionally.

213.    For all of the foregoing reasons the Plaintiff requests that a mandatory injunction issue in the form and substance set forth above: (a) directing the defendants to affirmatively reinstate Plaintiff's access to NYSIIS; (b) directing the defendants to remove from their branding web site EX A hereto any reference to Plaintiff's name and information; (c) directing the defendants to remove from their branding web site EX A hereto any and all directives given to school districts to reject Plaintiff's paper medical records as proof of vaccination; (d) directing the

defendants to affirmatively inform in writing all school districts in New York state that the posting on the branding site EX A hereto regarding the Plaintiff and the directives given there was without authority and that schools must accept form the Plaintiff any and all forms of proof of vaccination designated by the defendants in EX A including paper medical records.

**AS AND FOR A SECOND CAUSE OF ACTION –
PROHIBITIVE PRELIMINARY INJUNCTION
PURSUANT TO FED. R. CIV. PROC. 65.**

214.    Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if the same was set forth at length herein.

215.    The Plaintiff is seeking the issuance of a prohibitive preliminary injunction, preliminarily enjoining the defendants, their servants, agents and assigns from prospectively continuing to do any of the following acts: (a) restrict her access to NYSIIS and continue to impose a de facto license restriction on Plaintiff's nursing licenses in violation of her Fifth and Fourteenth Amendment rights set forth above; (b) continuously maintain the posting on the branding web site EX A hereto regarding the Plaintiff in violation of her Fifth and Fourteenth Amendment rights a set forth above.

**(i)    Showing of the element of irreparable harm – violation of constitutional rights**.

216.    In support of this application the Plaintiff has shown the existence of irreparable harm caused by defendants' continuous and prospective violation of Plaintiff's constitutional Fifth and Fourteenth Amendment rights.

217.    The Plaintiff has shown that the defendants are violating and continue to violate her Fifth and Fourteenth Amendment rights by: (a)  continuously restricting her nursing licenses by administrative fiat, extra judicially and without due process; (b) continuously restricting her access to NYSIIS by administrative fiat, extra judicially and without due process; (c) continuously

maiming the post on the bran ding site EX A hereto, branding her as a vaccine fraudster without any forma determination having been made by anyone that the Plaintiff engages in such criminal and unprofessional conduct by any court of competent jurisdiction or by the Nursing Board; (d) continuously maintaining the posting on the branding web site EX A hereto which directs school districts to reject plaintiff's paper vaccination records which the defendants are unconstitutionally restricting her access to NYSIIS.

<u>**(ii)    A showing of likelihood of success on the merits has been made.**</u>

218.    To establish a likelihood of success on the merits, 'prima facie showing of a reasonable probability of success is sufficient; actual proof of the Plaintiff's claims should be left to a full hearing on the merits."' A likelihood of success on the merits may be sufficiently established even where the facts are in dispute and the evidence need not be conclusive."

219.    In the present case the Plaintiff established likelihood of success on the merits because she has shown that Defendants continue to violate her Fifth Amendment  and Fourteenth Amendment rights as specifically articulated above in this Complaint.

<u>**(iii)    Balance of equities and public interest.**</u>

220.    The balance of equities and public interest favor a prohibitive preliminary injunction here because there is a public interest in avoiding violations of constitutional rights.

221.    For all of the reasons set forth hereinabove the Plaintiff has shown that in the absence of a preliminary prohibitive injunction in the form and substance articulated in paragraphs above in this complaint, the Defendants will continue to violate her  constitutionally protected rights safeguarded by the Fifth and Fourteenth  Amendment of the U.S. Constitution.

## AS AND FOR A THIRD CAUSE OF ACTION – 
## INJUNCTION PURSUANT TO 42 U.S.C. §1983.

222.    Plaintiff repeats realleges and reiterates each and every allegation set forth above with the same force and effect as if the same were set forth at length herein.

223.    Plaintiff is seeking a permanent injunction pursuant to 42 U.S.C. § 1983 enjoining the Defendants, their agents' servant and assigns from doing or causing to do the following:

(a)    Continuing to deny the Plaintiff access to NYSIIS as such denial amounts to the continuation of immediate and continuous irreparable harm caused by the defendants to the Plaintiff in the form of violation of due process rights safeguarded by the Fourteenth Amendment of the US Constitution, and N.Y. Pub. Health Law § 12-a and State administrative Procedure Act ("SAPA") Sec. 301 through Sec. 401.  The purported suspension was imposed by administrative fiat without Notice and Opportunity to be heard and without affording the Plaintiff the due process rights safeguarded by the Fourteenth Amendment of the US Constitution and by PHL § Sec. 12-a.

(b)    Continuing to deny the Plaintiff access to NYSIIS as such denial amounts to the continuation of immediate and continuous irreparable harm caused by the defendants to the Plaintiff in the form of violation of Plaintiff's Fifth and Fourteenth Amendment rights to practice her profession without unreasonable government interference for all of the reasons articulated hereinabove. The purported suspension was imposed by administrative fiat without Notice and Opportunity to be heard and without affording the Plaintiff the due process rights safeguarded by the Fourteenth Amendment of the US Constitution and by Pub. Health Law § 12-a.

(c)    Permanently enjoining the defendants from continuously and prospectively maintaining the posting regarding the plaintiff on the branding site EX A hereto on the grounds that the same posting amounts to an unauthorized and unconstitutional continuous violation of Plaintiff's Fifth and Fourteenth Amendment rights for all of the reasons articulated hereinabove.

224.    To state a cause of action under 42 USC Sec. 1983 the Plaintiff must allege that some state official acting under color of state law deprived him of a federal right.

225.    Furthermore, [t]o state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. The requirement that the defendant acted under 'color of state law is jurisdictional. Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.

226.    In this case the Plaintiff alleges that the state actors, namely the defendants herein are prospectively depriving her of Plaintiff's Fifth and Fourteenth Amendment rights for all of the reasons articulate above.

227.    In order to receive injunctive relief under 42 USC Sec. 1983, there must be the possibility and threat of prospective violation of constitutionally protective rights. In this case as set forth above the Plaintiff is seeking prospective injunctive relief against the state's actors for all of the reasons articulated above. It is defendants' continuous prospective actions in blocking her access to NYSIIS and the prospective maintaining of the unauthorized false posting on the official branding site maintained by the state officials (EX A) as well as the continuous postings on the branding web site - EX A hereto -and the directives given to school districts to reject Plaintiff' paper medical records supporting vaccination of her patients which continue to violate Plaintiff's Fifth and Fourteenth Amendment constitutional rights.

228.    In addition, the Plaintiff has shown that she is likely to succeed on the merits of his underlying claim for injunctive relief pursuant to 42 USC Sec. 1983 for the same reasons

articulated in connection with her application for preliminary injunctive relief set forth above in this complaint.

229.    In order to state a claim under Sec. 1983, a Plaintiff must allege the violation of a right preserved by another federal law or by the Constitution. That is exactly what the Plaintiff has done in this case. She  alleged violation of her  constitutionally protected rights of due process under the Fourteenth Amendment of the Constitution; to be free from actions of license restriction taken in violation of his Fourteenth Amendment due process rights; to be free from unreasonable governmental interference with her practice of the nursing and advanced nursing in violation of his Fifth and Fourteenth Amendment rights.

230.    To establish liability under 42 U.S.C. § 1983, a Plaintiff must prove two essential elements: (1) that the Defendants acted under color of state law and (2) that the Plaintiff suffered a deprivation of a constitutional right as a result of that action.

231.    In this case the Plaintiff has shown that the Defendants have acted and continue to act under the color of New York Law, namely under the guise of enforcing the integrity of NYSIIS under PHL Sec. 2168. However, they failed to act pursuant to PHL § 12-a and instead they acted unconstitutionally by administrative fiat.

232.    Consequently, the Plaintiff will be successful on her  claims for a permanent injunction pursuant to 42 U.S.C.  § 1983 seeking to prevent further violation of Fifth and Fourteenth Amendment  rights though the use of the New York investigative process employed by the investigators of the department of Health.

233.    For all of the above referenced reasons, the Plaintiff is seeking injunctive relief pursuant to 42 USC Sec. 1983 against the Defendants in the form and substance set forth herein.

**AS AND FOR A FOURTH CAUSE OF ACTION – DECLARATORY
JUDGMENT UNDER 28 USC § 2201.**

235.    Plaintiff is seeking a declaratory judgment against the defendants pursuant to 28

USC Sec. 2201 as follows: (a) declaring defendants' continuous summary action taken against the

Plaintiff in restricting her access to NYSIIS without due process pursuant to PHL § 12-a and

pursuant to the Fourteenth Amendment of the US Constitution as an unauthorized  de facto license

restriction and an action which violates Plaintiff's Fourteenth Amendment due process right and

her Fifth and Fourteenth Amendment right to practice her profession without unreasonable

government interference; (b) declaring defendants' continued actions in maintaining the posting

on the branding site EX A hereto without affording the Plaintiff any due process and without any

formal hearing and determination that she is a vaccine fraudster and engaged either in professional

misconduct under Education. Law Sec. 6509(2) as deliberately misrepresented on the branding

site  as an act which the defendants are not authorized to take under any provision of New York

law and as an act which is violative of Plaintiff's constitutionally protected due process rights

under the Fourteenth Amendment and of her constitutional right to practice the nursing profession

without government interference safeguarded by the Fifth and Fourteenth Amendment of the US

Constitution; (c) declaring defendants' continued directives given to school officials on the

branding site and in writing to reject Plaintiff's signed paper records evidencing vaccinations as an

act taken without authority, as an act which amounts to a de facto license restriction without

affording the Plaintiff any due process and as an act which continues to violate plaintiff's due

process rights safeguarded by the Fourteenth Amendment and further violates Plaintiff's right to

practice her profession without unreasonable governmental interference safeguarded by the Fifth an Fourteenth Amendments.

236.    In. this case the Plaintiff possesses two unrestricted plenary licenses to practice nursing: (a) one is a registered nurse license and (b) the other is an advanced nurse practitioner license with prescription privileges see EX B and C hereto. The does not have any record of disciplinary action. - EX B and C and her license was never restricted in any manner shape or form by the Board of Nursing.

236.    As set forth above, above because of Defendant's conduct of shutting the Plaintiff out of NYSIIS, and because of defendants' postings on the branding web site EX A hereto and their directives without authority and due process given to school districts to reject Plaintiff's vaccine records, in effect the defendants restricted Plaintiff's licenses by preventing her from offering vaccinations to her pediatric patients without any due process.

237.    As set forth above, the defendant Giovanetti relayed to the Plaintiff that she is under investigation and directed her to stop talking. However, no provision of New York or Federal law enables the defendants to impose a license restriction and declare the Plaintiff a vaccine fraudster and direct schools to reject Plaintiff's vaccine records without due process or without formal determinations under PHL § 12-a made  by the commissioner or under Educ. Law § 6510 made by the Nursing Board that support defendants' actions. None exist in this case.

238.    For all of the above referenced reasons the Plaintiff requests that his application for a declaratory judgment pursuant to 28 USC Sec. 2201 in the form and substance set forth above.

WHEREFORE the Plaintiff requests that the relief sought in this Complaint be granted in its entirety in the form and substance set forth in the First through Fourth  Causes of Action.

Dated: April 21, 2025

Attorney for the Plaintiff
JACQUES G. SIMON ATTORNEY
AT LAW P.C.
*/s/ Jacques G. Simon*
Jacques G. Simon, Esq.,
200 Garden City Plaza Suite 301
Garden City, NY 11530
Bar No. JS 9212
Phone: (516)378-840
Fax:    (516)378-2700
Email: jgs@jacquessimon.com

## COMPLAINT VERIFICATION DECLARATION PURSUANT TO 28 USC §1746.

ISADORA GUGGENHEIM affirms the following pursuant to 28 USC §1746.

1.      I am the Plaintiff in this action and as such I am fully familiar with all of the facts pertaining to this litigation.

2.      I have personal knowledge of the facts recited in this Verified Complaint herein.

3.      I have read the above Verified Complaint and know the facts therein to be true except to those facts stated to be upon information and belief and as to those I believe them to be true.

4.      I make this declaration pursuant to 28 USC §1746.

5.      I declare  under penalty of perjury that the foregoing is true and correct to the best of my knowledge and I am aware that if any of the statements herein are knowingly false, I will be subject to punishment.

Dated: April 22, 2025

ISADORA GUGGENHEIM