UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ISADORA GUGGENHEIM, LNP, RN,

                                   Plaintiff,

          -against-                                    Case No. 1:25-cv-03615-PKC
                                                       Electronically Filed
JAMES MCDONALD, MD,
in his official capacity as Commissioner of NYS
Department of Health;
JOSEPH A. GIOVANNETTI,
in his official capacity as Director of Bureau of
Investigations, NYS Department of Health,
et al.,
                                   Defendants
-------------------------------------------------------------X


### DEFENDANTS' MEMORANDUM OF LAW  IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
  State of New York
Attorney for Defendants
28 Liberty Street – 17th Floor
New York, New York 10005
(212) 416-6019


September 2, 2025


JAMES MIRRO
Assistant Attorney General
    of Counsel

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ...................................................................................................... 3

I.    Defendants Are Authorized By The Public Health Law
      To Protect The Health And Life Of New York's Residents......................4

II.   New York State's Immunization Information System
      And Immunization Mandates For Entry To Schools.............................5

ARGUMENT...................................................................................................8

THE PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION SHOULD BE DENIED ...........................................................8

I.    The Court Should Deny Plaintiff's Motion Because The Relief That
      She Seeks Is Barred By The State's Eleventh Amendment Immunity .........9

II.   The Court Should Deny Plaintiff's Motion Because She Fails To
      Offer Proof Of Her Article III Standing For Any Prospective Relief ..........10

III.  The Court Should Deny Plaintiff's Motion To The Extent That It
      Seeks Relief Based Upon Defendants' Conduct Before April 30, 2022 ........12

IV.   The Court Should Deny Plaintiff's Motion For
      An Order Reinstating Plaintiff's Access To NYSIIS ..........................13

      A. Plaintiff Has Failed To Show Irreparable
         Harm ........................................................................... 13

      B. Plaintiff Has Failed To Show A Likelihood Of
         Success On The Merits .................................................. 15

      (1)   Plaintiff Has Failed To Show A Property
            Interest In NYSIIS Access.................................... 16

      (2)   Plaintiff Has Failed To Show A Liberty
            Interest In NYSIIS Access.................................... 19

      (3)   Plaintiff Has Failed To Show Causation,
            Deprivation Or Other Harm.................................. 21

      (4)   Plaintiff Had Available To Her All The
            Process Due........................................................ 23

**V.    The Court Should Deny Plaintiff's Motion For An Order
Modifying Defendants' Website Posting About The Plaintiff** .................29

    **A. Plaintiff Has Failed To Show Irreparable
Harm** ................................................................................ 29

    **B. Plaintiff Has Failed To Show A Likelihood Of
Success On The Merits** ................................................................ 29

**VI.    The Public Interest And Balance Of Equities Weigh Heavily
Against Granting A Preliminary Injunction In Favor Of Plaintiff** ...........33

**CONCLUSION** ………………………………………………………………..36

# TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page(s)**

Ahlers v. Rabinowitz, 684 F.3d 53, 62-63 & n.8 (2d Cir. 2012) .................................................... 23

An v. City of New York, 230 F. Supp. 3d 224, 229-31 (S.D.N.Y. 2017...................................... 11

Blakeman v. James, 2:24-cv-1655 (NJC) (LGD), 2024 WL 3201671, **18, 20 (E.D.N.Y. 2024)
.................................................................................................................................................. 14

Blige v. CUNY, et al., 1:15–cv–08873 (GBD) (KHP), 2017 WL 498580, at *7 .......................... 9

Board of Regents v. Roth, 408 U.S. 564, 577 (1972). ................................................................... 16

Buntin v. City of New York, 395 F.Supp.2d 104, 107-08 (S.D.N.Y. 2005), aff'd, 225 Fed. Appx.
28 (2d Cir. 2007)...................................................................................................................... 12

Cacchillo v. Insmed, 638 F.3d 401, 406 (2d Cir. 2011) ................................................................. 8

Cameron v. Zucker, 2017 WL 2462692, *7 (S.D.N.Y. 2017)...................................................... 11

Castle Rock v. Gonzalez, 545 U.S. 748, 756, 760-61 (2005)....................................................... 16

Catanzaro v. Weiden, 188 F.3d 56, 63-64 (2d Cir. 1999)............................................................ 27

Citibank v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985)............................................................... 14

City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) ............................................................... 11

Cohn v. New Paltz, 363 F. Supp. 2d 421, 433-34 (N.D.N.Y. 2005) ........................................... 25

Conn v. Gabbert, 526 U.S. 286, 291-92 (1999). ......................................................................... 19

Connecticut v. Lamont, 6 F.4th 439, 448 (2d Cir. 2021).............................................................. 11

Daytree v. Walsh, 332 F. Supp. 3d 610, 628 (E.D.N.Y. 2018) ................................................... 11

DiBlasio v. Novello, 413 Fed. Appx. 352, 357-58 (2d Cir. 2011) ............................................... 24

Ex parte Young, 209 U.S. 123 (1908) ........................................................................................... 9

Findlay v. MTA Bus Co., 124 N.Y.S.3d 193, *193 (1st Dep't 2020) .......................................... 17

Fishermen's Finest v. United States, 155 Fed. Cl. 576, 599 (2021).............................................. 19

Friends v. Town of East Hampton, 841 F.3d 133, 143 (2d Cir. 2016 ............................................ 8

Garland v. New York City Fire Department, 574 F. Supp. 3d 120, 133-34 (E.D.N.Y. 2021) ..... 35

Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984) .................................................... 27

Gilbert v. Homar, 520 U.S. 924, 930 (1997) .............................................................. 26

Goe v. Zucker, 43 F.4th 19, 32 (2d Cir. 2022) ............................................................ 31

Goldstein v. Hochul, 680 F. Supp. 3d 370, 382 (S.D.N.Y. 2023). ................................... 10

Green v. Hilliard, 2015 WL 8664175, *8 (D. Conn. 2015) ............................................. 19

Green v. Mansour, 474 U.S. 64, 68 (1985) .................................................................. 9

Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) ...................................... 11

Guettlein v. United States, 577 F. Supp. 3d 96, 104-05 (E.D.N.Y. 2021) .......................... 19

Hannah v. Larche, 363 U.S. 420, 441-42 (1960) .......................................................... 24

Hodel v. Virginia, 452 U.S. 264, 300-01 (1981). .......................................................... 26

Horton v. Westling, No. 18-763, 765 Fed. Appx. 531 (2d Cir. 2019) ............................... 25

Hu v. City of New York, 927 F.3d 81, 102-03 (2d Cir. 2019) .......................................... 19

In re Decker, 760 N.Y.S.2d 908, *908 (3d Dep't 2003) ................................................. 17

ISS Action v. Port Authority, 161 Fed. Appx. 120 (2d Cir. 2005) ................................... 18

Kahn v. Inspector General, 848 F. Supp. 432, 438 (S.D.N.Y. 1994) ................................ 19

Kelly Kare v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991) ............................................ 16

Kelly v. New York State, 2021 WL 2333349, *1 (E.D.N.Y. 2021) .................................... 28

Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) ...................................................... 25

Maniscalco v. New York City DOE, 563 F. Supp. 3d 33, 39-40 (E.D.N.Y. 2021) ................. 36

Maple Avenue v. Town of North Haven, 924 F. Supp. 2d 392, 399 (D. Conn. 2013) ............. 17

Marcavage v. City of New York, 689 F.3d 98, 103 (2d Cir. 2012) .................................... 11

Mathews v. Eldridge, 424 U.S. 319, 335 (1976) .......................................................... 26

iv

Moore v. Consolidated Edison, 409 F.3d 506, 511 (2d Cir. 2005),.................................................. 8

National Railroad v. McDonald, 978 F. Supp. 2d 215, 231 (S.D.N.Y. 2013) ............................ 10

Neu v. Corcoran, 869 F.2d 662 (2d Cir. 1989) ........................................................................... 30

Newell v. Holder, 579 Fed. Appx. 53, *54 (2d Cir. 2014) ......................................................... 17

Official Committee v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir. 2003) ......................... 12

Owens v. Okure, 488 U.S. 235, 251 (1989)................................................................................. 13

Paul v. Davis, 424 U.S. 693, 706-12 (1976) .............................................................................. 30

Pennhurst v. Halderman, 465 U.S. 89, 103-06, 121 (1984)......................................................... 9

People v. Actavis, 787 F.3d 638, 650 (2d Cir. 2015); .................................................................. 8

Plaza Health v. Perales, 878 F.2d 577, 581 (2d Cir. 1989)....................................................... 17

Puerto Rico v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993)................................................. 9

Quick v. Garcia, 16-CV-2646 (KAM) (LB), 2016 WL 6069504, *2 (E.D.N.Y. 2016) ............... 15

Reed v. Goertz, 598 U.S. 230, 236 (2023).................................................................................. 15

Rosenbaum v. Atlas, 887 N.Y.S.2d 93, *93 (1st Dep't 2009)...................................................... 17

S&D v. Goldin, 844 F.2d 962, 968 (2d Cir. 1988) ..................................................................... 19

S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 742 (1984) ........................................................ 24

Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) ......................................................... 30

Sunnen v. State of New York, No. 10 Civ. 372(PKC), 2010 WL 3912728, *2 (S.D.N.Y. 2010) 13

T.C. v. New York State, 2022 WL 17689841, *8-11 (S.D.N.Y. 2022)........................................ 28

T.W. v. NYS Board of Law Examiners, 110 F.4th 71, 94 (2d Cir. 2024).................................... 10

Town of Massena v. Healthcare Underwriters, 98 N.Y.2d 435, 444 (2002) ............................... 31

United States v. Joseph, 2024 WL 1827291, *3 (2d Cir. 2024.................................................... 17

<u>Walker v. NYS DOH,</u> 2:24-cv-6836 (NJC) (LGD), 2025 WL 1786917, *50-55 (E.D.N.Y. 2025)
................................................................................................................................................ 25

<u>Weinberger v. Romero-Barcelo,</u> 456 U.S. 305, 312 (1982). ....................................................... 33

<u>Winter v. NRDC,</u> 555 U.S. 7, 24 (2008) ..................................................................................... 8

<u>Zhang v. City of New York,</u> 17-cv-5415 (PKC), 2022 WL 17844361, *3 (S.D.N.Y. 2022) ....... 13

<u>Zigmund v. Solnit,</u> 199 F.3d 1325, *2 (2d Cir. 1999) ................................................................. 23

**Statutes**

FRCP 8 ........................................................................................................................................ 2

New York's Public Health Law ................................................................................................... 2

NYCRR 66-1.2(e) ....................................................................................................................... 6

PHL §§ 206(1)(L) ....................................................................................................................... 4

PHL §§ 206(1)(L), 2168 and 2164 ............................................................................................. 4

**Other Authorities**

Eleventh Amendment immunity ................................................................................................. 2

New York Code of Rules and Regulations .................................................................................. 7

## PRELIMINARY STATEMENT

Defendants James McDonald and Joseph Giovannetti submit this memorandum in opposition to the motion, memorandum and testimony submitted by Plaintiff Isadora Guggenheim in support of her motion for a preliminary injunction ("P's PI Motion" and "P's PI Brief"). Defendant McDonald is the Commissioner of New York State's Department of Health (the "DOH"); and Defendant Giovannetti is the Director of DOH's Bureau of Investigations, Division of Legal Affairs. Plaintiff Guggenheim is a nurse practitioner who alleges that she has administered immunizations to school-aged children in New York and is currently under investigation by DOH for her past immunization and reporting practices.

Plaintiff alleges violations of her rights under New York law and under the due process clause of the Fourteenth Amendment. The gravamen of Plaintiff's FAC is that Defendants violated her rights (1) by suspending her access to a State database called the New York State Immunization Information System ("NYSIIS"), (2) by posting on the DOH website that her access to NYSIIS had been suspended and (3) by advising schools through the DOH website not to accept paper-only records of immunization from her, all allegedly without due process. Plaintiff now seeks a preliminary injunction. *See* Plaintiff's Notice of Motion (ECF No. 46).[1]

Plaintiff's motion should be denied in its entirety. As recited in the FAC, Defendants' allegedly wrongful conduct occurred from as early as the onset of the Covid-19 pandemic in 2020 through October 2024. Following commencement of DOH's administrative investigation of

---

[1] Plaintiff seeks a mandatory preliminary injunction (1) ordering Defendants to *reinstate* her access to NYSIIS, (2) directing Defendants to *remove* Plaintiff's name and information posted on defendants' web site, (3) directing Defendants to *revoke* their directions to school districts to reject Plaintiff's vaccination records; and a prohibitive preliminary injunction (4) *prohibiting* Defendants from blocking Plaintiff's access to NYSIIS, (5) *prohibiting* Defendants from continuing to maintain the posting on their official web site, and (6) *prohibiting* Defendants from continuing to direct school districts to reject Plaintiff's vaccination records.

Plaintiff's immunization practices, Defendants suspended Plaintiff's access to NYSIIS in about June 2022, after providing her notice and an opportunity to explain certain deletions and other issues that Defendants had identified on the State's database. Defendants subsequently posted her name to the DOH website, which she alleges to have discovered in about October 2024. Plaintiff fails to offer any evidence of any more recent conduct by Defendants, much less any evidence that Defendants are likely to harm her or her medical practice in the *future*. Thus, Plaintiff's claims are barred by Defendants' Eleventh Amendment immunity and by Plaintiff's failure to establish Article III standing for the injunctive relief that she now seeks. [2]

Plaintiff's claims also fail on the merits. Plaintiff fails to plead or to prove that she had any right or entitlement to NYSIIS access. Rather, under New York's Public Health Law, DOH had discretion whether to permit her such access. Absent any right or entitlement to access, Plaintiff lacked any property or liberty interest to trigger the protections of constitutional due process in connection with DOH's suspension of her access. Plaintiff also fails to plead or to prove any defamation or constitutional violation by DOH's posting of her name, the fact of her NYSIIS suspension and a directive to schools and school administrators not to accept paper-only records of immunization from her.

Plaintiff concedes the truthfulness of DOH's posting by affirmatively pleading in her FAC that her access *was* suspended in about June 2022, after Defendants advised Plaintiff that she was under investigation for her immunization and reporting practices. New York law grants DOH broad authority to protect the public health, including by requiring sufficient proof of immunization of school-age children and by communicating with schools and the public as may be necessary to implement those requirements. DOH's very limited and entirely truthful posting

---

[2] Defendants' motion to dismiss based upon Eleventh Amendment immunity, lack of Article III standing, violation of FRCP 8 and failure to state a claim ("D's MTD Brief") will be filed today.

about Plaintiff's access suspension and directive to schools not to accept one form of vaccination record from her is plainly within its authority. Furthermore, Plaintiff fails to plead or to prove any facts that suggest that Plaintiff or her medical practice ever was harmed – much less that she is likely to be harmed in the *future* – by any conduct of Defendants.

Therefore, Defendants now oppose Plaintiff's motion, which should be denied for all of the following reasons: (1) it seeks relief that is barred by the Eleventh Amendment to the United States Constitution, including relief based upon Defendants' alleged violation of State law and based upon their alleged past conduct; (2) it fails to make a sufficient evidentiary showing to establish Plaintiff's Article III standing for the prospective relief that she seeks, including any likelihood that she faces any certainly impending future harm from Defendants; (3) it fails to make a sufficient evidentiary showing to establish any violation of Plaintiff's constitutional rights; and (4) it fails to establish any of the requirements for preliminary injunctive relief, including irreparable harm to her, the likelihood that her claims will succeed on the merits or that the public interest weighs in favor of any injunction in these circumstances.

## BACKGROUND

Plaintiff commenced this action on April 30, 2025. On June 6, 2025, the Court entered an order dismissing the original complaint for violation of FRCP 8 (the "Order," ECF No. 28). Plaintiff filed her FAC on June 20, 2025 (ECF No. 29). The FAC alleges that Defendants – New York State officials acting in their official capacities – engaged in certain wrongful conduct dating from the onset of the Covid-19 pandemic in 2020 (*see, e.g.,* FAC ¶¶ 20, 24, 32). According to the FAC, in about June 2022, Defendants suspended Plaintiff's access to NYSIIS (FAC ¶¶ 52, 70) and posted her name, the fact of her NYSIIS suspension, and a directive to schools not to accept paper-only records of immunization from her, which she claims to have

first discovered in about October 2024 (FAC ¶¶ 67, 70). Plaintiff alleges that Defendants violated New York and federal law. Defendants separately move for the dismissal of this action.

On July 22, 2025, Plaintiff moved for a preliminary injunction (ECF No. 46). With this memorandum, Defendants have served the Declaration of Joseph Giovannetti, which describes the pertinent regulatory framework and Defendants' investigation of Plaintiff's immunization and reporting practices ("Giovannetti Dec."); and the Declaration of Vajeera Dorabawila, Ph.D., which describes the process that DOH requires before it grants a user access to the NYSIIS database ("Dorabawila Dec."). For the Court's convenience, Defendants summarize below the pertinent statutory and regulatory framework under New York's Public Health Law ("PHL"), including authority granted to DOH to protect the public health by establishing and maintaining the State's immunization programs and immunization database, by collecting proofs of immunization in the form(s) it deems appropriate, by collecting proof of immunizations from the schools within the State, and by operating and assuring the quality, integrity and effectiveness of the State's immunization programs (*See, e.g.,* PHL §§ 206(1)(L), 2168 and 2164).

## I.      Defendants Are Authorized By The Public Health Law To Protect The Health And Life Of New York's Residents

The Commissioner of the DOH is charged with broad responsibility for the "health and life of the people of the state," including responsibility for "the operation of public immunization programs," including "quality assurance for immunization related activities and other immunization related activities" (PHL § 206(1)(a)-(1)(L)). To carry out these responsibilities, in addition to the authority granted under the NYSIIS provisions below, "the commissioner and any

person authorized by him [] may, without fee or hindrance, enter, examine and survey all grounds, erections, vehicles, structures, apartments, buildings and places" (Id. at § 206(2)). [3]

## II.    New York State's Immunization Information System And Immunization Mandates For Entry To Schools

The New York legislature directed the Commissioner to establish NYSIIS – and granted the Commissioner broad discretion to implement and maintain NYSIIS – by legislation that is codified at PHL § 2168. Section 2168 requires the Commissioner "to establish a statewide automated and electronic immunization information system that will serve, and shall be administered consistent with" the public health (PHL § 2168(1)). In particular, the legislature intended for NYSIIS to "collect reports of immunizations and thus reduce the incidence of illness, disability and death due to vaccine preventable diseases" (Id. at § 2168(1)(a)).

Section 2168 requires that "[a]ny health care provider who administers any vaccine to a person less than nineteen years of age [] shall report all such immunizations [] to the department in a format prescribed by the commissioner within fourteen days of administration of such immunizations" (Id. at § 2168(3)(a), 2168(5)(a)). Providers are likewise required to report "immunizations [previously] received by a person less than nineteen years of age [] if not already reported" (Id.). In contrast to these mandates, providers are not required to report (but may report) immunizations of individuals aged nineteen and older. [4]

---

[3] In addition, the Commissioner may "issue subpoenas, compel the attendance of witnesses and compel them to testify in any matter or proceeding before him" (Id. at § 206(4)(a)). Likewise, "[t]he commissioner, or any person designated by him [] may issue subpoenas and administer oaths in connection with any hearing or investigation under or pursuant to this chapter" (Id. at § 12-a(1)). On August 3, 2020, the Commissioner expressly authorized Director Giovannetti "to administer oaths, compel the attendance of witnesses and the production of books, papers and records and to take proof and testimony concerning all matters within the jurisdiction of the New York State Department of Health."

[4] The Statute provides that "[a]ny health care provider who administers any vaccine to a person nineteen years of age or older, may report, with the consent of the vaccinee, all such immunizations to the

Section 2168 requires the prompt reporting of accurate information. "[NYSIIS] shall serve as a means for authorized users to receive prompt and accurate information, as reported to the system, about the vaccines that the registrant has received" (Id. at § 2168(3)(c)). This includes the reporting of specific data elements and any other information requested by DOH: "[t]he information provided to the system [] shall include the national immunization program data elements and other elements required by the commissioner" (Id. at § 2168(5)(a)). In addition, Section 2168 provides that "[a]ll health care providers shall provide the department [] with additional or clarifying information upon request" (Id. at § 2168(5)(c)).

The Commissioner is authorized to suspend access to the system in his sole discretion: "The commissioner [] may refuse access to the statewide immunization information system based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation" (Id. at § 2168(9)). Further, the Commissioner is authorized to "promulgate regulations as necessary to effectuate the provisions of this section[,]" including "provision for orderly implementation and operation of the statewide immunization information system, including the method by which each category of authorized user may access the system" (Id. at § 2168(13); see also NYCRR 66-1.2(e) (requiring, among other things, that "[e]ach person seeking access to NYSIIS [] must submit a completed application for access").

Thus, DOH requires, among other things, that the applicant for NYSIIS access complete a training course and consent to the terms of and sign the "NYSIIS User Agreement" before DOH determines whether to grant the provider access (see Dorabawila Dec.). No provider or other user is entitled to NYSIIS access and it is within DOH's sole discretion whether to grant such access. DOH's records reflect that Guggenheim completed this process on September 2,

---

department in a format prescribed by the commissioner within fourteen days of administration of such immunizations" (NYS PHL § 2168(3)(b)(i)).

2019, and DOH granted her access on September 16, 2019 (Id.). The User Agreement obligates users "to abide by the terms of Public Health Law, Title 6, Article 2168, and the provisions of 10 NYCRR (New York Code of Rules and Regulations), Section 66-1.2" (Exhibit "A" to Dorabawila Dec.). It provides that "any violations of these provisions will result in termination of access privileges" (Id. at 4).[5]

New York's Public Health Law mandates the immunization of school-age children against certain vaccine-preventable illnesses, such as poliomyelitis, mumps, measles, diphtheria, rubella, varicella, Haemophilus influenzae type b (Hib), pertussis, tetanus, pneumococcal disease, and hepatitis B, in order to attend school (see PHL § 2164). School administrators are required to inform the parents of students that immunizations are required for admission; and school administrators are prohibited from permitting admission of unvaccinated children into schools (Id. at § 2164(6)-(7)). Schools are required to provide DOH proof of compliance with these provisions (Id. at § 2164(11)). Healthcare practitioners are required to report such immunizations "in a format prescribed by the Commissioner" (Id. at § 2168(3)(a)-3(b)(i)).

Defendants hereby incorporate the testimony set forth in the Declaration of Joseph Giovannetti, which describes the DOH's investigation of Plaintiff's immunization administration and reporting practices, DOH's suspension of her database access and DOH's posting about the Plaintiff on its website; and the facts set forth in the Declaration of Vajeera Dorabawila, which describes the process by which applicants may seek such access.

---

[5] Separately, on August 29, 2019, as a condition of her access to the State's Health Provider Network, Guggenheim agreed to the terms of the "New York State Department of Health, HPN Document, Medical Practice Agreement and Account Request" (the "HPN Agreement," Exhibits "B" and "C" to Dorabawila Dec.). Section VI of the HPN Agreement obligates the user to "cooperate" with DOH in any "investigations" concerning the State's databases (Id.). Section V provides that "[a]bsent an appropriate response to account violations, user account privileges will be deleted upon a first offense," and Section VII provides that "[a]ccess to [the DOH] secure website is a privilege that may be revoked temporarily or permanently when violations of these security policies occur" (Id.)

# ARGUMENT

## THE PLAINTIFF'S MOTION FOR A
## PRELIMINARY INJUNCTION SHOULD BE DENIED

A preliminary injunction is an "extraordinary and drastic remedy," Moore v. Consolidated Edison, 409 F.3d 506, 511 (2d Cir. 2005), that is "never awarded as of right." Winter v. NRDC, 555 U.S. 7, 24 (2008).

"When, as here, a preliminary injunction 'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,' the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." Friends v. Town of East Hampton, 841 F.3d 133, 143 (2d Cir. 2016).[6]

In addition, the Second Circuit has held the movant to "a heightened standard" where, as here: (i) an injunction is "mandatory" or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." People v. Actavis, 787 F.3d 638, 650 (2d Cir. 2015); Cacchillo v. Insmed, 638 F.3d 401, 406 (2d Cir. 2011) ("a mandatory preliminary injunction [] alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo").

Thus, "[a] mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" Cacchillo, 638 F.3d at 406. In such cases, the movant must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm. Id.

---

[6] Internal quotations and citations to them are generally omitted throughout this brief.

I.      **The Court Should Deny Plaintiff's Motion Because The Relief That She Seeks Is Barred By The State's Eleventh Amendment Immunity**

Defendants hereby incorporate into this opposition memorandum the points and authorities set forth in Defendants' MTD Brief on the issue of the State's Eleventh Amendment immunity, including the points and authorities set forth under the heading "Failure to Plead Subject Matter Jurisdiction" and those set forth in Point I of that Brief.

Like her FAC, Plaintiff's PI Motion relies extensively on Defendants' alleged violations of State law to support her motion (*see* P's PI Brief at 12-22). As set forth more fully in Defendants' MTD Brief, Point I.A., Defendants are immune from all such claims. *See* Pennhurst v. Halderman, 465 U.S. 89, 103-06, 121 (1984) ("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment"); *see also* Blige v. CUNY, et al., 1:15–cv–08873 (GBD) (KHP), 2017 WL 498580, at *7 (recommending dismissal of defamation claim based upon Eleventh Amendment), *adopted*, 2017 WL 1064716 (S.D.N.Y. 2017). Thus, to the extent that Plaintiff's PI motion relies upon alleged violations of State law, it should be denied.

In addition, like her FAC, Plaintiff's PI Motion relies exclusively on Defendants' past allegedly wrongful conduct. As set forth more fully in Defendants' MTD Brief, Point I.B., Defendants are immune from all such claims. *See, e.g.,* Ex parte Young, 209 U.S. 123 (1908) (recognizing narrow exception to immunity where state threatened *future* unconstitutional action); Pennhurst, 465 U.S. at 105-106 ("an award of retroactive relief necessarily 'fall[s] afoul of the Eleventh Amendment'"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend [] Young [] to claims for retrospective relief"); Puerto Rico v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) ("the [Young] exception is narrow: It applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in

the past"); <u>T.W. v. NYS Board of Law Examiners</u>, 110 F.4th 71, 94 (2d Cir. 2024) (affirming dismissal of action for declaratory and injunctive relief that would not prevent unlawful future conduct); <u>National Railroad v. McDonald</u>, 978 F. Supp. 2d 215, 231 (S.D.N.Y. 2013) (McMahon, J.) (holding that the declaration sought would be "wholly retrospective: in practical terms, *such a declaration would require the state to give back the land, thereby restoring the status quo prior to the allegedly unlawful taking, which was over and done with back in February 2008*"), *aff'd*, 779 F.3d 97 (2d Cir. 2015).[7]

Thus, the preliminary injunctive relief sought by Plaintiff's PI Motion is barred in its entirety by the State's Eleventh Amendment immunity.

## II.    The Court Should Deny Plaintiff's Motion Because She Fails To Offer Proof Of Her Article III Standing For Any Prospective Relief

Defendants hereby incorporate into this opposition memorandum the points and authorities set forth in Defendants' MTD Brief on the issue of the Plaintiff's lack of Article III standing for any of the prospective relief that she seeks in this action, including the points and authorities set forth under the heading "Failure to Plead Subject Matter Jurisdiction" and those set forth in Point II of that Brief. "At the preliminary injunction stage, a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment." <u>Goldstein v. Hochul</u>, 680 F. Supp. 3d 370, 382 (S.D.N.Y. 2023).

Like her FAC, Plaintiff's PI Motion fails to adduce sufficient evidence of any certainly impending *future* harm that might support her Article III standing for the injunctive relief that

---

[7] Plaintiff's request for a "mandatory injunction," which seeks an order directing the Defendants to restore the *status quo* from *before* DOH suspended her NYSIIS access and *before* DOH posted about her suspended access, concedes the point (*see* P's PI Motion; Note 1 *supra*). Such mandatory injunctive relief is also barred because it would require "affirmative action" by the State. In the Second Circuit, "sovereign immunity applies [] if the requested relief requires affirmative action by the sovereign." <u>National Railroad</u>, 978 F. Supp. 2d at 234-35 (collecting cases).

she seeks. To the contrary, her evidence points exclusively to Defendants' past allegedly wrongful conduct and fails to prove any practical harm that resulted or will result to her, which is not sufficient to support prospective relief. *See* City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (plaintiff lacked standing for injunction where he failed to show a likelihood that he would again be subject to the allegedly illegal practice); Marcavage v. City of New York, 689 F.3d 98, 103 (2d Cir. 2012) ("In establishing a certainly impending future injury, a plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought").

The courts repeatedly have held that past injuries alone will not suffice to establish the likelihood of future injury that is required to support standing for prospective relief. *See, e.g.,* Connecticut v. Lamont, 6 F.4th 439, 448 (2d Cir. 2021) (holding that organization lacked standing for injunctive relief, reasoning that "[a] plaintiff seeking injunctive [] relief cannot rely on past injury [] but must show a likelihood that [it] will be injured in the future"); Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (Chen, J.) ("When 'only past acts are involved,' declaratory relief is unavailable"); Daytree v. Walsh, 332 F. Supp. 3d 610, 628 (E.D.N.Y. 2018) (Bianco, J.) (dismissing claims for declaratory and injunctive relief that were based on past conduct); An v. City of New York, 230 F. Supp. 3d 224, 229-31 (S.D.N.Y. 2017) (Schofield, J.) (despite past instances of similar violations, plaintiff lacked standing for injunctive relief); Cameron v. Zucker, 2017 WL 2462692, *7 (S.D.N.Y. 2017) (Koeltl, J.) (plaintiff failed to identify "any [] injury he will suffer that is neither remote nor speculative, but actual and imminent").

Here, Plaintiff has failed to offer sufficient proof that Defendants are likely to engage in *any* future conduct that might harm her or her medical practice, much less has she shown that she

faces any "certainly impending future injury." Indeed, as detailed in Point IV.B.(3) below (and incorporated here by reference), she has offered virtually no proof that Defendants' suspension of her database access or posting of her name on the DOH website has had *any* practical impact upon her medical practice, her medical license or her income to date.

To the contrary, the FAC affirmatively pleads that Plaintiff's vaccination practice "remained unaffected between July 2022 and October 2024" (FAC ¶¶ 56, 60-62). Plaintiff claims that she *was not even aware* of her database suspension in the 28 months between June 2022 and October 2024 (FAC ¶¶ 52, 54, 62-63). These are judicial admissions to which Plaintiff should be bound. *See* Official Committee v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are 'judicial admission[s]' by which Color Tile Committee was 'bound throughout the course of the proceeding'").

In addition, to the extent that Plaintiff's motion seeks to establish a *procedural* due process violation in the manner by which Defendants decided to suspend her database access and to post the fact of her suspension on its website (which is her principal if not exclusive claim), that motion offers no evidence that Plaintiff will be subjected to any *similar* procedural due process violation in the *future*. Nor does Plaintiff's motion offer any evidence of "an official policy or its equivalent" that might threaten Plaintiff with any such future injury. Therefore, Plaintiff has failed to establish her Article III standing for the prospective relief that she seeks.

### III.    The Court Should Deny Plaintiff's Motion To The Extent That It Seeks Relief Based Upon Defendants' Conduct Before April 30, 2022

Plaintiff offers evidence of alleged wrongdoing by Defendants that dates back more than three years before this action was commenced on April 30, 2025 (*see, e.g.*, Guggenheim Dec. at ¶¶ 16-77). To the extent that the Plaintiff seeks to assert any constitutional claim, she must do so through the cause of action provided by 42 U.S.C. § 1983. *See* Buntin v. City of New York, 395

F.Supp.2d 104, 107-08 (S.D.N.Y. 2005), *aff'd*, 225 Fed. Appx. 28 (2d Cir. 2007). In New York, all such claims are subject to a three-year limitations period. *See* <u>Owens v. Okure</u>, 488 U.S. 235, 251 (1989) (applying New York's three-year limitations period to Section 1983 claims); <u>Zhang v. City of New York</u>, 17-cv-5415 (PKC), 2022 WL 17844361, *3 (S.D.N.Y. 2022) (same); <u>Sunnen v. State of New York</u>, No. 10 Civ. 372(PKC), 2010 WL 3912728, *2 (S.D.N.Y. 2010) (same). Thus, Plaintiff's motion should be denied to the extent that it is based upon events that transpired more than three years before she filed this action; and the Court should decline to consider such evidence in connection with her more recent claims.

### IV.    The Court Should Deny Plaintiff's Motion For An Order Reinstating Plaintiff's Access To NYSIIS

Plaintiff's motion seeks a mandatory preliminary injunction (1) ordering Defendants to reinstate her access to NYSIIS and a prohibitory preliminary injunction (2) ordering Defendants not to interfere with her access to NYSIIS (*see* P's PI Motion). Because Plaintiff's access is currently suspended, Plaintiff must demonstrate that she is entitled to a *mandatory* preliminary injunction *reinstating* her access. Plaintiff, however, has failed to meet the high standard for that "extraordinary and drastic remedy[.]" *See* <u>Moore</u>, 409 F.3d at 511.

### A. <u>Plaintiff Has Failed To Show Irreparable Harm</u>

On June 30, 2022, Director Giovannetti provided *written notice* directly to Guggenheim that her database access would be suspended, to which she confirmed receipt by her reply email (Giovannetti Dec. at ¶ 27). She did not pursue any legal action to protect her asserted rights until she filed this action on April 30, 2025 (ECF No. 1) and filed her pre-motion letter signaling her intention to file her preliminary injunction motion on June 26, 2025 (ECF No. 36). Thus, Plaintiff delayed nearly *three years* before filing her motion for preliminary injunction.

Defendants submit that Plaintiff's delay in bringing this action and this motion requires denial of her request for a preliminary injunction.

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Citibank v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985). Where the plaintiff delays unreasonably to enforce her rights, it undercuts her argument that she faces irreparable harm absent the injunction. Thus, the Second Circuit has held that "plaintiffs' [10-week] delay in seeking relief [] render[s] inoperative any presumption that [] irreparable harm [] has indeed occurred[.]" Id. at 276. "Citibank's failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" Id. at 277. On this basis, the Second Circuit reversed and vacated the lower court's order granting a preliminary injunction.

Apart from Plaintiff's unexplained three-year delay in seeking the extraordinary and drastic relief of a preliminary injunction, she has failed to offer any evidence that Defendants' conduct has infringed her constitutional rights. Plaintiff's mere allegation of a bald constitutional violation that is unlikely to succeed on the merits does not satisfy the irreparable harm showing that she is required to make on this motion. "In cases concerning claims of constitutional injury, a bare assertion of a constitutional injury, without evidence 'convincingly show[ing]' the existence of non-compensable damages, is insufficient to automatically trigger a finding of irreparable harm." Blakeman v. James, 2:24-cv-1655 (NJC) (LGD), 2024 WL 3201671, **18, 20 (E.D.N.Y. 2024) (denying motion for preliminary injunction); see also Goldstein v. Hochul, 680 F. Supp. 3d 370, 389 (S.D.N.Y. 2023) (denying motion for preliminary injunction).

"Even in a case concerning an alleged constitutional injury, 'it often will be more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued, and then considering whether the infliction of those consequences is likely to violate any of the plaintiff's rights." Blakeman, 2024 WL 3201671, at **18, 20. Where the plaintiff fails to carry her evidentiary burden by offering evidence that "convincingly shows" irreparable constitutional injury, her motion should be denied. Id. That is the case here, where Plaintiff has failed to offer any evidence of any constitutional violation (or that she was harmed at all), as set forth more fully in Point IV.B.(1)-(4) below. Nor has she shown that, if she is able to prove some harm, that harm cannot be remedied by compensation. Thus, Plaintiff has failed to show any irreparable harm.

### B. Plaintiff Has Failed To Show A Likelihood Of Success On The Merits

Plaintiff also has failed to demonstrate that she is likely to succeed on the merits of her claim. Here, Plaintiff contends that her suspension from NYSIIS amounts to a violation of her Fifth and Fourteenth Amendment due process rights. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Reed v. Goertz, 598 U.S. 230, 236 (2023). "Importantly, [] a procedural due process claim 'is not complete when the deprivation occurs.'" Id. "Rather, the claim is 'complete' only when 'the State fails to provide due process.'" Id.; see also Quick v. Garcia, 16-CV-2646 (KAM) (LB), 2016 WL 6069504, *2 (E.D.N.Y. 2016) ("[A] plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process'").

Plaintiff is a nurse practitioner who holds various licenses in New York and Connecticut (FAC ¶¶ 1, 18-19, 64). She alleges that Defendants' suspension of her database access interfered with her "right to hold specific private employment," "to follow a chosen profession," "to pursue

an occupation," and that it amounts to a "*de facto* license restriction." (FAC ¶¶ 111, 114-16, 64). Although Plaintiff appears to contend that her access to NYSIIS is a protected "property" or "liberty" interest, Plaintiff offers neither legal authority nor evidence to support that argument. As a result, Plaintiff has failed to show that she had either interest and, therefore, that she had any right to procedural due process in connection with her access suspension.

### (1) <u>Plaintiff Has Failed To Show A Property Interest In NYSIIS Access</u>

"To have a property interest [], a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). "Property interests [] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>Id</u>. Where, upon review of those "existing rules or understandings," the plaintiff has shown no "legitimate claim of entitlement," no property interest is established. <u>See</u>, <u>e.g.</u>, <u>Roth</u>, 408 U.S. at 578-79 (where terms of employment "specifically provided that [it would] terminate" on date certain, non-tenured professor had no property interest in continued employment after that date).

Importantly, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." <u>Castle Rock v. Gonzalez</u>, 545 U.S. 748, 756, 760-61 (2005) (despite mandatory language, factual context required that government official exercise discretion, foreclosing claim of entitlement);[8] <u>Kelly Kare v. O'Rourke</u>, 930 F.2d 170, 175 (2d Cir. 1991)

---

[8] The Court in <u>Castle Rock</u> viewed as "radical" the plaintiff's contention – like Guggenheim's contention here – that the alleged property interest "arises incidentally, not out of some new species of government benefit or service, but out of a function that government actors have always performed—to wit, arresting people who they have probable cause to believe have committed a criminal offense." <u>Id</u>. at 766-67. Likewise, here, the government has not created any new benefit or service by promulgating the NYSIIS statute, but rather seeks to protect the public health through that statute.

("If the statute, regulation, or contract in issue vests in the state significant discretion over the continued conferral of [a] benefit, it will be the rare case that the recipient will be able to establish an entitlement to that benefit"); Plaza Health v. Perales, 878 F.2d 577, 581 (2d Cir. 1989) ("the existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them"); Maple Avenue v. Town of North Haven, 924 F. Supp. 2d 392, 399 (D. Conn. 2013) (where government is authorized to make discretionary judgments – not limited by any mandatory standards – plaintiff has no "legitimate claim of entitlement").

Here, Defendants were granted broad discretion to regulate access to NYSIIS – including to both grant and suspend access to it – pursuant to the Public Health Law. "The commissioner [] may refuse access to [NYSIIS] based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation" (PHL § 2168(9)). Defendants' judgments based on a user's "credibility" – like credibility assessments in many legal contexts – are inherently discretionary.[9] The legislature's grant of discretion to DOH to regulate access to NYSIIS is also reflected in its express authorization to DOH to "promulgate regulations as necessary to effectuate the provisions of this section[,]" including "for orderly implementation and operation of [NYSIIS], including the method by which each category of authorized user may access the system." PHL § 2168(13); NYCRR 66-1.2(e) (requiring that "[e]ach person seeking access to NYSIIS [] must submit a completed application for access").

---

[9] See, e.g., United States v. Joseph, 2024 WL 1827291, *3 (2d Cir. 2024) (credibility assessment was within jury's discretion); Newell v. Holder, 579 Fed. Appx. 53, *54 (2d Cir. 2014) (credibility assessment was within Attorney General's discretion); Findlay v. MTA Bus Co., 124 N.Y.S.3d 193, *193 (1st Dep't 2020) (credibility assessments were within arbitrator's discretion); Rosenbaum v. Atlas, 887 N.Y.S.2d 93, *93 (1st Dep't 2009) (credibility assessment was within trial court's discretion); In re Decker, 760 N.Y.S.2d 908, *908 (3d Dep't 2003) (credibility determinations were within the Board's discretion).

Importantly, neither the statutes nor the regulations impose any limitation on Defendants' discretion in such matters. For instance, DOH is not subject to any particular standards before commencing an investigation or making a determination to refuse access, nor is it limited in the evidence that it may consider, or required to provide notice of any investigation or of any decision, nor required to articulate the basis for any such decision under State law. In contrast to DOH's explicit statutory discretion to refuse access to NYSIIS, no plausible *entitlement* to access can be found in the statutory scheme. For instance, no medical doctor, health care practitioner or other applicant to use NYSIIS is guaranteed access, or assured that, if granted, such access will continue indefinitely, for any fixed period of time or unconditionally, or subject to any particular conditions. Such matters are left to DOH's sole discretion. Moreover, nothing in PHL § 2168 (or any other provision) entitles any user to notice, to a pre-deprivation hearing or to any other process before DOH suspends an individual's access to NYSIIS. [10]

In short, the PHL reserves exclusively to Defendants the decision whether and when to refuse a user access to NYSIIS. By doing so, the PHL forecloses any claim that any user of the NYSIIS system has any entitlement to NYSIIS access or any property interest in it. Roth, 408 U.S. at 578-79 (after contract term with university expired, plaintiff had no entitlement to continued employment with university, which was within university's discretion); Castle Rock, 545 U.S. at 760-61 (where officers retained discretion in how to respond to complaint, plaintiff lacked entitlement to enforcement of restraining order); ISS Action v. Port Authority, 161 Fed. Appx. 120 (2d Cir. 2005) (where defendant "can unilaterally deny security access," such access

---

[10] Plaintiff argues that Defendants were obligated to follow the procedures set forth in NYS Administrative Procedures Act §§ 301-401, but Plaintiff cites no authority to support that argument. Moreover, on their face, like the protections of due process itself, those provisions apply only to "adjudicatory proceedings" and are therefore not applicable here (NYS APA § 301(1) ("In an adjudicatory proceeding . . . .")).

is not a property interest); <u>Kelly Kare</u>, 930 F.2d at 176 ("nothing in [New York's Social Services Law] entitles Kelly Kare to uninterrupted participation in the [Medicaid] program"); <u>Plaza Health</u>, 878 F.2d at 581, 582 ("a provider does not have a property interest in continued participation in the [Medicaid] program"); <u>S&D v. Goldin</u>, 844 F.2d 962, 968 (2d Cir. 1988) (contractor had no entitlement to continuation of service contract where "contract did not create a property interest in non-termination in the first place"). [11]

### (2)    Plaintiff Has Failed To Show A Liberty Interest In NYSIIS Access

Plaintiff likewise has failed to show that she had any protected liberty interest in her access to NYSIIS. "In a line of earlier cases, this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." <u>Conn v. Gabbert</u>, 526 U.S. 286, 291-92 (1999). Importantly, "[t]hese cases all deal with a complete prohibition of the right to engage in a calling[.]" <u>Id</u>. at 292; *see also* <u>Roth</u>, 408 U.S. at 573-74 (no deprivation of liberty interest where plaintiff remained "free to take advantage of other employment opportunities"); <u>Hu v. City of New York</u>, 927 F.3d 81, 102-03 (2d Cir. 2019) (no deprivation of liberty interest, holding that "[t]o prevail

---

[11] *See also* <u>Fishermen's Finest v. United States</u>, 155 Fed. Cl. 576, 599 (2021) ("The absence of crucial indicia of a property right, coupled with the government's irrefutable retention of the right to suspend, revoke, or modify [plaintiff's] swordfishing permit, compels the conclusion that the permit bestowed a revocable license, instead of a property right"), *aff'd*, 59 F.4th 1269 (Fed. Cir. 2023); <u>Guettlein v. United States</u>, 577 F. Supp. 3d 96, 104-05 (E.D.N.Y. 2021) ("any property right to employment that plaintiffs may claim does not rise to the level of a fundamental right protected by substantive due process"); <u>Green v. Hilliard</u>, 2015 WL 8664175, *8 (D. Conn. 2015) ("In this case, there is no statute, regulation or other legal guidance on the standards [the decision-maker] should apply in determining whether to revoke, grant, or deny an individual's access to [the government database]. Without any such guidance, the decision to grant [] access is purely discretionary and, therefore, cannot create a constitutionally cognizable property interest"); <u>Maple Avenue</u>, 924 F. Supp. 2d at 399 (no property interest where Police Chief acted pursuant to policy that granted him "very substantial discretion," which was "far from the kind of restriction that creates a protected property interest"); <u>Kahn v. Inspector General</u>, 848 F. Supp. 432, 438 (S.D.N.Y. 1994) (provider "does not have a protected property interest in continued participation in the [] Medicare program").

19

on such a claim, a plaintiff must allege facts suggesting that a defendant's conduct has "operate[d] as a complete prohibition on his ability to practice [his chosen profession]"); Kelly Kare, 930 F.2d at 177 (no deprivation of liberty interest although defendants "provided no reason for the [contract] termination"); S&D, 844 F.2d at 970 (no deprivation of liberty interest even where contract termination left plaintiff "forced out of business, tottering near bankruptcy, unable to get work"); Guettlein, 577 F. Supp. 3d at 104 (no deprivation of liberty interest where plaintiffs failed to plead or to show that they could not find other employment); Green, 2015 WL 8664175, at *9-10 (no deprivation of liberty interest where plaintiff failed to show that she was barred from pursuing any job in her chosen profession). In Green, the Court concluded that "[b]ecause [plaintiff] has no liberty interest in accessing [the government database], she cannot have a liberty interest in a job requiring such access." Id.

Here, Plaintiff's evidence falls far short of showing that Defendants' conduct resulted in her "complete prohibition" from engaging in her practice. She fails to show, for instance, that NYSIIS access is a requirement of any of her licenses or that, as a practical matter, her suspension from NYSIIS has had any practical impact on her practice or her income (discussed more fully in Point IV.B.(3) below). To the contrary, the FAC pleads that Plaintiff *was not even aware* of her database suspension in the 28 months between June 2022 and October 2024 (FAC ¶¶ 52, 54, 62-63). Moreover, the FAC pleads that she has several professional licenses, including a license issued in Connecticut, that each remains "unrestricted," and that she continues to practice (FAC ¶¶ 1, 18-19, 64). Again, these are judicial admissions to which Plaintiff should be bound.[12] Thus, Plaintiff has failed to show any violation of her liberty interest.

---

[12] *See* Official Committee v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are 'judicial admission[s]' by which Color Tile Committee was 'bound throughout the course of the proceeding'").

Nor has Plaintiff shown that Defendants' suspension of her database access was anything other than the sort of "reasonable government regulation" to which any such interest is subject. *See* Conn, 526 U.S. at 291-92; *see also* Hu, 927 F.3d at 102. Here, that reasonable government regulation is plainly rationally related to the State's compelling interest to protect the public health of New York's residents, including its school-age children, which is authority that is expressly granted to Defendants by New York's PHL.

### (3) Plaintiff Has Failed To Show Causation, Deprivation Or Other Harm

Plaintiff has failed to offer evidence that she was deprived of any practical interest in pursuing her profession or otherwise harmed by Defendants' actions. For instance, she has failed to show that DOH has taken *any* steps to revoke, to suspend or to formally limit any of her licenses. She has failed to show that DOH has initiated *any* disciplinary or other legal action against her, nor that she has lost any employment, any future employment opportunity, any patients or any income as a result of her database suspension. She has failed to show that Defendants have *threatened* to take any of the foregoing actions against her in the *future*. She has failed to show that database access is *required* to practice medicine or to engage in any of the practices permitted by her various licenses. In short, she has failed to show that the suspension of her database access has caused her – or will cause her – to be deprived of any constitutional or practical interest in pursuing her profession (or caused her any other harm).

To the contrary, the FAC concedes that Plaintiff *continues* to possess all of her "unrestricted licenses" and that she has not been pursued by the Nursing Board, which she asserts is the only agency authorized to conduct disciplinary proceedings against licensees such as Plaintiff (FAC ¶¶ 1, 18-19, 65, 66, 96, 111). "The Board of Nursing has not conducted any proceedings and did not issue any orders limiting Plaintiff's ability to practice nursing" (FAC ¶¶

66, 97). "The Plaintiff does not have any record of disciplinary action [and] her license was never restricted in any manner shape or form by the Board of Nursing" (FAC ¶ 135). These allegations, which are judicial admissions, refute Plaintiff's claim that any of her licenses has been "restricted" and that her interest in pursuing her occupation has been harmed.

At its core, Plaintiff's theory relies upon the assertion that Defendants' suspension of her database access in June 2022 "restricts Plaintiff's ability [] to vaccinate patients below 19 years of age and patients of any age who necessitate proof of vaccinations" (FAC ¶¶ 64, 136). Yet, this assertion is not supported by any evidence that shows that the Plaintiff was, *in fact,* prevented from vaccinating anyone (regardless of age or the proof of vaccination they required), nor is it supported by evidence that she is likely to be prevented from vaccinating anyone in the *future* as a result of Defendants' conduct. To the contrary, the FAC concedes that she was *not* prevented from providing immunizations in the 28 months after her suspension (FAC ¶¶ 56, 60-62).

Indeed, the FAC concedes that even Plaintiff's child vaccination practice continued unabated after her suspension in June 2022. Through at least November 2024, "Plaintiff still had patients who wanted the NYS COVID mandated vaccines for school" (FAC ¶ 54). Notwithstanding her suspension, "Guggenheim continued to vaccinate children" (FAC ¶ 54). "In cases where a patient was given any type of a vaccine, the Plaintiff had them either photograph and or videotape the vaccines and her administration thereof so there would be no question about the administration" (FAC ¶ 55). Thus, *in lieu* of complying with the State's mandatory reporting requirements by reporting child vaccinations on the State's database, Plaintiff implemented "[t]he practice of vaccinating and providing paper proof of vaccinations." (FAC ¶¶ 56, 60-62).

Thus, according to her FAC, "Plaintiff's practice remained unaffected between July 2022 and October 2024" (Id.). Plaintiff asserts that she continues to provide vaccines to her patients

even now, while vaguely asserting that she "had to stop" providing pediatric vaccinations in about November 2024 (*see* Guggenheim Dec. at ¶ 16). Given that she continued to vaccinate children for at least 28 months after Defendants suspended her from NYSIIS (in violation of New York law), it is clear that Defendants' suspension of her database access had *no* effect on her child vaccination practice. It is unclear from Plaintiff's vague assertions what new development in the Fall 2024 time frame might have prompted a change in her behavior (if it did change), but Defendants' investigation of her immunization and reporting practices was advancing at that time (*see* Giovannetti Dec.).

Plaintiff's lack of evidence demonstrating any deprivation of any interest that she claims (or any practical harm at all) requires denial of her motion for preliminary injunction. *See* Reed, 598 U.S. at 236 ("A procedural due process claim [requires] *deprivation* by state action of a protected interest in life, liberty, or property"); *see also* Quick, 2016 WL 6069504, at *2 ("[A] plaintiff must 'first identify a property right, second show that the [government] has *deprived* him of that right, and third show that the deprivation was effected without due process'").[13]

### (4)    Plaintiff Had Available To Her All The Process Due

Plaintiff fails to show that she was denied the process due in the circumstances that she describes. She is a healthcare practitioner who was subject to an administrative investigation by DOH after DOH permitted her access to the State's immunizations database.[14] She offers no

---

[13] Based on the FAC's lack of factual pleading, Defendant submits that the only reasonable inference is that any practical impact on Plaintiff's practice is, at most, *de minimis*, and "the requirements of due process do not apply when the property interest involved is '*de minimis*.'" Zigmund v. Solnit, 199 F.3d 1325, *2 (2d Cir. 1999) (plaintiff stated no procedural due process claim where alleged infringement was *de minimis*); Ahlers v. Rabinowitz, 684 F.3d 53, 62-63 & n.8 (2d Cir. 2012) (same).

[14] The investigation here allegedly included a "site visit" to Plaintiff's office at which she was present and met with DOH personnel (FAC ¶¶ 33-38), alleged off-site interviews of Plaintiff's patients (FAC ¶¶ 40-43), DOH's service upon Plaintiff of a subpoena *duces tecum*, to which she responded (FAC ¶¶ 44-45), and a second site visit with Plaintiff's consent (FAC ¶¶ 46-48). In June 2022, based upon its investigation,

proof that DOH ever charged her with any wrongdoing, much less adjudicated any of her legal rights. In fact, she has not been charged with wrongdoing and she concedes that her rights have not been adjudicated (Giovannetti Dec. at ¶ 36; *see also* P's PI Brief at 18 ("No formal or informal adjudication was conducted and no formal final determination of Plaintiff's commission of vaccine fraud of any type has ever been made")).

In these circumstances, at the investigative phase of an administrative proceeding where the Plaintiff's rights have not been adjudicated, the Supreme Court has held that plaintiff is not entitled to the protections of due process. *See* S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 742 (1984) ("The Due Process Clause is not implicated under such circumstances because an administrative investigation adjudicates no legal rights"); Hannah v. Larche, 363 U.S. 420, 441-42 (1960) (due process protections are reserved for adjudicative proceedings and not required in course of administrative investigation); *see also* Diblasio v. Novello, 413 Fed. Appx. 352, 358 (2d Cir. 2011) (rejecting due process challenge in context of administrative investigation). As Justice Marshall explained, "the imposition of a notice requirement on the [investigative agency at the investigative stage of the process] would substantially increase the ability of persons who have something to hide to impede legitimate investigations." O'Brien, 467 U.S. at 750. [15]

---

DOH administratively suspended her access to the database (FAC ¶ 70). In October 2024, Defendant Giovannetti confirmed to her that she was "under investigation" and that she was "blocked from NYSIIS" (FAC ¶ 60). Plaintiff later learned that DOH had posted her name on its website directing schools that her database access was suspended and advising them not to accept paper-only records from her (FAC ¶¶ 67, 70). Defendants deny each and every allegation of wrongdoing in the FAC. Defendants also deny the alleged wrongdoing of the individual identified as "Brendan" (Guggenheim Dec. at ¶¶ 39-48), while noting that testimony is largely based upon unsupported hearsay and conjecture and is uncorroborated.

[15] Plaintiff argues that Defendants violated various State procedures, including NYS Administrative Procedures Act §§ 301-401, but that argument is likewise misguided. Even if she could state a claim for a violation of state law (which is barred by the State's Eleventh Amendment immunity, *see* Point I.A. above), those statutes do not apply here because they (like the protections of due process) apply only to adjudicatory proceedings (NYS APA § 301(1) ("In an adjudicatory proceeding . . . .")).

Moreover, the Plaintiff has failed to show that she was entitled to any pre-deprivation hearing where she had available to her an adequate post-deprivation hearing. New York's CPLR Article 78 procedure, which is available to challenge state agency decisions, provides an adequate post-deprivation hearing. *See, e.g.*, Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes"); Horton v. Westling, No. 18-763, 765 Fed. Appx. 531 (2d Cir. 2019) (affirming dismissal of procedural due process claim where plaintiff had available Article 78 proceeding that provided adequate post-deprivation hearing); *see also* Walker v. NYS DOH, 2:24-cv-6836 (NJC) (LGD), 2025 WL 1786917, *50-55 (E.D.N.Y. 2025) (dismissing procedural due process claim where plaintiffs had available Article 78 proceeding in which to challenge alleged deprivation); Cohn v. New Paltz, 363 F. Supp. 2d 421, 433-34 (N.D.N.Y. 2005) (dismissing procedural due process claim and holding that "[t]he Article 78 proceeding constituted part of the due process protection [plaintiff] received, and it cured any procedural defect that may have occurred"), *aff'd*, 204 Fed. Appx. 56 (2d Cir. 2006).

This is especially true in the circumstances of this case, where Defendants were forced to act quickly to avoid any further risk to the integrity of the data on the State's database, which they had reason to believe was being further compromised by the Plaintiff (even if unintentionally or negligently) as she continued to access it, to make entries on it and to make changes to it (*see* Giovannetti Dec.). Defendants' action thus served the interests of protecting the integrity of that data, protecting the users' and the public's trust in that database, and thereby protecting the public health by assuring that users had available to them the most accurate data possible under the circumstances. (Id.) Defendants' suspension of Plaintiff also served the

interest of avoiding the possibility of fraud on the database and of avoiding any possible spoliation of that data for any future investigation by DOH or law enforcement. (Id.)

Defendants' serious concerns about Plaintiff's immunization and reporting practices were well-founded. In her FAC, Plaintiff *concedes* that she provided vaccines to her patients, including child patients, for over two years after her access to the State's database was suspended (FAC ¶¶ 56, 60-62). As a result, as to each of those immunizations, she did not comply with the provisions of New York law that require her to report those immunizations on the NYSIIS database. In other words, each of those immunizations constitutes a separate violation of New York's PHL. With each of those unreported immunizations, the integrity of the data on the State's database was further compromised, threatening public confidence in that data and threatening the efforts of the State to protect the public's health as contemplated by the NYSIIS statute. In this context, where this "paramount governmental interest" was at stake, the DOH was forced to act quickly and rightly did so. *See* Hodel v. Virginia, 452 U.S. 264, 300-01 (1981).

The Courts repeatedly have acknowledged that such circumstances warrant process that reflects the urgency of the circumstances. "[W]here a State must act quickly, or where it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997) (dismissing due process claim where tenured public employee was suspended from employment without pay or prior hearing); *see also* Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (identifying considerations to determine what process is due in particular circumstances). In particular, "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action. Indeed, deprivation of property to protect

26

the public health and safety is '[o]ne of the oldest examples' of permissible summary action."
Hodel, 452 U.S. at 300-01 (rejecting due process challenge). [16]

In the Second Circuit, in cases where the public's health or safety was at stake, the courts
likewise have held that a pre-deprivation hearing is not constitutionally required so long as a
post-deprivation hearing is available. *See, e.g.*, Catanzaro v. Weiden, 188 F.3d 56, 63-64 (2d Cir.
1999) (affirming dismissal of procedural due process claim in light of evidence "that the public
was in immediate danger" and plaintiff had "post-deprivation remedies" available); DiBlasio v.
Novello, 413 Fed. Appx. 352, 357-58 (2d Cir. 2011) (dismissing due process claims and
acknowledging "the well-recognized principle that due process permits a state to take summary
administrative action without pre-deprivation process, but subject to a prompt post-deprivation
hearing, where such action is needed to protect public health and safety").

The availability of an Article 78 action in New York's courts is sufficient to defeat a
procedural due process claim even if the plaintiff failed to avail herself of that procedure. *See*
Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where, as here, Article 78 gave the
employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not
deprived of due process simply because he failed to avail himself of the opportunity"); Horton,
765 Fed. Appx. 531 ("While Horton did not actually file an Article 78 action, he had 'a
meaningful opportunity to challenge' his treatment and so was 'not deprived of due process
simply because [he] failed to avail [himself] of the opportunity'").

---

[16] The State has a compelling interest in protecting the public health from vaccine-preventable disease,
including the health of school age children, their teachers and their families with whom they come into
contact and could spread such disease, an interest in maintaining public confidence in the accuracy of the
data on the State's database, and an interest in preventing vaccine-related fraud. The risk of an erroneous
deprivation of Plaintiff's interest is minimal here, where Defendants' investigation produced
overwhelming evidence of wrongdoing by the Plaintiff (*see* Giovannetti Dec.).

In any event, the evidence in this case is clear that Defendants provided Guggenheim with *written notice* of her database suspension (on June 30, 2022) *and* an opportunity for her to explain herself before her read-only access was implemented (on July 12, 2022) (*see* Giovannetti Dec. at ¶ 27). Guggenheim's last email message in that email chain thanked Director Giovannetti for permitting her to retain her read-only status: "That is good news. I appreciate it" (Id.) If she had any remaining grievance with DOH at any point after that email message, she could have pursued it through the routine state court procedure of an Article 78 action. Thus, under the circumstances, Guggenheim had available to her all the process due.

For all of these reasons, Plaintiff has not shown a "clear" or "substantial" likelihood of success on her procedural due process claim. Nor has she shown that "extreme or very serious damage will result from the denial of preliminary relief." Cacchillo, 638 F.3 at 406. Apart from her bald allegation of a constitutional violation that is unlikely to succeed, Plaintiff has made no showing of irreparable harm absent entry of an injunction. Thus, the Court should deny Plaintiff's request for the "extraordinary and drastic remedy" that she seeks. T.C. v. New York State, 2022 WL 17689841, *8-11 (S.D.N.Y. 2022) (denying preliminary injunction where plaintiff failed to show likelihood of success on the merits); Kelly v. New York State, 2021 WL 2333349, *1 (E.D.N.Y. 2021) (denying preliminary injunction where plaintiff failed to show likelihood of success on the merits), *aff'd*, 2022 WL 1210665 (2d Cir. 2022).

For the additional reasons set forth in Point VI below, Plaintiff has failed to demonstrate that the public interest and balance of equities support a preliminary injunction ordering her reinstatement to NYSIIS. Accordingly, the Court should deny this branch of her motion. [17]

---

[17] Plaintiff's motion for a prohibitory injunction fails for the same reasons as set forth above.

## V.    The Court Should Deny Plaintiff's Motion For An Order
### Modifying Defendants' Website Posting About The Plaintiff

In addition to seeking relief based upon Defendants' suspension of her database access, the Plaintiff's motion seeks relief for Defendants' posting on the DOH website of her name, the fact that her access was suspended and a directive to schools not to accept paper-only proof of vaccination from her. Plaintiff seeks a mandatory preliminary injunction (1) directing Defendants to remove Plaintiff's name and information posted on defendants' web site and (2) directing Defendants to revoke their directions to school districts to reject Plaintiff's vaccination records (*see* P's PI Motion, ECF No. 46). She also seeks a prohibitive preliminary injunction (3) prohibiting Defendants from continuing to maintain the posting on their official web site, and (4) prohibiting Defendants from continuing to direct schools to reject Plaintiff's vaccination records (Id.). Because Defendants' web posting represents the status quo, Plaintiff must show that she is entitled to a *mandatory* preliminary injunction *removing* her name and *revoking* DOH's directive to the schools about acceptable proof of her vaccinations. Plaintiff has failed to meet the high standard for that "extraordinary and drastic remedy[.]" See Moore, 409 F.3d at 511.

### A. Plaintiff Has Failed To Show Irreparable Harm

For all of the reasons set forth above, and particularly in Point IV.A. above, Plaintiff has failed to show that she has been or will be subjected to any irreparable harm.

### B. Plaintiff Has Failed To Show A Likelihood Of Success On The Merits

Plaintiff has failed to demonstrate that she is likely to succeed on the merits of this claim. Here, Plaintiff appears to contend that Defendants' web posting amounts to a violation of her due process rights (P's PI Brief at 17-19, 22-23), but she has failed to prove any such violation. First, for substantially the reasons set forth above, including in Point IV, Plaintiff has failed to show any *procedural* due process violation. Among other things, Plaintiff has failed to identify any

"property" or "liberty" interest that is infringed by the web posting, she has failed to show that the posting actually deprived her of any constitutional or practical interest in her occupation, and she has failed to show that she did not have available to her the process due in the circumstances of this case. Thus, she has not shown any procedural due process violation.

Moreover, "the Court has never held that the mere defamation of an individual [] was sufficient to invoke the guarantees of procedural due process[.]" Paul v. Davis, 424 U.S. 693, 706-12 (1976) (holding that the protections of due process are invoked only when a person's interest in liberty or property is infringed, and defamation does not fall within those categories); s*ee also* Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (dismissing claims); Neu v. Corcoran, 869 F.2d 662 (2d Cir. 1989) (reviewing very limited scope of approved due process claims involving reputational injury). In any event, Plaintiff has failed to show any *falsity* in the web posting. The FAC (at ¶ 70) recites the following language posted about the Plaintiff:

> Isadora Guggenheim, NP, RN (Second Nature Naturopathic Care, LLC) – Currently suspended from using the New York State Immunization Information System as of 06/29/2022. Paper-only records of vaccinations administered after this date from this provider must not be accepted.

This posting contains *one* factual assertion – and the FAC concedes the truthfulness of that one factual assertion by affirmatively pleading that Plaintiff's access *was suspended* in about June 2022 (FAC ¶¶ 52, 54, 60, 62). The second sentence is not a factual assertion at all, but rather DOH's directive to school districts and school administrators concerning one form of proof of immunization that DOH will not accept from this provider, consistent with its authority under the PHL. Thus, Plaintiff has failed to show any *falsity* in the posting. [18]

---

[18] Plaintiff also fails to prove any defamation. First, defamation is a *state law* cause of action and, as set forth in Point I.A. above, any state law claim brought in the federal courts against state officials in their official capacities is barred by the State's Eleventh Amendment immunity. In addition, the web posting is *past conduct* of the DOH and, as explained in Point I.B. above, any claim based upon the State's past conduct is likewise barred by the State's Eleventh Amendment immunity. Second, defamation requires a

Plaintiff also has failed to prove any theory of *substantive* due process, including any claim for "harassment." In addition to all of the deficiencies outlined above, "[i]t is now well established that, '[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.'" Hu v. City of New York, 927 F.3d 81, 103-04 (2d Cir. 2019) (dismissing claim). Here, that explicit textual source is the due process clause itself, which provides the assurance of *procedural* due process where a liberty or property interest is infringed. That is the principal theory that Plaintiff has pleaded in the FAC and sought to prove in her motion, and her motion should rise or fall on that theory.

Nor has Plaintiff shown that any conduct by Defendants is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Guettlein, 577 F. Supp. 3d at 103, 105 (denying preliminary injunction); *see also* Horton, 765 Fed. Appx. at 533 (affirming dismissal). To the contrary, Defendants actions here are plainly rationally related to the State's compelling interest to protect the public health. *See* Goe v. Zucker, 43 F.4th 19, 32 (2d Cir. 2022) (holding that "protecting communities from serious, vaccine preventable diseases through immunization" is a legitimate state objective); *see also* Guettlein, 577 F. Supp. 3d at 105-06. Thus, Plaintiff has failed to prove any substantive due process violation.

Plaintiff also has failed to prove the requisites for any *harassment* claim. To the extent that any claim for harassment remains available in the Second Circuit,[19] a plaintiff must prove "that government officials engaged in systematic and intentional harassment in an attempt to

---

false statement of fact. *See* Town of Massena v. Healthcare Underwriters, 98 N.Y.2d 435, 444 (2002) ("Defamation is defined as a false statement that exposes a person to public contempt, ridicule, aversion or disgrace"). Plaintiff has not shown that the web posting meets any of these requirements.

[19] "While we have not revisited this 'pattern of harassment' theory of Due Process since deciding Chalfy, district courts in this Circuit have continued to treat it as a viable cause of action." Hu, 927 F.3d at 103.

drive the plaintiff out of business." Hu, 927 F.3d at 103. Plaintiff has not made that showing. She has not shown that any Defendant engaged in any "systematic" harassment, much less that any harassment was "intentional." She has offered no proof at all that any Defendant engaged in any conduct "in an attempt to drive the plaintiff out of business."

Rather, Defendants' conduct here – including their suspension of her database access and posting on their website the fact that her access was suspended, along with a directive to schools not to accept one form of immunization record from her – was plainly authorized by the PHL and was reasonably related to Defendants' public policy to protect the public health of children and adult residents of New York from vaccine-preventable disease and death. Thus, Plaintiff has failed to prove any claim for harassment.

Therefore, Plaintiff has failed to show a "clear" or "substantial" likelihood of success on any of her due process claims. Nor has she shown that "extreme or very serious damage will result from the denial of preliminary relief." Cacchillo, 638 F.3 at 406. Indeed, apart from her bald allegation of a constitutional violation that is unlikely to succeed, Plaintiff has made no showing of irreparable harm absent entry of an injunction.

For all of these reasons, the Court should deny Plaintiff's request for the "extraordinary and drastic remedy" that she seeks. T.C., 2022 WL 17689841, at *8-11 (denying preliminary injunction where plaintiff failed to show likelihood of success on the merits); Kelly, 2021 WL 2333349, at *1 (denying preliminary injunction where plaintiff failed to show likelihood of success on the merits); Cameron v. Zucker, 2017 WL 2462692, at *7 (S.D.N.Y. 2017) (Koeltl, J.) (denying preliminary injunction to enjoin disciplinary proceedings against medical doctor).

For the additional reasons set forth in Point VI below, Plaintiff has failed to demonstrate that the public interest and balance of equities support a preliminary injunction ordering

Defendants to remove the entirely truthful informational posting about Plaintiff's database access and the directive to schools not to accept one form of proof of immunization from her.

Accordingly, the Court should deny this branch of her motion. [20]

## VI. The Public Interest And Balance Of Equities Weigh Heavily Against Granting A Preliminary Injunction In Favor Of Plaintiff

In addition to showing irreparable harm and a clear likelihood of success on the merits absent entry of a preliminary injunction, "[w]hen, as here, a preliminary injunction 'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,' the moving party must demonstrate [] public interest weighing in favor of granting the injunction." Friends, 841 F. 3d at 143. Plaintiff has not made this showing.

The Supreme Court has explained that courts should "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). In this case, there is a compelling public interest in maintaining the accuracy and integrity of the data on the NYSIIS system – on which countless users of the NYSIIS system rely. The integrity of that data directly supports the public's interest in protecting the life and health of millions of individuals in the State of New York.

The critical importance of accurate and timely reporting of immunization information onto the NYSIIS database by health care providers is evidenced by the broad range of authorized users of that system and by the important purposes for which those users may access that data at any time, all as set forth in the statute itself. For example, the statute provides: "The commissioner may use the statewide immunization information system [] for purposes of outreach, quality improvement and accountability, research, epidemiological studies and disease

---

[20] Plaintiff's motion for a prohibitory injunction fails for the same reasons as set forth above.

control[.]" (PHL § 2168(8)(b)(i)). In addition, PHL § 2168(8)(d) provides that the following authorized users shall have access to NYSIIS:

> (i) "schools for verifying immunization status for eligibility for admission;" (ii) "colleges for verifying immunization status for eligibility for admission;" (iii) "professional and technical schools for verifying immunization status for eligibility for admission;" (iv) "children's overnight camps and summer day camps for verifying immunization status of children attending camp;" (v) "third party payer[s] for performing quality assurance, accountability and outreach, relating to enrollees covered by the third party payer;" (vi) "commissioners of local social services districts with regard to a child in his/her legal custody;" (vii) "the commissioner of the office of children and family services with regard to children in their legal custody, and for quality assurance and accountability of commissioners of local social services districts, care and treatment of children in the custody of commissioners of local social services districts;" and (viii) "WIC programs for the purposes of verifying immunization [] for those seeking or receiving services" (PHL § 2168(8)(d)).[21]

All of these users of NYSIIS's data rely on its accuracy. The entry of false, fraudulent or inaccurate information, or untimely information, onto the NYSIIS system – for whatever reason – directly undermines these public interests. Such activity undermines confidence in the data on the NYSIIS database by its countless users and undermines the effectiveness of NYSIIS in preventing the spread of vaccine-preventable diseases among New York residents.

In addition, to the extent that any healthcare provider fails to immunize her patients who are required to be immunized, that conduct constitutes a direct threat to the life and health of those patients. Beyond them, such conduct by a healthcare provider constitutes a wider (albeit less direct) threat to the life and health of other individuals in the community with whom such un-vaccinated individuals come into contact.

For instance, if school-age children are not properly immunized (but the provider falsely or inaccurately reports on the NYSIIS system that they have been), those children may be

---

[21] In addition, "Institutes of higher education, medical research centers or other institutions engaged in epidemiological research or other public health research shall have access to de-identified registrant

permitted into schools and camps where they present an unknown and unexpected threat to countless others with whom they come into contact – fellow students, teachers, counselors, and family members. Such conduct presents a particular risk to the young, elderly, infirm (*i.e.,* immunocompromised) or other individuals who may be medically vulnerable.

Defendants' efforts to assure compliance with the PHL and with NYSIIS support these compelling public health interests. Defendants' efforts to investigate the compliance of authorized NYSIIS users, including by demanding documents in the form of subpoenas, and to take prompt action to protect the accuracy and the integrity of the NYSIIS database, are critical to maintaining the integrity of that database and public confidence in it.

Defendants' communications on their official website concerning the database status of particular providers and providing direction to schools and school administrators about acceptable forms of proof from particular providers all support the State's public health objectives. Finally, as Defendants have demonstrated above, Guggenheim has no more than a *de minimis* private interest in having her database access reinstated and in having the entirely truthful and concise web posting about her removed – an interest that she has not shown to be protected by any constitutional right that has any practical bearing on her medical practice.

For all of these reasons, Guggenheim's limited interest here is heavily outweighed by these public health interests. Indeed, many courts that have reviewed similar cases involving vaccine rules and other public health measures have denied injunctions on similar grounds. Guettlein, 577 F. Supp. 3d at 106 (denying preliminary injunction to enjoin vaccine mandate, finding that "there is a significant public interest in safeguarding the health and safety of the Plebes and Midshipmen at the Academy"); Garland v. New York City Fire Department, 574 F.

---

information in the statewide immunization information system [] for research purposes if approved by the commissioner" (NYS PHL § 2168(8)(e)).

Supp. 3d 120, 133-34 (E.D.N.Y. 2021) (denying preliminary injunction to enjoin vaccine mandate, finding that "there is a significant, if not compelling, governmental interest in preventing the transmission of the Coronavirus and variants to members of the public with whom FDNY employees come into contact"); Maniscalco v. New York City DOE, 563 F. Supp. 3d 33, 39-40 (E.D.N.Y. 2021) (denying preliminary injunction to enjoin vaccine mandate, finding that "even if plaintiffs disagree with it, the Order at issue represents a rational policy decision surrounding how best to protect children"), *aff'd*, 2021 WL 4814767 (2d Cir. 2021); *see also* T.C., 2022 WL 17689841, at *7-8 (denying preliminary injunction, finding that individuals other than plaintiffs would be harmed by injunction); Cameron, 2017 WL 2462692 (denying preliminary injunction to enjoin disciplinary investigation and related proceedings against medical doctor, finding that the State "has a clear interest in protecting the health of the citizens of New York by regulating the practice of medicine").

## **CONCLUSION**

Accordingly, the Court should deny Plaintiff's motion in its entirety.

Dated:  New York, New York
        September 2, 2025

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants


By: _____

James Mirro
Assistant Attorney General
Litigation Bureau
New York State Office of the Attorney General
28 Liberty Street – 17th Floor
New York, New York 10005
james.mirro@ag.ny.gov

36

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to the Joint Local Rules of the Southern and Eastern Districts of New York (the "Local Rules"), I certify that this document complies with the length limitations of Rule 7.1(c) of the Local Rules. On August 27, 2025, the Court entered an order permitting this brief to be up to 35 pages in length.

_____
James Mirro