UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ISADORA GUGGENHEIM, LNP, RN,

                        Plaintiff,

        -against-                              Case No. 1:25-cv-03615-PKC
                                                  Electronically Filed

JAMES MCDONALD, MD,
in his official capacity as Commissioner of NYS
Department of Health;
JOSEPH A. GIOVANNETTI,
in his official capacity as Director of Bureau of
Investigations, NYS Department of Health,
et al.,
                             Defendants
------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**


LETITIA JAMES
Attorney General
 State of New York
Attorney for Defendants
28 Liberty Street – 17th Floor
New York, New York 10005
(212) 416-6019

September 2, 2025


JAMES MIRRO
Assistant Attorney General
   Of Counsel

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**………………………………………………………1

**BACKGROUND**…………………………………………………………………..3

**ARGUMENT**……………………………………………………………………4

> **Legal Standards**………………………………………………………………4

> **Failure To Plead Subject Matter Jurisdiction**……………………………………4

> **Failure To State a Claim On Which Relief Can Be Granted**………………………...5

> **THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED**……………7

> **I.**    **Plaintiff's Claims Are Barred By The Eleventh Amendment**………………7

>> **A.**  **The Eleventh Amendment Bars Relief For Violations Of State Law**………..7

>> **B.**  **The Eleventh Amendment Bars Relief For Past Violations**…………………8

> **II.**    **Plaintiff Lacks Standing For Any Declaratory Or Injunctive Relief**………12

> **III.**   **The FAC Does Not Comply With FRCP 8**……………………………15

> **IV.**   **The FAC Fails To State A Claim On Which Relief Can Be Granted**………18

>> **A.**  **Plaintiff's Claims Are Barred To The Extent That They Are Based On Defendants' Conduct Before April 30, 2022**…………………18

>> **B.**  **Plaintiff Fails To State A Claim For Procedural Due Process**………………18

>>> **(1)**   **Plaintiff Has No Property Interest In Access To NYSIIS**……………19

>>> **(2)**   **Plaintiff Has No Liberty Interest In Access To NYSIIS**………………23

>>> **(3)**   **The FAC Fails To Plead Causation, Deprivation Or Other Harm**…..24

>>> **(4)**   **Plaintiff Had Available To Her All The Process Due**…………….....27

>> **C.**  **The FAC Fails To State A Claim For Reputational Harm, Substantive Due Process, Harassment Or Any Other Violation**……………29

> **CONCLUSION**……...………………………………………………………32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Ahlers v. Rabinowitz, 684 F.3d 53, 62-63 & n.8 (2d Cir. 2012 ................................................... 27

Allen v. Wright, 468 U.S. 737, 750 (1984)...................................................................................... 5

Amidax v. SWIFT, 671 F.3d 140, 145 (2d Cir. 2011)...................................................................... 4

An v. City of New York, 230 F. Supp. 3d 224, 229-31 (S.D.N.Y. 2017) ...................................... 13

Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). ........................................................................... 5

Azzarmi v. Neubauer, No. 20-CV-9155 (KMK), 2022 WL 4357865, at *4 (S.D.N.Y. 2022) .... 17

Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)...................................................................... 6

Blige v. CUNY, et al., 1:15–cv–08873 (GBD) (KHP), 2017 WL 498580, at *7 .......................... 8

Board of Regents v. Roth, 408 U.S. 564, 577 (1972). .................................................................. 19

Buntin v. City of New York, 395 F.Supp.2d 104, 107-08 (S.D.N.Y. 2005), ............................... 18

Cameron v. Zucker, 2017 WL 2462692, *7 (S.D.N.Y. 2017)...................................................... 13

Castle Rock v. Gonzalez, 545 U.S. 748, 756, 760-61 (2005)....................................................... 20

Celli v. Cole, 699 Fed. Appx. 88, 89 (2d Cir. 2017)..................................................................... 15

Chevron v. Naranjo, 667 F.3d 232, 244-45 (2d Cir. 2012)........................................................... 16

City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) ............................................................... 13

Cohn v. New Paltz, 363 F. Supp. 2d 421, 433-34 (N.D.N.Y. 2005) ............................................ 28

Connecticut v. Lamont, 6 F.4th 439, 448 (2d Cir. 2021 ............................................................... 13

Daytree v. Walsh, 332 F. Supp. 3d 610, 628 (E.D.N.Y. 2018) .................................................... 13

Diblasio v. Novello, 413 Fed. Appx. 352, 358 (2d Cir. 2011) ..................................................... 27

Ex parte Young, 209 U.S. 123 (1908) ............................................................................................ 8

Findlay v. MTA Bus Co., 124 N.Y.S.3d 193, *193 (1st Dep't 2020) (....................................... 21

Fishermen's Finest v. United States, 155 Fed. Cl. 576, 599 (2021)..............................................22

Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984) ....................................................................29

Goe v. Zucker, 43 F.4th 19, 32 (2022)..........................................................................................32

Green v. Hilliard, 2015 WL 8664175, *8 (D. Conn. 2015)...........................................................22

Green v. Mansour, 474 U.S. 64, 68 (1985).....................................................................................8

Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021)....................................................13

Guettlein v. United States, 577 F. Supp. 3d 96, 104-05 (E.D.N.Y. 2021)....................................22

Hannah v. Larche, 363 U.S. 420, 441-42 (1960)...........................................................................27

Henderson v. Shineski, 562 U.S. 428, 434 (2011)...........................................................................4

Horton v. Westling, No. 18-763, 765 Fed. Appx. 531 (2d Cir. 2019)...........................................28

Hu v. City of New York, 927 F.3d 81, 102-03 (2d Cir. 2019) .......................................................23

In re Decker, 760 N.Y.S.2d 908, *908 (3d Dep't 2003).................................................................21

ISS Action v. Port Authority, 161 Fed. Appx. 120 (2d Cir. 2005)................................................22

JTE v. Cuomo, 2 F. Supp. 3d 333, 340-41 (E.D.N.Y. 2014).........................................................11

Kahn v. Inspector General, 848 F. Supp. 432, 438 (S.D.N.Y. 1994) ...........................................22

Keitel v. D'Agostino, 21-CV-8537 (JMF), 2022 WL 15524665, *2 (S.D.N.Y. 2022) ...............18

Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991) ................................................20

Khan v. McDonald, Case 2:24-cv-04745-JMA-ST, Slip Opinion at **15-22 (E.D.N.Y. August 29, 2025) ...........................................................................................................................15

KM Enterprises v. McDonald, No. 11–cv–5098 (ADS) (ETB), 2012 WL 4472010, **19-20 (E.D.N.Y. 2012)............................................................................................................17

Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) .....................................................................28

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) .............................................................4

Maple Avenue v. Town of North Haven, 924 F. Supp. 2d 392, 399 (D. Conn. 2013)................20

Marcavage v. City of New York, 689 F.3d 98, 103 (2d Cir. 2012)................................................ 12

National Railroad v. McDonald, 978 F. Supp. 2d 215, 231 (S.D.N.Y. 2013)............................... 9

Neu v. Corcoran, 869 F.2d 662 (2d Cir. 1989) ........................................................................... 31

Newell v. Holder, 579 Fed. Appx. 53, *54 (2d Cir. 2014 ........................................................... 21

Official Committee v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir. 2003) .......................... 14

Owens v. Okure, 488 U.S. 235, 251 (1989).................................................................................. 18

Paul v. Davis, 424 U.S. 693, 706-12 (1976) ............................................................................... 31

Peck v. Baldwinsville, 351 Fed. Appx. 477, 479 (2d Cir. 2009)................................................. 13

Pennhurst v. Halderman, 465 U.S. 89, 124-25 (1984)................................................................. 5

Plaza Health v. Perales, 878 F.2d 577, 581 (2d Cir. 1989)........................................................ 20

Puerto Rico v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).................................................. 8

Reed v. Goertz, 598 U.S. 230, 236 (2023)................................................................................... 19

Rosenbaum v. Atlas, 887 N.Y.S.2d 93, *93 (1st Dep't 2009)...................................................... 21

Rubin v. New York City, 20-CV-10208 (LGS) (KHP), 2023 WL 1972729................................ 18

S&D v. Goldin, 844 F.2d 962, 968 (2d Cir. 1988) ..................................................................... 22

S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 742 (1984) ....................................................... 27

Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) ......................................................... 31

Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988);.............................................................. 15

Shetiwy v. Midland, 980 F. Supp. 2d 461, 467 (S.D.N.Y. 2013)................................................ 18

Spokeo v. Robins, 578 U.S. 330, 337 (2016). .............................................................................. 4

Sunnen v. State of New York, No. 10 Civ. 372(PKC), 2010 WL 3912728, *2 (S.D.N.Y. 2010) 18

T.W. v. NYS Board of Law Examiners, 110 F.4th 71, 94 (2d Cir. 2024)..................................... 9

Town of Chester v. Laroe, 581 U.S. 433, 438 (2017).................................................................. 4

Town of Massena v. Healthcare Underwriters, 98 N.Y.2d 435, 444 (2002) ................................ 30

UMB Bank v. Bristol-Myers, 21-CV-4897 (JMF), 2024 WL 4355029, *5 (S.D.N.Y. 2024) ........ 4

United States v. Joseph, 2024 WL 1827291, *3 (2d Cir. 2024) ( ................................................ 21

Walker v. NYS DOH, 2:24-cv-6836 (NJC) (LGD), 2025 WL 1786917, *50-55 (E.D.N.Y. 2025)
............................................................................................................................................ 28

Warth v. Seldin, 422 U.S. 490, 504 (1975) ................................................................................... 5

Zhang v. City of New York, 17-cv-5415 (PKC), 2022 WL 17844361, *3 (S.D.N.Y. 2022) ....... 18

Zigmund v. Solnit, 199 F.3d 1325, *2 (2d Cir. 1999) .................................................................. 27

**Statutes**

FRCP 8, 12(b)(1), 12(h)(3) and 12(b)(6) ...................................................................................... 2

PHL §§ 206(1)(L), 2168 and 2164 ................................................................................................ 3

**Other Authorities**

Fourteenth Amendment to the U.S. Constitution ............................................................................ 1

New York's Administrative Procedures Act .................................................................................. 7

New York's Education Law ............................................................................................................ 7

New York's Public Health Law ...................................................................................................... 1

## PRELIMINARY STATEMENT

Defendants James McDonald and Joseph Giovannetti, each in his official capacity as an agent of the New York State Department of Health ("DOH"), respectfully submit this memorandum in support of their motion to dismiss the First Amended Complaint (the "FAC"). Defendant McDonald is the Commissioner of DOH; Defendant Giovannetti is the Director of DOH's Bureau of Investigations, Division of Legal Affairs. Plaintiff Isadora Guggenheim is a nurse practitioner who alleges that she has administered immunizations to school-aged children in New York State and is currently under investigation by DOH for her past immunization administration and reporting practices.

The FAC alleges violations of Plaintiff's rights under New York law and under the due process clause of the Fourteenth Amendment to the U.S. Constitution. The gravamen of the complaint is that Defendants violated her rights (1) by suspending her access to a State database called the New York State Immunization Information System ("NYSIIS"), (2) by posting on the DOH website that her access to NYSIIS had been suspended and (3) by directing schools through the DOH website not to accept paper-only records of immunization (*i.e.,* records of immunization not entered into NYSIIS) from the Plaintiff, all allegedly without due process. Plaintiff seeks declaratory and injunctive relief.

As recited in the FAC, Defendants' allegedly wrongful conduct occurred from as early as the onset of the Covid-19 pandemic in 2020 through October 2024. According to the FAC, following DOH's investigation of Plaintiff's immunization and reporting practices, Defendants suspended Plaintiff's access to NYSIIS in about June 2022 and posted her name to the DOH website, which she discovered in about October 2024. The FAC fails to plead facts that show that Plaintiff had any right or entitlement to NYSIIS access at any time. Rather, under New York's Public Health Law (the "PHL"), DOH had discretion whether to permit her such access. Absent

1

any right or entitlement to such access, Plaintiff lacked any property or liberty interest to trigger the protections of constitutional due process in connection with DOH's suspension of her access.

Likewise, the FAC fails to plead facts that show any defamation or constitutional violation by DOH's posting of her name, the fact of her NYSIIS suspension, and directive to schools and school administrators not to accept paper-only records of immunization from her. Plaintiff concedes the truthfulness of DOH's posting by affirmatively pleading in her FAC that her access *was* suspended in about June 2022, after Defendants advised Plaintiff that she was under investigation for her immunization and reporting practices, and after she had been served with and responded to an administrative subpoena relating to those practices.

New York law grants DOH broad authority to protect the public health, including the health of school-age children and adults, including by requiring sufficient proof of immunization of school-age children and adults and by communicating with schools and the public as may be necessary to implement those requirements. DOH's very limited and entirely truthful posting about Plaintiff's NYSIIS access suspension and directive to schools not to accept one type of vaccination record from her is plainly within its authority. The FAC pleads no facts that suggest that Plaintiff or her medical practice ever was harmed – much less that it is likely to be harmed in the future.

Defendants now move to dismiss the FAC, pursuant to FRCP 8, 12(b)(1), 12(h)(3) and 12(b)(6) because (1) it seeks relief that is barred by the Eleventh Amendment to the United States Constitution, including relief based upon Defendants' alleged violation of State law and based upon their alleged past conduct; (2) it fails to plead a sufficient factual basis to establish Plaintiff's Article III standing for prospective relief; (3) it fails to provide notice of the claim through a short and plain statement; and (4) it fails to state a claim on which relief may be granted.

## **BACKGROUND**

Plaintiff commenced this action on April 30, 2025. On June 6, 2025, the Court entered an order dismissing the original complaint for violation of FRCP 8 (the "Order," ECF No. 28). Plaintiff filed her FAC on June 20, 2025 (ECF No. 29). The FAC alleges that Defendants – New York State officials acting in their official capacities – engaged in certain wrongful conduct dating from as early as the onset of the Covid-19 pandemic in 2020 (*see, e.g.,* FAC ¶¶ 20, 24, 32). According to the FAC, in about June 2022, Defendants suspended Plaintiff's access to NYSIIS (FAC ¶¶ 52, 70) and posted her name, the fact of her NYSIIS suspension, and the directive to schools and the public not to accept paper-only records of immunization from her, which she discovered in about October 2024 (FAC ¶¶ 67, 70). On this basis, Plaintiff alleges that Defendants violated New York and federal law. She seeks declaratory and injunctive relief.

On July 22, 2025, Plaintiff moved for a preliminary injunction (ECF No. 46), which Defendants have opposed through an opposition memorandum that was filed with the Court today ("Defs' PI Brief") along with the Declarations of Joseph Giovannetti ("Giovannetti Aff.") and Vajeera Dorabawila ("Dorabawila Dec."). Defendants now cross-move for the dismissal of this action in its entirety. For the sake of brevity, Defendants hereby incorporate the information set forth in the Background section of Defendants' PI Brief, which summarizes the pertinent statutory and regulatory framework under New York's Public Health Law ("PHL"), including the authority granted to DOH to protect the public health by establishing and maintaining the State's immunization programs and immunization database, by collecting proofs of immunization in the form(s) it deems appropriate, by collecting records of immunizations from the schools within the State, and by operating and assuring the quality, integrity and effectiveness of the State's immunization programs (*See, e.g.,* PHL §§ 206(1)(L), 2168 and 2164).

3

## ARGUMENT

### Legal Standards

### Failure To Plead Subject Matter Jurisdiction

"[F]ederal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or Congress." UMB Bank v. Bristol-Myers, 21-CV-4897 (JMF), 2024 WL 4355029, *5 (S.D.N.Y. 2024). "Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'" Amidax v. SWIFT, 671 F.3d 140, 145 (2d Cir. 2011). "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Spokeo v. Robins, 578 U.S. 330, 337 (2016). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson v. Shineski, 562 U.S. 428, 434 (2011).[1]

"In order to ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper part[ies] to bring suit." Amidax, 671 F.3d at 145 (affirming dismissal for lack of standing). In particular, a plaintiff must plead facts sufficient to plausibly show that it has suffered "(1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." Id.; Town of Chester v. Laroe, 581 U.S. 433, 438 (2017) (vacating for lack of standing); Spokeo v. Robins, 578 U.S. 330, 338 (2016) (vacating for lack of standing); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (reversing for lack of standing); Warth v. Seldin, 422 U.S.

---

[1] Internal quotation marks and citations to internal quotations may be omitted throughout this brief.

490, 504 (1975) (affirming dismissal for lack of standing); *see also* <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984) (explaining that the various case-or-controversy doctrines "that cluster about Article III – not only standing but mootness, ripeness, political question, and the like" all operate as "fundamental limits on federal judicial power in our system of government").

Thus, when the plaintiff lacks standing, the case presents no Article III case or controversy, and the federal court lacks jurisdiction. Like the standing doctrine, the State's immunity from suit under the Eleventh Amendment to the U.S. Constitution is a further limitation on the Court's subject matter jurisdiction. <u>Pennhurst v. Halderman</u>, 465 U.S. 89, 124-25 (1984). "The objection that a federal court lacks subject-matter jurisdiction [] may be raised by a party, or by a court on its own initiative, at any stage in the litigation." <u>UMB Bank</u>, 2024 WL 4355029 at *5. "Indeed, [FRCP] Rule 12(h)(3) [] requires that '[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'" <u>Id</u>. "Motions brought pursuant to Rule 12(h)(3) are subject to the same standards as motions [] brought pursuant to Rule 12(b)(1)." <u>Id</u>.

On a motion to dismiss under FRCP 12(b)(1), "[the plaintiff] bears the burden of establishing standing in the same way as any other matter on which [it] bears the burden of proof[.]" <u>Amidax</u>, 671 F.3d at 145. "[T]o survive [a] Rule 12(b)(1) motion to dismiss, [plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue." <u>Amidax</u>, 671 F.3d at 145. "When resolving such a motion [] the plaintiff bears the burden to prove subject-matter jurisdiction by a preponderance of the evidence." <u>Id</u>. Subject matter jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." <u>UMB Bank</u>, 2024 WL 4355029, at *5.

### **Failure To State a Claim On Which Relief Can Be Granted**

"Under FRCP 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009).

Under FRCP 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter [] to state a claim to relief that is plausible on its face." <u>Id.</u> at 678 (holding that complaint failed to plead sufficient facts to state a claim for relief); <em>see also</em> <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> "Determining whether a complaint states a plausible claim for relief will [] be a context-specific task that requires the [] court to draw on its judicial experience and common sense." <u>Id.</u> at 679.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Id.</u> at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Allegations that are "no more than conclusions [] are not entitled to the assumption of truth." <u>Id.</u> at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" to give rise to an entitlement to relief. <u>Id.</u>

"Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Id.</u> at 679. Thus, in <u>Iqbal</u>, the Court concluded that it was "the conclusory nature of respondent's allegations [] that disentitle[d] them to the presumption of truth"

and that required dismissal. Id. at 681 (holding that the "complaint does not contain any factual allegation sufficient to plausibly suggest petitioner's discriminatory state of mind").

**THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED**

**I.    Plaintiff's Claims Are Barred By The Eleventh Amendment**

Defendants are State officials who are sued in their official capacities based upon their past conduct, including their alleged past violation of New York law. As this Court has recognized, "[t]he gist of the plaintiff's complaint is that one or more of the defendants unlawfully *suspended* her access to a [NYS DOH] database which requires medical practitioners to enter data concerning vaccinations of persons under the age of 19 and, separately, *posted* allegedly defamatory information about plaintiff on a DOH website." (Order of June 6, 2025, emphasis added). The FAC pleads no facts suggesting that Defendants have taken any more recent action in connection with either the suspension (in June 2022) or the posting (in October 2024). Thus, as set forth more fully below, the State's Eleventh Amendment immunity bars the relief sought in this action. *See* Pennhurst v. Halderman, 465 U.S. 89, 98 (1984) ("the principle of sovereign immunity is a constitutional limitation on the federal judicial power established in [Article] III").

**A.    The Eleventh Amendment Bars Relief For Violations Of State Law**

Plaintiff relies extensively on Defendants' alleged violations of State law to support her claims. For instance, Plaintiff alleges that Defendants violated New York's PHL § 12-a (FAC ¶¶ 53, 64, 65, 69, 71, 73, 86, 95, 97, 98, 112, 113, 125, 131, 134, 137), various provisions of New York's Education Law (FAC ¶¶ 65, 96, 98, 111, 112, 137) and various provisions of New York's Administrative Procedures Act (FAC ¶¶ 95, 96, 111, 125). In addition, as the Court noted, Plaintiff alleges that DOH's posting concerning the Plaintiff was defamatory (*see* Order), which is a state law cause of action. The Supreme Court has long held that state officials are immune from claims based upon alleged violations of state law in federal court. *See* Pennhurst, 465 U.S. at 103-106,

121 ("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment"); *see also* <u>Blige v. CUNY, et al.</u>, 1:15–cv–08873 (GBD) (KHP), 2017 WL 498580, at *7 (recommending dismissal of defamation claim based upon Eleventh Amendment), *adopted*, 2017 WL 1064716 (S.D.N.Y. 2017). Thus, to the extent that the FAC asserts violations of State law, it should be dismissed.

### B.  <u>The Eleventh Amendment Bars Relief For Past Violations</u>

Plaintiff pleads that her access to the NYSIIS database was suspended in about June 2022 and that her name was posted to the DOH website, which she discovered in about October 2024 (FAC ¶¶ 52, 67, 70). The FAC pleads no facts that suggest that Defendants have taken any more recent action in connection with either the suspension or the posting, no facts that suggest that Defendants are likely to take any action in the *future*, nor that Plaintiff or her medical practice is likely to be harmed in any practical respect by any such *future* conduct. Thus, although she seeks nominally prospective declaratory and injunctive relief, that relief would not fall within the <u>Young</u> exception to Eleventh Amendment immunity. *See* <u>Ex parte Young</u>, 209 U.S. 123 (1908) (recognizing narrow exception to immunity where state threatened future unconstitutional action).

In a long line of cases, the Supreme Court has made clear that the exception to Eleventh Amendment immunity articulated in <u>Ex parte Young</u> does not apply to cases where the relief that Plaintiff seeks amounts to relief based upon Defendants' past conduct. *See* <u>Pennhurst</u>, 465 U.S. at 105-106 ("an award of retroactive relief necessarily 'fall[s] afoul of the Eleventh Amendment'"); <u>Green v. Mansour</u>, 474 U.S. 64, 68 (1985) ("We have refused to extend [] <u>Young</u> [] to claims for retrospective relief"). In other words, "the [<u>Young</u>] exception is narrow: It applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in the past[.]" <u>Puerto Rico v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993).

8

Thus, the Second Circuit has held that the Eleventh Amendment bars the award of declaratory judgments and injunctions unless the plaintiff shows by non-conclusory, factual pleading that the grant of such relief would *prevent* unlawful conduct by defendants in the future. T.W. v. NYS Board of Law Examiners, 110 F.4th 71, 94 (2d Cir. 2024) (affirming dismissal of action for declaratory and injunctive relief that would not prevent unlawful future conduct).

Here, in the absence of any factual pleading sufficient to establish any likelihood of any particular *future* conduct by Defendants, any declaratory judgment would amount to a judgment that DOH's *past* suspension of Plaintiff's NYSIIS access and DOH's *past* posting on its website were unlawful. Indeed, the FAC requests exactly that: It seeks a judgment "[d]eclaring Defendants' conduct in barring Plaintiff's access to NYSIIS as unconstitutional" and declaring Defendants' conduct in "directing school districts to reject Plaintiff's signed written vaccine records as [] unconstitutional" (FAC ¶ 15). Such relief runs afoul of the Eleventh Amendment. *See* Puerto Rico, 506 U.S. at 146; Green, 474 U.S. at 71-73; T.W., 110 F.4th at 91-95; National Railroad v. McDonald, 978 F. Supp. 2d 215, 231 (S.D.N.Y. 2013) (McMahon, J.) (holding that the declaration sought would be "wholly retrospective: in practical terms, *such a declaration would require the state to give back the land, thereby restoring the status quo prior to the allegedly unlawful taking, which was over and done with back in February 2008*") (emphasis added), *aff'd*, 779 F.3d 97 (2d Cir. 2015).[2]

Furthermore, such a judgment could be used by the Plaintiff to collect money damages from the State *via* a future action filed in the State court, further frustrating a core policy objective

---

[2] Plaintiff's request for a "mandatory injunction," which seeks an order directing the Defendants to restore the *status quo* from *before* DOH suspended her NYSIIS access and *before* DOH posted about her suspended access, concedes the point (*see* FAC ¶¶ 12, 103). The exact relief sought by the FAC to restore the *status quo* from that earlier period is discussed in more detail on the following pages.

of the Eleventh Amendment. *See* <u>T.W.</u>, 110 F.4th at 92 ("the Supreme Court has relied, at least in part, on considerations of whether declaratory relief will lead to monetary exposure for a state in determining whether relief is prospective or retrospective"); <u>Green</u>, 474 U.S. at 73 (citing the same concern). Thus, in <u>T.W.</u>, the Second Circuit held that such a judgment would be barred by the Eleventh Amendment. "Although we decline to speculate as to when or how T.W. or another litigant could use the declaratory judgment here, we nonetheless note that a potential use, and in fact, perhaps the only potential use, would be to seek damages against the Board in state court. But 'declaratory judgment is not available when the result would be a partial 'end run' around the Eleventh Amendment's bar on retrospective awards of monetary relief.'" <u>T.W.</u>, 110 F.4th at 93. Thus, the court held that "the declaratory relief T.W. seeks is retrospective in nature, and is therefore barred by the Eleventh Amendment." <u>Id</u>. The same is true here.

Plaintiff's claim for injunctive relief fails for similar reasons. "[T]he doctrine of <u>Ex parte</u> <u>Young</u> permits federal courts to grant injunctions against state officials, but it only permits injunctions to *prevent* future violations of federal law." <u>T.W.</u>, 110 F.4th at 94 (emphasis added). In <u>T.W.</u>, for instance, the Second Circuit distinguished the continuing harmful effects of *past* allegedly unlawful conduct (which is not sufficient to invoke the <u>Young</u> exception) from allegations of *future* unlawful conduct that can be prevented by the injunctive relief sought. *See* <u>Id</u>. at 94 ("Even if she alleges ongoing harm, injunctive relief under [<u>Young</u>] must seek to stop ongoing 'violation[s] of federal law'"). In <u>T.W.</u>, the court held that the injunctive relief that plaintiff sought was barred because it would not *prevent* unlawful future conduct. <u>Id</u>.

Here, the FAC does *not* allege facts that plausibly suggest any ongoing course of conduct toward the Plaintiff. Rather, Defendants' actions toward the Plaintiff were discrete, one-time actions that were completed when Defendants allegedly suspended her database access (in 2022)

and when they posted her name on DOH's website (in 2024). Thus, Plaintiff has failed to show that the injunctive relief sought here would *prevent* any ongoing or future unlawful conduct. Rather, the effect of that injunctive relief would be to relieve Plaintiff of the ongoing *effects* of DOH's past suspension of her access and its past posting about her access status.

Under <u>T.W.</u>, such relief is plainly barred by the Eleventh Amendment. <u>Id.</u> at 95 ("[E]ven if the relief is prospective, T.W.'s injunctive relief is unavailable under [<u>Young</u>] because it is aimed exclusively at a past violation; it does not seek to remedy an alleged ongoing violation"); *see also* <u>National Railroad</u>, 978 F.Supp.2d at 231-32 (notwithstanding "ongoing *effects*" of Amtrak's alleged unconstitutional taking of property, injunctive relief was barred where it would be based upon "a discrete [past] act [that] transferred record title from Amtrak"); <u>JTE v. Cuomo</u>, 2 F. Supp. 3d 333, 340-41 (E.D.N.Y. 2014) (despite "ongoing ramifications for the Plaintiff's future state tax obligations," Eleventh Amendment barred Plaintiff's request for relief that would not address an "ongoing violation of federal law," but rather sought to "undo" the past wrongful actions of defendants, including their alleged past violation of the Plaintiff's due process rights).

The retrospective nature of the relief that Plaintiff seeks is underscored by the words that she uses to describe that relief. She seeks a mandatory injunction requiring "that the defendants *reinstate* Plaintiff's access to [NYSIIS,]" and "*remove* Plaintiff's name and information *posted* in defendants' official web site" and "*revoke* their directions *given* to school districts" (FAC at ¶ 12). All of this relief explicitly refers to those discrete instances of Defendants' *past* conduct by which they allegedly caused her access to be suspended and caused the posting about her to appear on the DOH website. Plaintiff's request for a "prohibitive [] injunction" seeks to remedy those same alleged *past* violations (FAC at ¶ 13). This is evident from the FAC's failure to plead any non-conclusory facts suggesting that Defendants are engaged in any ongoing conduct that can be

prevented. Absent pure speculation about any such ongoing or future conduct, Plaintiff's request

for an injunction barring Defendants "from violating Plaintiff's [] rights as set forth [] in this

Complaint" likewise relies on the *past* violations pleaded in the FAC (FAC at ¶ 14). *See* <u>National</u>

<u>Railroad</u>, 978 F.Supp.2d at 231 ("Since the taking was complete in 2008, there is no 'ongoing

violation of federal law' or 'threat of state officials violating the [ ] law in the future'").[3]

Thus, the FAC's requests for declaratory and injunctive relief are barred by the Eleventh

Amendment. The FAC should be dismissed in its entirety (*see* FRCP 12(b)(1), 12(h)(3)).

## II.      <u>Plaintiff Lacks Standing For Any Declaratory Or Injunctive Relief</u>

For substantially the reasons set forth in the preceding Section of this brief, Plaintiff has

failed to carry her burden to show that she has Article III standing to pursue the allegedly

prospective declaratory and injunctive relief that she seeks. "[T]o survive [a] Rule 12(b)(1) motion

to dismiss, [plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing

to sue." <u>Amidax</u>, 671 F.3d at 145. "When resolving such a motion [] the plaintiff bears the burden

to prove subject-matter jurisdiction by a preponderance of the evidence." <u>Id</u>. Subject matter

jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it." <u>UMB Bank</u>, 2024 WL 4355029, at *5.

The FAC pleads allegedly wrongful conduct of Defendants between June 2022 and

October 2024. Yet, Plaintiff has asked the Court to grant her exclusively prospective relief that

must be predicated upon a sufficient factual pleading of *future* harm. To establish standing for such

prospective relief, "a plaintiff must show, *inter alia*, a sufficient likelihood that he [or she] will

again be wronged in a similar way" in the future. <u>Marcavage v. City of New York</u>, 689 F.3d 98,

---

[3] Plaintiff's request for mandatory injunctive relief is also barred because it would require "affirmative action" by the State. In the Second Circuit, "sovereign immunity applies [] if the requested relief requires affirmative action by the sovereign." <u>National Railroad</u>, 978 F.Supp.2d at 234-35 (discussing cases).

103 (2d Cir. 2012) (affirming dismissal of prospective relief for lack of standing). "That is, a plaintiff must demonstrate a certainly impending future injury." Id. at 103. "In establishing a certainly impending future injury, a plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." Id.; *see also* City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (plaintiff lacked standing for injunction where he failed to show a likelihood that he would again be subject to the allegedly illegal practice).

The courts repeatedly have held that past injuries alone will not suffice to establish the likelihood of future injury that is required to support standing for prospective relief. *See, e.g.,* Connecticut v. Lamont, 6 F.4th 439, 448 (2d Cir. 2021) (holding that organization lacked standing for injunctive relief, reasoning that "[a] plaintiff seeking injunctive [] relief cannot rely on past injury [] but must show a likelihood that [it] will be injured in the future"); Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (Chen, J.) ("When 'only past acts are involved,' declaratory relief is unavailable"); Daytree v. Walsh, 332 F. Supp. 3d 610, 628 (E.D.N.Y. 2018) (Bianco, J.) (dismissing claims for declaratory and injunctive relief that were based on past conduct); An v. City of New York, 230 F. Supp. 3d 224, 229-31 (S.D.N.Y. 2017) (Schofield, J.) (despite past instances of the same or similar violations, plaintiff lacked standing for injunctive relief); Cameron v. Zucker, 2017 WL 2462692, *7 (S.D.N.Y. 2017) (Koeltl, J.) (plaintiff failed to identify "any [] injury he will suffer that is neither remote nor speculative, but actual and imminent").

Thus, to establish standing for prospective relief in the Second Circuit, "the plaintiff must demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent." Peck v. Baldwinsville, 351 Fed. Appx. 477, 479 (2d Cir. 2009) (vacating judgment for lack of standing); Marcavage, 689 F.3d at 103 (affirming dismissal). In each of these cases,

"[b]ecause the Complaint fail[ed] to allege the existence of an official policy or its equivalent" and the likelihood of future harm, plaintiffs lacked standing for declaratory and injunctive relief. *See also* <u>An</u>, 230 F. Supp. 3d at 232.

Here, Plaintiff has failed to plead a factual basis that plausibly establishes that Defendants are likely to engage in *any* future conduct that might harm her or her medical practice, much less has she pleaded facts that plausibly show that she faces any "certainly impending future injury." Indeed, as detailed in Point IV.B.(3) below, she has pled no facts that show that Defendants' suspension of her database access or posting of her name on the DOH website has had *any* practical impact upon her medical practice, her medical license or her income to date.[4] Indeed, the FAC affirmatively pleads that Plaintiff's vaccination practice "remained unaffected between July 2022 and October 2024" (FAC ¶¶ 56, 60-62). Plaintiff alleges that she *was not even aware* of her database suspension or the posting in the 28 months between June 2022 and October 2024 (FAC ¶¶ 52, 54, 62-63). Moreover, the FAC pleads that she has several professional licenses, including a license issued in Connecticut, that each remains "unrestricted," and that she continues to practice (FAC ¶¶ 1, 18-19, 64). These are judicial admissions to which Plaintiff should be bound. *See* <u>Official Committee v. Coopers & Lybrand</u>, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are 'judicial admission[s]' by which Color Tile Committee was 'bound throughout the course of the proceeding'").

The FAC provides no factual pleading to support the suggestion that Plaintiff's vaccination practice *ever* changed thereafter. Plaintiff's claim for prospective declaratory and injunctive relief – to remedy any similarly unpled *future* harm – is predicated entirely upon speculation. In addition,

---

[4] For the sake of brevity, Defendants hereby incorporate into this section of the brief the points set forth below in Point IV.B.(3) that detail the Plaintiff's failure to plead that she was harmed in any practical respect by Defendants in the past or that she will be harmed by them in the future.

to the extent that the FAC pleads a *procedural* due process violation, which appears to be her principal if not exclusive claim, it pleads no facts to support any assertion that Plaintiff will be subjected to any *similar* due process violation in the future. Nor does the FAC plead anything akin to "the existence of an official policy or its equivalent" that might threaten such a future injury.

In another case presenting issues nearly identical to those pled here, including DOH's suspension of a provider's NYSIIS access based on concerns about fraud, on August 29, 2025, a Magistrate Judge in the Eastern District of New York recommended dismissal of that action for lack of Article III standing. *See* Khan v. McDonald, Case 2:24-cv-04745-JMA-ST, Slip Opinion at **15-22 (E.D.N.Y. August 29, 2025) (attached as Exhibit "A" hereto). The Court expressly held that Dr. Khan had not sufficiently pled any certainly impending future injury, including from DOH's suspension of his NYSIIS access. Id. With respect to that issue, this case is indistinguishable from Khan. Therefore, Guggenheim likewise has failed to establish her standing for any prospective relief. *See* Amidax, 671 F.3d at 145 ("[T]o survive [a] Rule 12(b)(1) motion to dismiss, [plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue"); Iqbal, 556 U.S. at 677-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" to give rise to an entitlement to relief).

### III.    The FAC Does Not Comply With FRCP 8

FRCP 8 requires that "[a] pleading that states a claim for relief must contain [] a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FRCP 8(a)(2). "Each allegation must be simple, concise, and direct." FRCP 8(d)(1). The Court is authorized to dismiss a complaint that fails to comply with Rule 8 and to "strike from a pleading [] any redundant, immaterial, impertinent, or scandalous matter" either "on its own" or on motion by a party. FRCP 12(f). *See* Celli v. Cole, 699 Fed. Appx. 88, 89 (2d Cir. 2017) (affirming dismissal, citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988); *see also* FRCP 1 (the Federal Rules

"should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

Here, on April 30, 2025, Plaintiff filed her Complaint (ECF No. 1). On May 19, 2025, Defendants wrote the Court concerning the Complaint's failure to comply with FRCP 8, 11 and 12 (ECF No. 24). On June 6, 2025, the Court issued its Opinion and Order (the "Order") finding that the Complaint "fails to satisfy Rule 8(a) and is subject to dismissal on that ground alone." (ECF No. 28). The Court directed Plaintiff to file an amended complaint and warned that Plaintiff's failure to comply with FRCP 8 in an amended complaint "will result in a dismissal with prejudice." (ECF No. 28). In particular, the Court observed:

> Apparently unaware that a demand for a particular form of relief is not the statement of a claim for relief, plaintiff alleges four causes of action: First, "MANDATORY TEMPORARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65," Second, "PROHIBITIVE PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. PROC. 65," Third, "INJUNCTION PURSUANT TO 42 U.S.C. § 1983" and Fourth, "DECLARATORY JUDGMENT UNDER 28 USC § 2201."

Despite the Court's Order, the FAC pleads the *same* four defective causes of action (and *only* those four causes of action). Thus, despite the Court's clear guidance and the opportunity to amend, the FAC remains far out of compliance with FRCP 8 and fails to put Defendants on fair notice of the claim against them. First, as the Court advised Plaintiff previously, the FAC fails to state a claim for relief (as opposed to repeating the *relief* that she seeks in her four causes of action) (*see* Order);[5] *see also* <u>Chevron v. Naranjo</u>, 667 F.3d 232, 244-45 (2d Cir. 2012) (reversing grant of preliminary injunction, holding that "[l]ike a preliminary injunction, a declaratory judgment []

---

[5] As the Court observed in its Order, "[t]he statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988). In addition, "[t]he statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage'." <u>Id.</u>

does not create an independent cause of action"); <u>KM Enterprises v. McDonald</u>, No. 11–cv–5098 (ADS) (ETB), 2012 WL 4472010, **19-20 (E.D.N.Y. 2012) (Spatt, J.) (dismissing "causes of action" for declaratory judgment and injunction for failure to state a claim), *aff'd*, 518 Fed. Appx. 12 (2d Cir. 2013).

In addition, the FAC remains prolix because it runs over 138 paragraphs and 38 pages. It remains confused because, in addition to its many misnumbered paragraphs, it fails to clearly identify which facts (from the lengthy recitation of alleged wrongdoing going back some five years) allegedly support her claims (and which are mere surplusage). The FAC remains highly repetitive, with many allegations repeated verbatim or with minor variations, including the relief sought (*see* FAC ¶¶ 4, 6, 8, 12-15, 17, 100-121, 122-123, 124-133, 134-138). It remains improperly argumentative in that it incorporates extensive legal argument related to a motion that Plaintiff suggests that she will file in the future (and that should be reserved for briefing on that motion) (*see* FAC ¶¶ 64-66, 68-79, 92-99, 100-121, 124-133, 134-138). And, like her initial Complaint, the FAC contains many pages of allegations that appear to be entirely or largely irrelevant to any possible claim (*see* FAC ¶¶ 20-50, 53-63, 80-93).

Thus, the FAC should be dismissed pursuant to the Court's prior Order and FRCP 8. In another case presenting pleading defects nearly identical to this case, on August 29, 2025, a Magistrate Judge in the Eastern District of New York likewise recommended dismissal of that action for plaintiff's failure to comply with FRCP 8. *See* <u>Khan v. McDonald</u>, Case 2:24-cv-04745-JMA-ST, Slip Opinion at **11-15 (E.D.N.Y. August 29, 2025) (attached as <u>Exhibit "A"</u> hereto); *see also* <u>Azzarmi v. Neubauer</u>, No. 20-CV-9155 (KMK), 2022 WL 4357865, at *4 (S.D.N.Y. 2022) (dismissing complaint that was "hopelessly redundant, argumentative, and has much irrelevancy," just as "[i]t is excessively long-winded"); <u>Keitel v. D'Agostino</u>, 21-CV-8537 (JMF),

2022 WL 15524665, *2 (S.D.N.Y. 2022) (dismissing complaint where it was "egregiously repetitive" and "littered with unnecessary, vague and inflammatory language"); Rubin v. New York City, 20-CV-10208 (LGS) (KHP), 2023 WL 1972729, *9-10 (recommending dismissal of complaint, holding that "a complaint is not the proper document to [make] legal arguments" and that the complaint was "rambling and repetitive"), *adopted*, 2023 WL 2344731 (S.D.N.Y. 2023); Shetiwy v. Midland, 980 F. Supp. 2d 461, 467 (S.D.N.Y. 2013) (Scheindlin, J.) (dismissing complaint, holding that "[p]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit").

### IV.    The FAC Fails To State A Claim On Which Relief Can Be Granted

#### A.   Plaintiff's Claims Are Barred To The Extent That They Are Based On Defendants' Conduct Before April 30, 2022

As a threshold matter, the FAC alleges wrongdoing by Defendants that dates back more than three years before this action was commenced on April 30, 2025 (*see, e.g.*, FAC ¶¶ 20-50, 80-89). To the extent that the Plaintiff seeks to assert any constitutional claim, she must do so through the cause of action provided by 42 U.S.C. § 1983. *See* Buntin v. City of New York, 395 F.Supp.2d 104, 107-08 (S.D.N.Y. 2005), *aff'd*, 225 Fed. Appx. 28 (2d Cir. 2007). In New York, all such claims are subject to a three-year limitations period. *See* Owens v. Okure, 488 U.S. 235, 251 (1989) (applying New York's three-year limitations period to Section 1983 claims); Zhang v. City of New York, 17-cv-5415 (PKC), 2022 WL 17844361, *3 (S.D.N.Y. 2022) (same); Sunnen v. State of New York, No. 10 Civ. 372(PKC), 2010 WL 3912728, *2 (S.D.N.Y. 2010) (same). Thus, any claims in the FAC that are based upon events that transpired more than three years before she filed this action are barred as a matter of law and should be dismissed.

**B.** **Plaintiff Fails To State A Claim For Procedural Due Process**

To the extent that Plaintiff seeks to assert a violation of her procedural due process rights, the FAC fails to state a claim on which relief can be granted. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Reed v. Goertz, 598 U.S. 230, 236 (2023). "Importantly, [] a procedural due process claim 'is not complete when the deprivation occurs.'" Id. "Rather, the claim is 'complete' only when 'the State fails to provide due process.'" Id.; *see also* Quick v. Garcia, 16-CV-2646 (KAM) (LB), 2016 WL 6069504, *2 (E.D.N.Y. 2016) ("[A] plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process'").

**(1)** **Plaintiff Has No Property Interest In Access To NYSIIS**

The FAC alleges that Plaintiff is a healthcare practitioner who holds various licenses in New York and Connecticut (FAC ¶¶ 1, 18-19, 64). She alleges that Defendants' suspension of her database access interfered with her "right to hold specific private employment," "to follow a chosen profession," "to pursue an occupation," and that it amounts to a "*de facto* license restriction." (FAC ¶¶ 111, 114-16, 64). But Plaintiff has failed to plead facts that show that she has any property interest in access to the State's database. The law provides that she does not.

"To have a property interest [], a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). "Property interests [] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. Where, upon review of those "existing rules or understandings," the plaintiff has shown no "legitimate

claim of entitlement," no property interest is established. See, e.g., Roth, 408 U.S. at 578-79 (where terms of employment "specifically provided that [it would] terminate" on date certain, non-tenured professor had no property interest in continued employment by university after that date).

Importantly, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Castle Rock v. Gonzalez, 545 U.S. 748, 756, 760-61 (2005) (despite mandatory language, factual context required that government official exercise discretion, foreclosing claim of entitlement);[6] Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991) ("If the statute, regulation, or contract in issue vests in the state significant discretion over the continued conferral of [a] benefit, it will be the rare case that the recipient will be able to establish an entitlement to that benefit"); Plaza Health v. Perales, 878 F.2d 577, 581 (2d Cir. 1989) ("the existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them"); Maple Avenue v. Town of North Haven, 924 F. Supp. 2d 392, 399 (D. Conn. 2013) (where government is authorized to make inherently discretionary judgments – not limited by any explicit mandatory standards – plaintiff has no "legitimate claim of entitlement").

Here, Defendants were granted broad discretion to regulate access to NYSIIS – including to both grant and suspend access to it – pursuant to the Public Health Law. "The commissioner [] may refuse access to [NYSIIS] based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation" (NYS PHL § 2168(9)). Defendants' judgments

---

[6] The Court in Castle Rock viewed as "radical" the plaintiff's contention – like Guggenheim's contention here – that the alleged property interest "arises incidentally, not out of some new species of government benefit or service, but out of a function that government actors have always performed—to wit, arresting people who they have probable cause to believe have committed a criminal offense." Id. at 766-67. Likewise, here, the government has not created any new benefit or service by promulgating the NYSIIS statute, but rather seeks to protect the public health through that regulation.

based on a user's credibility – like credibility assessments in many legal contexts – are inherently discretionary.[7] The legislature's grant of discretion to DOH to regulate access to NYSIIS is also reflected in its express authorization to DOH to "promulgate regulations as necessary to effectuate the provisions of this section[,]" including "for orderly implementation and operation of [NYSIIS], including the method by which each category of authorized user may access the system." PHL § 2168(13); NYCRR 66-1.2(e) (requiring that "[e]ach person seeking access to NYSIIS [] must submit a completed application for access").

Importantly, neither the statutes nor the regulations impose any limitation on Defendants' discretion in such matters. For instance, DOH is not subject to any particular standards before commencing an investigation or making a determination to refuse access, nor is it limited in the evidence that it may consider, or required to provide notice of any investigation or of any decision, nor required to articulate the basis for any such decision under State law. In contrast to DOH's explicit statutory discretion to refuse access to NYSIIS, no plausible *entitlement* to access can be found in the statutory scheme or in the regulations. For instance, no medical doctor, health care practitioner or other applicant to use NYSIIS is guaranteed access to NYSIIS, or assured that, if granted, such access will continue indefinitely, for any fixed period of time or unconditionally, or subject to any particular conditions. Such matters are left to DOH's sole discretion. Moreover, nothing in PHL § 2168 (or any other provision) entitles any user to notice, to a pre-deprivation hearing or to any other process before DOH suspends an individual's access to NYSIIS.

---

[7] *See, e.g.,* United States v. Joseph, 2024 WL 1827291, *3 (2d Cir. 2024) (credibility assessment was within jury's discretion); Newell v. Holder, 579 Fed. Appx. 53, *54 (2d Cir. 2014) (credibility assessment was within Attorney General's discretion); Findlay v. MTA Bus Co., 124 N.Y.S.3d 193, *193 (1st Dep't 2020) (credibility assessments were within arbitrator's discretion); Rosenbaum v. Atlas, 887 N.Y.S.2d 93, *93 (1st Dep't 2009) (credibility assessment was within trial court's discretion); In re Decker, 760 N.Y.S.2d 908, *908 (3d Dep't 2003) (credibility determinations were within the Board's discretion).

In short, the PHL reserves exclusively to Defendants the decision whether and when to suspend or terminate a user's access. By doing so, the PHL forecloses any claim that any user of the NYSIIS system has any entitlement to NYSIIS access or any property interest in it. Roth, 408 U.S. at 578-79 (after contract term with university expired, plaintiff had no entitlement to continued employment with university, which was within university's discretion); Castle Rock, 545 U.S. at 760-61 (where officers retained discretion in how to respond to complaint, plaintiff lacked entitlement to enforcement of restraining order); ISS Action v. Port Authority, 161 Fed. Appx. 120 (2d Cir. 2005) (where defendant "can unilaterally deny security access," such access is not a property interest); Kelly Kare, 930 F.2d at 176 ("nothing in [New York's Social Services Law] entitles Kelly Kare to uninterrupted participation in the [Medicaid] program"); Plaza Health, 878 F.2d at 581, 582 ("a provider does not have a property interest in continued participation in the [Medicaid] program"); S&D v. Goldin, 844 F.2d 962, 968 (2d Cir. 1988) (contractor had no entitlement to continuation of service contract where "contract did not create a property interest in non-termination in the first place").[8]

---

[8] *See also* Fishermen's Finest v. United States, 155 Fed. Cl. 576, 599 (2021) ("The absence of crucial indicia of a property right, coupled with the government's irrefutable retention of the right to suspend, revoke, or modify [plaintiff's] swordfishing permit, compels the conclusion that the permit bestowed a revocable license, instead of a property right"), *aff'd*, 59 F.4th 1269 (Fed. Cir. 2023); Guettlein v. United States, 577 F. Supp. 3d 96, 104-05 (E.D.N.Y. 2021) ("any property right to employment that plaintiffs may claim does not rise to the level of a fundamental right protected by substantive due process"); Green v. Hilliard, 2015 WL 8664175, *8 (D. Conn. 2015) ("In this case, there is no statute, regulation or other legal guidance on the standards [the decision-maker] should apply in determining whether to revoke, grant, or deny an individual's access to [the government database]. Without any such guidance, the decision to grant [] access is purely discretionary and, therefore, cannot create a constitutionally cognizable property interest"); Maple Avenue, 924 F. Supp. 2d at 399 (no property interest where Police Chief acted pursuant to policy that granted him "very substantial discretion," which was "far from the kind of restriction that creates a protected property interest"); Kahn v. Inspector General, 848 F. Supp. 432, 438 (S.D.N.Y. 1994) (provider "does not have a protected property interest in continued participation in the [] Medicare program").

### (2)    Plaintiff Has No Liberty Interest In Access To NYSIIS

Plaintiff likewise has no protected liberty interest in her access to NYSIIS. "In a line of earlier cases, this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." Conn v. Gabbert, 526 U.S. 286, 291-92 (1999). Importantly, "[t]hese cases all deal with a complete prohibition of the right to engage in a calling[.]" Id. at 292; *see also* Roth, 408 U.S. at 573-74 (no deprivation of liberty interest where plaintiff remained "free to take advantage of other employment opportunities"); Hu v. City of New York, 927 F.3d 81, 102-03 (2d Cir. 2019) (no deprivation of liberty interest, holding that "[t]o prevail on such a claim, a plaintiff must allege facts suggesting that a defendant's conduct has 'operate[d] as a complete prohibition on his ability to practice [his chosen profession]'"); Kelly Kare, 930 F.2d at 177 (no deprivation of liberty interest although defendants "provided no reason for the [contract] termination"); S&D, 844 F.2d at 970 (no deprivation of liberty interest where contract termination left plaintiff "forced out of business, tottering near bankruptcy, unable to get work"); Guettlein, 577 F. Supp. 3d at 104 (no deprivation of liberty interest where plaintiffs failed to plead or to show that they could not find other employment); Green, 2015 WL 8664175, at *9-10 (no deprivation of liberty interest where plaintiff failed to show that she was barred from pursuing any job in her chosen profession). In Green, the Court concluded that "[b]ecause [plaintiff] has no liberty interest in accessing [the government database], she cannot have a liberty interest in a job requiring such access." Id.

Here, the FAC does not allege that Defendants' conduct has resulted in her "complete prohibition" from engaging in her practice. The FAC does not even allege that NYSIIS access is a requirement of any of her licenses or that, as a practical matter, her suspension from NYSIIS has

had any practical impact on her practice or her income (discussed more fully in Point IV.B.(3) below). To the contrary, the FAC pleads that Plaintiff *was not even aware* of her database suspension in the 28 months between June 2022 and October 2024 (FAC ¶¶ 52, 54, 62-63). Moreover, the FAC pleads that she has several professional licenses, including a license issued in Connecticut, that each remains "unrestricted," and that she continues to practice (FAC ¶¶ 1, 18-19, 64). Again, these are judicial admissions to which Plaintiff should be bound.[9] Thus, the FAC fails to state a claim for any violation of Plaintiff's liberty interest.

Even if Plaintiff had pled facts showing that Defendants' suspension of her access to NYSIIS affected her practice in any practical respect, she has not shown that the access suspension was anything other than the sort of "reasonable government regulation" to which any such interest is subject. *See* Conn, 526 U.S. at 291-92; *see also* Hu, 927 F.3d at 102. Here, that reasonable government regulation is plainly rationally related to the State's compelling interest to protect the public health of New York's residents, including its school-age children and adults, which is authority that is expressly granted to DOH by New York's PHL.

### (3)    The FAC Fails To Plead Causation, Deprivation Or Other Harm

Apart from the FAC's failure to plead facts that show that Plaintiff has any constitutionally protected property or liberty interest in her database access, the FAC fails to plead facts that plausibly show that Plaintiff was *deprived* of any practical interest in pursuing her profession or otherwise harmed by Defendants' actions. The FAC fails to plead, for instance, that DOH has taken *any* steps to revoke, to suspend or to formally limit any of her licenses. The FAC does not allege that DOH has initiated *any* disciplinary or other legal action against her, nor does it allege

---

[9] *See* Official Committee v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are 'judicial admission[s]' by which Color Tile Committee was 'bound throughout the course of the proceeding'").

that she has lost any employment, any future employment opportunity, any patients or any income as a result of her database suspension. The FAC does not allege that Defendants have *threatened* to take any of the foregoing actions against her in the *future*. The FAC does not even allege that database access is required to practice medicine or to engage in any of the practices permitted by her various licenses. In short, the FAC fails to plead *facts* that show that the suspension of Plaintiffs' database access has caused her – or will cause her – to be deprived of any constitutional or practical interest in pursuing her profession (or caused her any other harm).

To the contrary, the FAC concedes that Plaintiff *continues* to possess all of her "unrestricted licenses" and that she has not been pursued by the Nursing Board, which she asserts is the only agency authorized to conduct disciplinary proceedings against licensees such as Plaintiff (FAC ¶¶ 1, 18-19, 65, 66, 96, 111). "The Board of Nursing has not conducted any proceedings and did not issue any orders limiting Plaintiff's ability to practice nursing" (FAC ¶¶ 66, 97). "The Plaintiff does not have any record of disciplinary action [and] her license was never restricted in any manner shape or form by the Board of Nursing" (FAC ¶ 135). These allegations refute Plaintiff's claim that any of her licenses has been "restricted" and that her interest in pursuing her occupation has been harmed.

At its core, Plaintiff's theory relies upon the assertion that Defendants' suspension of her database access in June 2022 "restricts Plaintiff's ability [] to vaccinate patients below 19 years of age and patients of any age who necessitate proof of vaccinations" (FAC ¶¶ 64, 136). Yet, even this allegation is not supported by any factual pleading that shows that the Plaintiff was, *in fact,* prevented from vaccinating anyone (regardless of age or the proof of vaccination they required), nor does she plead any facts that plausibly show that she is likely to be prevented from vaccinating anyone in the future. To the contrary, the FAC concedes that she was *not* prevented from providing

immunizations for *at least* two years after her June 2022 suspension and it does *not* plead that she will make any change or that she is likely to make any change to her practice going forward.

Indeed, the FAC concedes that even Plaintiff's child vaccination practice continued unabated after her database suspension in June 2022. Through at least November 2024, "Plaintiff still had patients who wanted the NYS COVID mandated vaccines for school" (FAC ¶ 54). Notwithstanding her suspension, "Guggenheim continued to vaccinate children" (FAC ¶ 54). "In cases where a patient was given any type of a vaccine, the Plaintiff had them either photograph and or videotape the vaccines and her administration thereof so there would be no question about the administration" (FAC ¶ 55). Thus, *in lieu* of complying with the State's mandatory reporting requirements by reporting child vaccinations on the State's database, Plaintiff implemented "[t]he practice of vaccinating and providing paper proof of vaccinations," including to schools (FAC ¶¶ 56, 60-62). Thus, "Plaintiff's practice remained unaffected between July 2022 and October 2024" (Id.). The FAC provides no factual pleading to support the suggestion that Plaintiff's child vaccination practice (or any aspect of her practice) *ever* changed thereafter.

This complete lack of factual pleading demonstrating any actual deprivation of any constitutional or other interest that Plaintiff claims (or any other practical harm at all) should be fatal to her due process claim(s). *See* Iqbal, 556 U.S. at 678 ("[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter [] to state a claim to relief that is plausible on its face"); Reed, 598 U.S. at 236 ("A procedural due process claim [requires] *deprivation* by state action of a protected interest in life, liberty, or property"); Quick, 2016 WL 6069504, at *2 ("[A] plaintiff must 'first identify a property right, second show that the [government] has *deprived* him of that right, and third show that the deprivation was effected without due process'").[10]

---

[10] Based on the FAC's lack of factual pleading, Defendant submits that the only reasonable inference is that any practical impact on Plaintiff's practice is, at most, *de minimis*, and "the requirements of due process do

### (4)    Plaintiff Had Available To Her All The Process Due

The FAC fails to show that Plaintiff was denied the process due in the circumstances that the FAC describes. The FAC alleges that Plaintiff, a healthcare practitioner, was subject to an administrative investigation by DOH after DOH permitted her access to the State's immunizations database.[11] The FAC does not allege that DOH ever charged Plaintiff with any wrongdoing, administratively or otherwise, much less adjudicated any of her legal rights. The FAC does not address New York's CPLR Article 78 procedure by which she could have sought judicial review of DOH's actions in the State courts.

In these circumstances, at the investigative phase of an administrative proceeding where the Plaintiff's rights have not been adjudicated, the Supreme Court has held that plaintiff is not entitled to the protections of due process. *See* S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 742 (1984) ("The Due Process Clause is not implicated under such circumstances because an administrative investigation adjudicates no legal rights"); Hannah v. Larche, 363 U.S. 420, 441-42 (1960) (due process protections are reserved for adjudicative proceedings and not required in course of administrative investigation); *see also* Diblasio v. Novello, 413 Fed. Appx. 352, 358 (2d Cir. 2011) (rejecting due process challenge in context of administrative investigation). As Justice

---

not apply when the property interest involved is '*de minimis*.'" Zigmund v. Solnit, 199 F.3d 1325, *2 (2d Cir. 1999) (plaintiff stated no procedural due process claim where alleged infringement was *de minimis*); Ahlers v. Rabinowitz, 684 F.3d 53, 62-63 & n.8 (2d Cir. 2012) (same).

[11] The investigation here allegedly included a "site visit" to Plaintiff's office at which she was present and met with DOH personnel (FAC ¶¶ 33-38), alleged off-site interviews of Plaintiff's patients (FAC ¶¶ 40-43), DOH's service upon Plaintiff of a subpoena *duces tecum*, to which she responded (FAC ¶¶ 44-45), and a second site visit with Plaintiff's consent (FAC ¶¶ 46-48). In June 2022, based upon its continuing investigation, DOH administratively suspended her access to the database (FAC ¶ 70). In October 2024, Defendant Giovannetti confirmed to her that she was "under investigation" and that she was "blocked from NYSIIS" (FAC ¶ 60). Plaintiff later learned that DOH had posted her name on its website advising schools that her database access was suspended and directing them not to accept paper-only records from her (FAC ¶¶ 67, 70). Defendants deny each and every allegation of wrongdoing in the FAC and also note that this portion of the FAC is chock full of unsupported hearsay and conjecture concerning the alleged conduct.

Marshall explained, "the imposition of a notice requirement on the [investigative agency at the investigative stage of the process] would substantially increase the ability of persons who have something to hide to impede legitimate investigations." O'Brien, 467 U.S. at 750. Thus, the protections of due process were not implicated by the administrative investigation that the FAC pleads. Nevertheless, it is evident from the FAC that Plaintiff had ample notice that she was under investigation no later than the date of DOH's initial "site visit" or from the date on which she was served with DOH's subpoena *duces tecum* to which she responded (FAC ¶¶ 33-38, 44-45). [12]

Moreover, in these circumstances, the Plaintiff was not entitled to any pre-deprivation hearing because she had available to her an adequate post-deprivation hearing. The Second Circuit has held that New York's CPLR Article 78 procedure, which is available to challenge state agency decisions, provides an adequate post-deprivation hearing. *See, e.g.*, Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes"); Horton v. Westling, No. 18-763, 765 Fed. Appx. 531 (2d Cir. 2019) (affirming dismissal of procedural due process claim where plaintiff had available Article 78 proceeding that provided adequate post-deprivation hearing); *see also* Walker v. NYS DOH, 2:24-cv-6836 (NJC) (LGD), 2025 WL 1786917, *50-55 (E.D.N.Y. 2025) (dismissing procedural due process claim where plaintiffs had available Article 78 proceeding in which to challenge alleged deprivation); Cohn v. New Paltz, 363 F. Supp. 2d 421, 433-34 (N.D.N.Y. 2005) (dismissing procedural due process claim and holding that "[t]he Article 78

---

[12] Plaintiff argues that Defendants violated various State procedures, including NYS Administrative Procedures Act §§ 301-401, but that argument is likewise misguided. Even if she could state a claim for a violation of state law (which is barred by the State's Eleventh Amendment immunity, *see* Point I.A. above), those statutes do not apply here because they (like the protections of due process) apply only to adjudicatory proceedings (NYS APA § 301(1) ("In an adjudicatory proceeding . . . .")).

proceeding constituted part of the due process protection [plaintiff] received, and it cured any procedural defect that may have occurred").

The Second Circuit has held that availability of the Article 78 proceeding is sufficient to defeat plaintiff's procedural due process claim even if the plaintiff failed to avail herself of that procedure. *See* Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity"); Horton, 765 Fed. Appx. 531 ("While Horton did not actually file an Article 78 action, he had 'a meaningful opportunity to challenge' his treatment and so was 'not deprived of due process simply because [he] failed to avail [himself] of the opportunity'").

Therefore, the FAC fails to state a claim for any violation of due process.

## V.    The FAC Fails To State A Claim For Reputational Harm, Substantive Due Process, Harassment Or Any Other Violation

In addition to seeking relief based upon Defendants' alleged suspension of her database access, the FAC seeks relief based upon Defendants' alleged posting of her name, the fact that her access was suspended and the directive to schools not to accept paper-only proof of vaccination from her. These allegations *may* seek to state a claim for defamation, but without any indication in the FAC, Plaintiff's intentions are unclear. In any event, these allegations fail to state a claim.

First, although the FAC articulates the *relief* that Plaintiff seeks, it does not clearly state the claims that might support that relief, for instance by stating those claims in distinct causes of action that clearly articulate the alleged violations with the facts that are alleged to support each. In the Court's Order of June 6, 2025, discussed in Point III above, the Court advised Plaintiff of this defect and directed Plaintiff to file an amended and corrected pleading. The FAC, however, does not correct this defect (and in the course of the pre-motion conference that the Court held on

29

July 8, 2025, Plaintiff's counsel declined the opportunity to seek a second amendment). On this basis alone, any other claim that the FAC asserts should be dismissed for failure to state a claim. *See* Order; <u>Chevron v. Naranjo</u>, 667 F.3d 232, 244-45 (2d Cir. 2012) (reversing grant of preliminary injunction, holding that "[l]ike a preliminary injunction, a declaratory judgment [] does not create an independent cause of action"); <u>KM Enterprises v. McDonald</u>, No. 11–cv–5098 (ADS)(ETB), 2012 WL 4472010, **19-20 (E.D.N.Y. 2012) (Spatt, J.) (dismissing "causes of action" for declaratory judgment and injunction for failure to state a claim).

Construing the FAC liberally, it nevertheless fails to state a claim for any *defamation* or any other claim. First, defamation is a *state law* cause of action and, as set forth in Point I.A. above, any state law claim brought in the federal courts against state officials in their official capacities is barred by the State's Eleventh Amendment immunity. In addition, the web posting is *past conduct* of the DOH and, as explained in Point I.B. above, any claim based upon past conduct is likewise barred by the State's Eleventh Amendment immunity. Second, defamation requires a false statement of fact. *See* <u>Town of Massena v. Healthcare Underwriters</u>, 98 N.Y.2d 435, 444 (2002) ("Defamation is defined as a false statement that exposes a person to public contempt, ridicule, aversion or disgrace"). The FAC does not sufficiently allege that any statement about Plaintiff is false. The FAC (at ¶ 70) recites the following language that was posted about the Plaintiff:

> Isadora Guggenheim, NP, RN (Second Nature Naturopathic Care, LLC) – Currently suspended from using the New York State Immunization Information System as of 06/29/2022. Paper-only records of vaccinations administered after this date from this provider must not be accepted.

This posting contains *one* factual assertion – and the FAC concedes the truthfulness of that one factual assertion by affirmatively pleading that Plaintiff's access *was suspended* in about June 2022 (FAC ¶¶ 52, 54, 60, 62). The second sentence is not a factual assertion at all, but rather

DOH's directive to school districts and school administrators concerning the form of proof of immunization that DOH will accept from this provider, consistent with its authority under the PHL.

To the extent that the FAC seeks to state a *federal* cause of action based upon defamation or reputational harm, it likewise fails. In addition to the above points, "the Court has never held that the mere defamation of an individual [] was sufficient to invoke the guarantees of procedural due process[.]" Paul v. Davis, 424 U.S. 693, 706-12 (1976) (holding that the protections of due process are invoked only when a person's interest in liberty or property is infringed, and defamation does not fall within those categories). As explained in Point IV.B.(1)-(2), the FAC fails to plead the infringement of any property or liberty interest. *See* Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (dismissing claims); Neu v. Corcoran, 869 F.2d 662 (2d Cir. 1989) (reviewing very limited scope of approved due process claims involving reputational injury). Nor does it plead the deprivation of any such interest without due process (Point IV.B.(3)-(4) above).

The FAC also fails to state a claim for any theory of *substantive* due process, including any claim for "harassment." In addition to all of the deficiencies outlined above, "[i]t is now well established that, '[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.'" Hu v. City of New York, 927 F.3d 81, 103-04 (2d Cir. 2019) (dismissing claim). Here, that explicit textual source is the due process clause itself, which provides the assurance of *procedural* due process where a liberty or property interest is infringed. That is the principal theory that Plaintiff has pleaded in the FAC and the FAC should rise or fall on that theory.

Nor does the FAC plausibly plead that any conduct by Defendants is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Guettlein, 577 F.

31

Supp. 3d at 103, 105 (denying preliminary injunction); *see also* <u>Horton</u>, 765 Fed. Appx. at 533 (affirming dismissal). To the contrary, Defendants' actions here are plainly rationally related to the State's compelling interest to protect the public health. *See* <u>Goe v. Zucker</u>, 43 F.4th 19, 32 (2022) (holding that "protecting communities from serious, vaccine preventable diseases through immunization" is a legitimate state objective); *see also* <u>Guettlein</u>, 577 F. Supp. 3d at 105-06.

To the extent that any claim for "harassment" remains available in the Second Circuit,[13] a plaintiff must plead facts that plausibly show "that government officials engaged in systematic and intentional harassment in an attempt to drive the plaintiff out of business." <u>Hu</u>, 927 F.3d at 103. The FAC does not clear that threshold. It does not plead facts that plausibly show that any Defendant engaged in any "systematic" harassment, much less that any harassment was "intentional." It does not even suggest that any Defendant engaged in any conduct "in an attempt to drive the plaintiff out of business," nor that Defendants have threatened the Plaintiff with any such conduct in the *future*. Rather, Defendants' conduct was authorized by the PHL and was reasonably related to Defendants' public policy to protect the public health of children and adult residents of New York. Thus, the FAC fails to state any claim for harassment.

**<u>CONCLUSION</u>**

Considering Defendants' Eleventh Amendment immunity, which precludes the Court from granting any relief based upon Defendants' alleged violation of New York law or alleged past violations of the law, the FAC's failure to plead any sufficient factual basis showing Plaintiff's Article III standing for any prospective declaratory or injunctive relief, the FAC's continued violation of FRCP 8, and the FAC's failure to state a claim on which relief can be granted, Defendants respectfully submit that the FAC should be dismissed in its entirety.

---

[13] "While we have not revisited this 'pattern of harassment' theory of Due Process since deciding <u>Chalfy</u>, district courts in this Circuit have continued to treat it as a viable cause of action." <u>Hu</u>, 927 F.3d at 103.

Dated:  New York, New York
        September 2, 2025


                                      LETITIA JAMES
                                      Attorney General
                                      State of New York
                                      <u>Attorney for Defendants</u>


By:   _____

                                      James Mirro, Esq.
                                      Assistant Attorney General
                                      Litigation Bureau
                                      New York State Office of the Attorney General
                                      28 Liberty Street – 17th Floor
                                      New York, New York 10005
                                      <u>james.mirro@ag.ny.gov</u>

## **WORD COUNT CERTIFICATION**

Pursuant to the Joint Local Rules of the Southern and Eastern Districts of New York (the "Local Rules"), I certify that this document complies with the length limitations of Rule 7.1(c) of the Local Rules. On August 27, 2025, the Court entered an order permitting this brief to be up to 35 pages in length.

_____

James Mirro

EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

FAIZ KHAN M.D.,

                    Plaintiff,              **REPORT & RECOMMENDATION**

     v.                             **24-cv-4745 (JMA) (ST)**

JAMES MCDONALD, MD, in his official
capacity as Commissioner of NYS Department
of Health; JOSEPH A. GIOVANNETTI, in his
official capacity as Director of Bureau of
Investigations, NYS Department of Health;
LAWRENCE BURWELL, in his
official capacity investigator, New York
State Department of Health; BRIAN CRUZ,
in his official his capacity as investigator,
New York State Department of Health;
"JOHN DOE" and/or "MARY ROE,"
the last two names being fictitious whose
identity is unknown to the Plaintiff, the
individual(s) intended being the director
or head officer of the NYS Department
of Health Immunizations Bureau,

                    Defendants.
----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Dr. Faiz Khan ("Plaintiff"), seeking declaratory and injunctive relief, sued various New

York State Department of Health ("DOH") officials for alleged violations of Plaintiff's

constitutional rights. *See generally* Am. Compl., ECF No. 16. Plaintiff's claims arise from the

DOH's investigation into Plaintiff's vaccination practices. *See generally id.*

Before this Court is Plaintiff's Motion for a Preliminary Injunction and Plaintiff's Motion

to Quash a subpoena. *See* Mot. Prelim. Inj., ECF No. 40; Mot. Quash, ECF No. 41. Also before

this Court is a Motion to Dismiss by Dr. James McDonald, Joseph Giovannetti, Lawrence Burwell,

and Brian Cruz (collectively, "Defendants").[1]  *See* Mot. Dismiss, ECF No. 53.  Finally, before this Court is Plaintiff's request to submit a supplemental "certification" and memorandum of law, as well as his request for a pre-motion conference to discuss the filing of a possible second amended complaint.  *See* Pl.'s Letter, ECF No. 55.

For the reasons discussed below, this Court respectfully recommends that the District Court GRANT the Motion to Dismiss and DENY as moot the Motion for a Preliminary Injunction and Motion to Quash.  This Court further recommends DENYING Plaintiff's request to make supplemental submissions, as well as his request for a pre-motion conference.

## BACKGROUND

## I.  THE AMENDED COMPLAINT'S FACTUAL ALLEGATIONS

This Court will not recite every allegation in the Amended Complaint, as many of the allegations are mere legal conclusions[2] or otherwise irrelevant to the central dispute.  To summarize, Plaintiff is a New York-licensed physician who has held several roles at various institutions throughout his medical career.  Am. Compl. ¶¶ 1, 57–60; *see id.* Ex. C, ECF No 16-3.  Most pertinent here is that Plaintiff maintains a practice called Advanced Medicine of Long Island, located at 180 Michael Drive, Syosset, New York 11791 ("Advanced Medicine").  *Id.* ¶ 1.  Plaintiff opened Advanced Medicine in 2019 "with the goal of offering a blend of complementary and conventional medicine treatments to his patients."  *Id.* ¶ 62.  The practice does not accept insurance.  *Id.* ¶ 70.

---

[1] As far as this Court can tell, Plaintiff has not determined the identity of defendant John Doe / Mary Roe, and no one has appeared on that defendant's behalf.  However, as Plaintiff lacks standing to sue (as this Court finds herein), this case should be dismissed as to *all* defendants, and not just the moving defendants.

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.").

As Plaintiff's practice "does not focus on vaccinations" or "function as a conventional vaccination site," Plaintiff "does not routinely vaccinate his patients." *Id.* ¶¶ 70, 88. Even so, Plaintiff has, indeed, administered vaccines at Advanced Medicine, and maintains a vaccine storage area there. *See id.* ¶¶ 109, 112, 123, 124, 144. However, because Advanced Medicine "is not a routine vaccination practice," and patients have "to cover the cost of vaccine procurement," Advanced Medicine "does not have surplus back-up [vaccine] stock like primary care practices." *Id.* ¶ 109.

Prior to the events in question, Plaintiff allegedly had access to the New York State Immunization Information System ("NYSIIS"). *See generally id.* "NYSIIS is a centralized database system that keeps track of all immunization in New York." *Id.* ¶ 135. According to Plaintiff, "healthcare providers who administer immunizations in New York have to register and enter all of the information provided both by statute and . . . regulation." *Id.* ¶ 136. Plaintiff explains that, in particular, vaccine providers must enter information regarding vaccinations of anyone under 19 years of age. *See id.* ¶ 137.

On or about April 23 or 24, 2024, Defendant Cruz, a DOH investigator, allegedly called Plaintiff, but "refused to disclose the purpose of his call and asked for an in person meeting with [Plaintiff] to discuss the reason for his call." *Id.* ¶¶ 77, 78. Plaintiff said that he would be at work on April 29, and asked Defendant Cruz to call him back to schedule a time to meet, as Plaintiff was "plan[ning] on having his attorney present during the scheduled appointment." *Id.* ¶ 79. However, Defendant Cruz never called back, and on April 29, 2024, Defendant Cruz and Defendant Burwell, also a DOH investigator, went to Advanced Medicine, without a warrant, and asked to speak with Plaintiff. *Id.* ¶¶ 80, 81. Plaintiff "did his best to accommodate them" but was "feeling coerced." *Id.* ¶ 81.

3

Plaintiff claims that Defendant Cruz and Defendant Burwell "started their interrogation . . . by generally asking [Plaintiff] about the nature of his medical practice and the types of medical cases and patients that [he] sees." *Id.* ¶ 87. Defendant Cruz and Defendant Burwell then "abruptly steered the interrogation into Plaintiff's vaccination practices" and eventually "turned the focus of their questioning by inquiring as to why patients would come to [Plaintiff] for consultation regarding vaccines and administration of such, if they could vaccinate with their primary care physician or at mass vaccination sites in the case of COVID 19 vaccines." *Id.* ¶¶ 88, 91. Defendant Cruz and Defendant Burwell also asked about "the costs associated with [Plaintiff's] consultation and vaccination or lack thereof." *Id.* ¶ 114. Throughout the questioning, Plaintiff allegedly felt that he had been "profiled and targeted for interrogation due to the atypical and completely private nature of [his] practice" and its "complementary and integrative nature." *Id.* ¶ 113.

Defendant Cruz and Defendant Burwell also allegedly asked Plaintiff if he knew Dr. Jim Campasano. *Id.* ¶ 115. Plaintiff replied that he did, as they were colleagues and friends. *Id.* ¶ 116. According to Plaintiff, Dr. Campasano "allegedly got hold of Covid cards and was accused of giving them to relatives/friends." *Id.* ¶ 117.

Plaintiff further alleges that Defendant Cruz and Defendant Burwell asked Plaintiff if he knew an individual named Jeanette Breen. *Id.* ¶ 118. Plaintiff claimed that he did not know her, but learned from the investigators that she was a midwife on Long Island found in violation of vaccine policy "by giving homeopathic drops to pediatric patients and entering such as valid childhood vaccinations into NYSI[I]S." *Id.* ¶ 119. Defendant Cruz and Defendant Burwell allegedly asked whether any of Breen's patients "came through [Plaintiff's] office," to which Plaintiff responded, "I don't know – have they?" *Id.* ¶¶ 121, 122. The investigators allegedly "remained silent." *Id.* ¶ 122.

Defendant Cruz and Defendant Burwell then allegedly "asked to walk through [Plaintiff's] office and demanded that [he] show to them" where he kept vaccines. *Id.* ¶ 123. Plaintiff claims that he was "[f]eeling coerced" and thus "complied." *Id.* According to Plaintiff, the vaccines were all kept in storage, with the expired vials separated from the "current ones," which Defendant Cruz said was "a good thing." *Id.* Defendant Cruz and Defendant Burwell then took photos of the vaccine storage area and left. *Id.* ¶ 124.

Thereafter, in mid-May 2024, Plaintiff allegedly received a call from a mother whose child was vaccinated before April 29, 2024. *Id.* ¶ 145. According to Plaintiff, he had previously entered the patient's vaccination information into NYSIIS. *Id.* ¶ 146. The mother informed Plaintiff, however, that her general practitioner was trying to enter the same information into their system, but that the system was "rejecting" the information that Plaintiff previously entered. *Id.*

At the beginning of June 2024, Plaintiff allegedly vaccinated two children for meningitis. *Id.* ¶ 150. However, when Plaintiff tried to enter the vaccination information into NYSIIS, he was unable to access the database. *Id.* On or about June 3, 2024, Plaintiff contacted the NYSIIS help-desk, and the representative told Plaintiff that they would forward his inquiry to the DOH. *Id.* ¶ 152. About a day later, Plaintiff left a message with the DOH Bureau of Immunizations but received no response. *Id.* Plaintiff became concerned, as some of the patients he had previously vaccinated "were returning for their follow-up consultations and injections – and Plaintiff had already ordered the vaccines for their pending visits." *Id.* ¶ 153. Plaintiff also allegedly had to "cancel a consultation for TDaP vaccination" and asked the patients to reschedule. *Id.* ¶ 154.

On June 7, seeking an explanation for the shutdown of his NYSIIS access, Plaintiff emailed Defendant Burwell. *Id.* ¶ 155; *see id.* Ex. B, ECF No. 16-2. On June 11, Plaintiff called Defendant

Burwell to inquire further. *Id.* ¶ 157. Defendant Burwell responded that he would investigate the situation and get back to Plaintiff. *Id.* ¶ 158.

On June 12, 2024, Defendant Burwell and Defendant Cruz returned to Advanced Medicine. *Id.* ¶ 160. Plaintiff did his best to accommodate Defendant Burwell and Defendant Cruz, but claims that they "were clearly harassing and interfering Plaintiff's ability to see his patients." *Id.* ¶ 161. During the visit, Defendant Burwell allegedly "pressed a button on his phone screen," leading Plaintiff to suspect that Defendant Burwell was recording the meeting. *Id.* ¶ 165. Defendant Burwell and Defendant Cruz allegedly "proceeded to cite certain lapses/errors in Dr. Khan's NYSIIS documentation . . . and . . . asked [Plaintiff] to respond to the accusations." *Id.* ¶ 163. Plaintiff was unable to answer their questions, as Defendant Cruz and Defendant Burwell gave Plaintiff insufficient information to answer them. *Id.* According to Plaintiff, however, Defendant Burwell and Defendant Cruz were "bragging" that they had shut down Plaintiff's NYSIIS access. *Id.* ¶ 164.

Defendant Burwell also allegedly asked Plaintiff if he knew that he had entered information regarding vaccines with expired lot numbers into NYSIIS. *Id.* ¶ 167. Without additional context, however, Plaintiff could not recall doing so. *Id.* ¶ 168. Defendant Burwell then allegedly "began outright accusing [Plaintiff] of some unspecified, unidentified and unknown vaccines which had expired lot numbers and were entered by [Plaintiff] into the NYSIIS database." *Id.* ¶ 169. Defendant Burwell also allegedly "accused [Plaintiff] of accepting consultations from patients" in California, Arizona and Pennsylvania. *Id.* ¶ 172. Defendant Burwell "further accused" Plaintiff "of having logged in an entry for a vaccination date which was 1.5 [years] prior to the entry." *Id.* ¶ 176.

6

Thereafter, Plaintiff informed Defendant Burwell and Defendant Cruz of a vaccine order due to arrive at his practice. *Id.* ¶ 177. Defendant Cruz allegedly denied any implication that Plaintiff would be unable to vaccinate patients, despite his NYSIIS lockout. *See id.*

As they were leaving, Defendant Cruz and Defendant Burwell allegedly "revealed that the NYSIIS lockout was because of what they disclosed to [Plaintiff] in the above nonspecific and non-descript terms that their findings were." *Id.* ¶ 188. Defendant Cruz and Defendant Burwell then served Plaintiff with a subpoena, dated June 11, 2024 (the "Subpoena"), which was signed by Defendant Giovannetti, the DOH's investigation bureau director. *Id.* ¶¶ 188, 189.

Plaintiff claims that Defendant Giovannetti engaged in a "pattern of harassment" against Plaintiff. *Id.* ¶ 192. In support of this allegation, the Amended Complaint cites the following email from Defendant Giovannetti, sent on July 10, 2024, in response to an email from Plaintiff's counsel:

> Counsel,
>
> You misspelled my email address below. Presumably the error is why you were unsuccessful in reaching me prior. Please see the subpoena that was served on your client, and which you attached to your filing, for the correct spelling.
>
> Please instruct your client to preserve all material in his possession relevant to our subpoena and his vaccination practice. **Concealment, alteration, or destruction of this material may subject him to prosecution.**
>
> I've cc-ed Danielle Rysedorph, Deputy Director, Bureau of Litigation. Please direct all future communication regarding this matter to Ms. Rysedorph or her designee. If you need further assistance connecting with her, I'll be happy to assist.
>
> Thank you,
> Joe Giovannetti

*Id.* ¶¶ 193, 194; Ex. D., ECF No. 16-4 (emphasis in original).

Plaintiff alleges that as of July 15, 2024, he has not regained NYSIIS access. *Id.* ¶ 159.

## II.     THE SUBPOENA

The Subpoena, which Plaintiff seeks to quash, is captioned *In the Matter of Faiz Khan,*

*M.D.* (Inv. No. DOH-0905(c)), and dated June 11, 2024.  *See id.* Ex. A, ECF No. 16-1.  The

Subpoena, issued under New York Public Health Law § 206(4)(a) and § 12, calls for the production

of six categories of documents to the New York State Health Commissioner (on or before June 28,

2024).  *See id.*  Those categories are:

1. Any and all order forms, purchase orders, confirmations, invoices, bills, receipts, shipping notices, packing slips, and other records related to the ordering, purchasing, shipping, receipt, and return of any and all of [23 enumerated vaccines] from January 1, 2019, to present;

2. Any and all records regarding immunization by Dr. Faiz Khan and/or Advanced Medicine of Long Island of the twenty-two (22) individuals whose names and dates of birth are listed in Addendum 1,[3] attached hereto, including but not limited to medical/clinical records (also known as "charts"); appointment/scheduling records; billing records; and communication, correspondence, and/or notes and any other records of communication, from, to, with, or on behalf of the individuals and/or the individuals' guardian(s)/healthcare proxy.

3. Any and all records related to and documenting the practice of charging patients for the procurement cost of a vaccine and the subsequent division of that cost among future patients who receive vaccines from the same vaccine supply including, but not limited to, spreadsheets, records of cost divisions and calculations of cost, reimbursements, and any and all communications regarding cost variations and reimbursements.

4. Any and all pamphlets, handouts, guidance documents, informational sheets, and instructions distributed to any and all patients regarding homeopathic alternatives to conventional vaccines.

5. Records sufficient to identify the name, date of birth, and last-known contact information (address and telephone number) of any and all individuals employed by Faiz Khan, M.D., and/or Advanced Medical Long Island at any time, and for any duration of time, from January 1, 2019, to present.

6. Completed (i.e., signed and dated) New York State Department of Health New York State Immunization Information System ("NYSIIS") User Agreement form.

---

[3] In attaching the Subpoena to the Amended Complaint, Plaintiff omitted the addendum for confidentiality purposes.

*Id.*

## III.    PROCEDURAL HISTORY

Plaintiff commenced this action on July 8, 2024, and filed the Amended Complaint on July 15, 2024.  *See* Compl., ECF No. 1; Am. Compl.  On October 21, 2024, Plaintiff filed the fully briefed Motion for a Preliminary Injunction and Motion to Quash the Subpoena.  *See* Mot. Prelim. Inj.; Mot. Quash.  On March 14, 2025, Defendants filed the fully briefed Motion to Dismiss.  *See* Mot. Dismiss.  On April 2, 2025, the Honorable Joan M. Azrack referred all three motions to this Court for report and recommendation.  *See* Order Referring Mot., dated April 2, 2025.

On April 24, 2025, Plaintiff filed a letter requesting to submit supplemental information to the Court, and to discuss the filing of a possible second amended complaint.  *See* Pl.'s Letter.  In a letter dated May 1, 2025, Defendants opposed Plaintiff's request.  *See* Defs.' Letter, ECF No. 56. On May 5, 2025, Judge Azrack referred those letters for this Court to consider in conjunction with the pending motions.  *See* Order Referring Letters, dated May 5, 2025.

## <u>LEGAL STANDARD</u>

This Court will first consider Defendants' Motion to Dismiss because, if the Motion to Dismiss is granted, Plaintiff's Motion for a Preliminary Injunction and Motion to Quash will be moot.  Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim under Federal Rules 12(b)(1) and 12(b)(6) of Civil Procedure, respectively.

## I.    LACK OF SUBJECT MATTER JURISDICTION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A motion to dismiss based on lack of Article III

standing is properly raised under Rule 12(b)(1) for lack of subject matter jurisdiction. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017).

A Rule 12(b)(1) motion may be either facial or fact-based.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  When the motion is facial, *i.e.*, based on the allegations of the complaint and any exhibits attached thereto, the plaintiff has no evidentiary burden.  *Id.*  The court's task is to determine whether the pleading "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue."  *Id.* (citation omitted).  The court thus accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* at 57.  When a defendant makes a fact-based motion, and proffers evidence beyond the pleading "reveal[ing] the existence of factual problems" in the assertion of jurisdiction, a plaintiff must present evidence controverting the alleged jurisdictional defects.  *Id.* (citation omitted).  Thus, when a defendant makes a fact-based challenge to jurisdiction, the plaintiff "has the burden of proving by a preponderance of the evidence that [jurisdiction] exists."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113).

## II.    FAILURE TO STATE A CLAIM

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  In doing so, the court "must construe [the complaint] liberally, accepting all factual

allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).  However, allegations that "are no more than conclusions[] are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Plaintiff seeks declaratory and injunctive relief for Defendants' alleged violations of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights.  *See generally* Am. Compl. Generally, Plaintiff complains that Defendants violated his rights by engaging in a "systematic pattern of harassment" against him, visiting Advanced Medicine twice without a warrant, questioning Plaintiff in an accusatory manner, serving him with the Subpoena, and shutting down his NYSIIS access.  However, for the reasons discussed below, Plaintiff's claims for relief fail.

## I.      THE AMENDED COMPLAINT VIOLATES FEDERAL RULE 8 OF CIVIL PROCEDURE.

As a preliminary matter, the 86-page, 390+ paragraph-long[4] Amended Complaint (plus exhibits) fails to comply with Federal Rule 8 of Civil Procedure.  Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The rule's purpose "is 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *SEC v. Hwang*, 692 F.Supp.3d 362, 389 (S.D.N.Y. 2023) (citing *Twombly*, 550 U.S. at 555).  "The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  *Steadman v.*

---

[4] Not including sub-paragraphs, of which there are several.  Additionally, some paragraphs are misnumbered, as there are, for example, two paragraphs numbered "196"; there is also a paragraph numbered "320" following the paragraph that is numbered "393."

*Citigroup Glob. Mkts. Holdings Inc.*, 592 F.Supp.3d 230, 244 (S.D.N.Y. 2022) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

When a complaint does not comply with Rule 8, "the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint." *Salahuddin*, 861 F.2d at 42. "[C]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [Rule 8] . . . and must be dismissed." *Coon v. Benson*, 9-cv-230, 2010 WL 769226, at *3 (S.D.N.Y. Mar. 8, 2010)). Indeed, "prolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit." *Shetiwy v. Midland Credit Mgmt.*, 980 F.Supp.2d 461, 467 (S.D.N.Y. 2013) (citation omitted); *see id.* n.8 (collecting cases). However, courts usually "resort to dismissal under Rule 8 when 'the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Hwang*, 692 F.Supp.3d at 389 (citing *Salahuddin*, 861 F.2d at 42).

Here, the Amended Complaint's "true substance" is not necessarily "disguised," as this Court can discern—although not without difficulty—enough from the Amended Complaint to evaluate it against Defendants' Motion to Dismiss. *See id.* Nevertheless, the Amended Complaint is "redundant, argumentative, and has much irrelevancy and inflammatory material. It is excessively long-winded, and its wordiness is unjustified." *Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 198 F.R.D. 608, 610 (S.D.N.Y. 2001). It is also "rambling and repetitive, jumping back and forth in time and moving from claim to claim in a disjointed fashion." *Rubin v. N.Y.C. Bd. of Educ.*, 20-cv-10208 (LGS) (KHP), 2023 WL 1972729, at *10 (S.D.N.Y. Jan. 6, 2023), *report and recommendation adopted*, 2023 WL 2344731 (S.D.N.Y.

Mar. 3, 2023).  To be sure, this Court has had to wade through pages of legal argument and diatribe

to string together the factual allegations that are relevant to the instant motions.  *See id.* (noting

that the complaint was not "plain" under Rule 8 where it did not "follow a coherent narrative.").[5]

Plaintiff's style of pleading is especially unjustified where, as here, Plaintiff is represented

by counsel.  This Court would be compelled to construe the Amended Complaint with "special

solicitude" were Plaintiff proceeding *pro se*—but not so in this case.  *Hogan v. Fischer*, 738 F.3d

509, 515 (2d Cir. 2013) (quotations omitted).

Additionally, the Amended Complaint's "inflammatory accusations against Defendants"—

which are largely made without supportive factual allegations—are particularly concerning.  *Keitel

v. D'Agostino*, 21-cv-8537 (JMF), 2022 WL 15524665, at *2 (S.D.N.Y. Oct. 27, 2022).   For

example, Plaintiff claims that the "true identity" of Defendant Giovannetti, Defendant Cruz, and

Defendant Burwell is that they are part of a "hunt team" with "unfettered and unchecked powers

and discretion," who "hunt down healthcare practitioners" and have "gathered celebrity status and

notoriety."  Am. Compl. ¶¶ 33, 34, 36, 40.  Plaintiff describes Defendants as "living in their own

abusive investigative world which is predicated upon bullying and intimidation of unsuspecting

medical licensees" such as Plaintiff.  *Id.* ¶ 44.

Similarly, Plaintiff claims that Defendants went on a "witch hunt" against him and are

"intoxicated by their own fame and harboring a delusion that they are above the Fourth

Amendment."  *Id.* ¶¶ 29, 39.  Plaintiff also asserts that Defendants "harbored the delusion of

grandeur that they are vested with unlimited an [*sic*] unfettered powers to harass the Plaintiff

---

[5] Notably, this Court is not the first in this Circuit to observe a Rule 8 issue in pleadings filed by Plaintiff's counsel, Jacques Simon, in similar cases against the same or similar defendants.  *See, e.g.*, Order, ECF No. 28 in *Guggenheim v. McDonald*, 25-cv-3615 (PKC) (S.D.N.Y. June 6, 2025) ("Fortunately, in response to a pre-motion letter filed by defendants, plaintiff has expressed an intent to amend her complaint . . . PLAINTIFF AND HER COUNSEL ARE ADVISED THAT A FAILURE TO ADHERE TO THE 'SHORT AND PLAIN' REQUIREMENTS OF RULE 8(a)(2) IN AN AMENDED COMPLAINT WILL RESULT IN A DISMISSAL WITH PREJUDICE." (caps in original)).

through impromptu interrogations, erroneous insinuations and scare tactics." *Id.* ¶ 40. Perhaps most dramatically, Plaintiff claims that Defendants "systematically harass anyone who comes into their crosshairs in hopes of obtaining confessions of violations of the law based upon the investigators' knowingly false recitations of the law and false accusations levied against [Plaintiff] about the violation . . . of the same." *Id.* ¶ 43. Plaintiff also speculates that, during their investigation into him, Defendants "must" have thought to themselves, "what is another constitutional violation between friends, no one is going to challenge us." *Id.* ¶ 295.

While these fiery accusations make for an interesting story, they fail to further Plaintiff's claims for relief. *See Keitel*, 2022 WL 15524665, at *2 ("Even assuming such allegations [are] true—a far-fetched assumption—many, if not all, of them are irrelevant to Plaintiffs' claims" (citation and quotation marks omitted)); *Rubin*, 2023 WL 1972729, at *10 (holding that a complaint violated Rule 8 where it contained "numerous hyperbolic accusations that have no apparent bearing on Plaintiff's actual claims.").

Ultimately, for this and the reasons explained in the sections that follow, this Court recommends dismissal of the Amended Complaint. However, in the event that the District Court determines that Plaintiff's claims should survive, this Court would respectfully recommend that the District Court order the filing of a second amended complaint that complies with Rule 8 so as to enable Defendants to answer a pleading which properly puts them on notice of the claims against them. *See Nygård v. Bacon*, 19-cv-1559 (LGS), 2021 WL 3721347, at *7 (S.D.N.Y. Aug. 20, 2021) (allowing the plaintiff to seek leave to replead where the complaint's allegations were "too lengthy, conclusory and confusing to put Defendant on notice of the claims against him."). Alternatively, this Court would respectfully recommend striking the "redundant, immaterial, impertinent, or

scandalous matter" within the Amended Complaint before requiring Defendants to answer it.  Fed. R. Civ. P. 12(f).

## II.  PLAINTIFF LACKS STANDING TO PURSUE PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF.

Turning to the issues raised in the Motion to Dismiss, Defendants argue that Plaintiff lacks Article III standing to seek prospective declaratory and injunctive relief.  "Standing is 'the threshold question in every federal case.'"  *Cohan v. Movtady*, 751 F.Supp.2d 436, 439 (E.D.N.Y. 2010) (citing *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008)).  If Plaintiff lacks standing, this Court has no subject matter jurisdiction to hear this case and must dismiss it without prejudice.  *See John*, 858 F.3d at 735; *Carter*, 822 F.3d at 54 ("where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice.").

### A.  Standard for Standing

"[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury" to have standing.  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *see Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("[t]o obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia,* 'a sufficient likelihood that he or she will again be wronged in a similar way'" (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))).  "That is, a plaintiff must demonstrate a 'certainly impending' future injury."  *Marcavage*, 689 F.3d at 103 (citations omitted).  "In establishing a certainly impending future injury, a plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought."  *Id.*; *An v. City of New York*, 230 F.Supp.3d 224, 232 (S.D.N.Y. 2017) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy standing's injury requirement but must show a likelihood that he or

15

she will be injured in the future.") (citing *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *see Guan v. Mayorkas*, 530 F.Supp.3d 237, 256 (E.D.N.Y. 2021) (holding that the plaintiffs were not entitled to a declaratory judgment that the defendants' past conduct was unlawful). To establish an injury sufficient to confer standing, a plaintiff may not simply "recast[] a past harm as a continuing one." *Dorce v. City of New York*, 2 F.4th 82, 96 (2d Cir. 2021).

Moreover, "conjecture or subjective fear that a plaintiff is in danger of sustaining an injury is not sufficient to confer standing; the threat must be 'sufficiently real and immediate to show an existing controversy.'" *Jacobs v. Ali*, 18-cv-2909 (RRM), 2021 WL 12147769, *6 (E.D.N.Y. June 22, 2021) (citing *Lyons*, 461 U.S. at 103); *see Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) ("abstract injury is not enough"). "Even a reasonable susceptibility" to such similar injury "does not translate into the requisite 'real and immediate threat of future injury.'" *Heggs v. City of New York*, 17-cv-3234 (DG) (TAM), 2023 WL 9786044, at *13 (E.D.N.Y. Aug. 24, 2023) (citing *MacNamara v. City of New York*, 275 F.R.D. 125, 141 (S.D.N.Y 2011)), *report and recommendation adopted*, 2024 WL 759439 (E.D.N.Y. Feb. 23, 2024).

### B. The Parties' Positions

At bottom, Plaintiff seeks injunctive relief to enjoin Defendants from prospectively engaging in the conduct described above—*i.e.* their investigation into Plaintiff—and to reinstate Plaintiff's NYSIIS access. *See generally* Am. Compl. Additionally, Plaintiff seeks a declaratory judgment declaring Defendants' conduct, the Subpoena, and the statute under which the Subpoena was issued, unlawful.[6] *See generally id.*

In moving to dismiss, Defendants argue that Plaintiff lacks standing to pursue his prospective relief claims, as they arise solely from *past* conduct that took place between April 2024

---

[6] As this Court discusses *infra* Discussion § III., Plaintiff also seeks to quash the Subpoena.

and June 2024.  Indeed, Defendant Cruz and Defendant Burwell went to Advanced Medicine on

April 29, 2024, and June 12, 2024; Plaintiff allegedly lost NYSIIS access in early June 2024; and

Defendant Cruz and Defendant Burwell served the subpoena on Plaintiff on June 12, 2024.  Am.

Compl. ¶¶ 80, 151, 160, 188.  Indisputably, all of these events occurred before the Amended

Complaint's filing.

    In response, Plaintiff argues that Defendants' violations of his constitutional rights are

ongoing.  Specifically, Plaintiff argues that paragraphs 125–159, 290–321, and 324–361 of the

Amended Complaint sufficiently allege that the Fifth and Fourteenth Amendment violations are

prospective, and that paragraphs 189–289 of the Amended Complaint sufficiently allege that the

Fourth Amendment violations are prospective.  *See* Pl.'s Mem. Opp'n at 4, ECF No. 53-2.

    At the outset, this Court notes that to the extent that any of Plaintiff's cited allegations

conclusorily assert that Defendants' actions "continue" to harm Plaintiff, such allegations cannot

support standing, as they "fall[] short of establishing a 'likelihood' of future injury."  *Conn.

Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 448 (2d Cir. 2021).  Plaintiff's allegations must

offer an actual reason to believe that he faces a sufficient likelihood of future harm.  *See id.*

### C.    Plaintiff Lacks Standing to Seek Prospective Relief.

    Ultimately, Plaintiff lacks standing to pursue his requested prospective relief, as he has

failed to establish that any of the events described in the Amended Complaint will result in

"certainly impending future injury."  *Marcavage*, 689 F.3d at 103.  The events in question occurred

in the past, and Plaintiff has made no allegations suggesting they will certainly result in future

harm so as to confer standing to seek prospective relief.

    Moreover, to the extent that Plaintiff claims he suffers injury due to the purported illegality

of Defendants' conduct, such claims fail.  A plaintiff "does not have standing to challenge a

17

government regulation"[7] or action "simply because the plaintiff believes that the government is acting illegally." *All. for Hippocratic Med.*, 602 U.S. at 381; *see id.* ("A citizen may not sue based only on an 'asserted right to have the Government act in accordance with law.'" (citation omitted)). Rather, a plaintiff seeking declaratory and injunctive relief from an allegedly illegal government action must establish nevertheless that such an action will injure the plaintiff in the future. *See Dorce*, 2 F.4th at 95–96 (holding that the plaintiffs did not have standing to obtain declaratory and injunctive relief from a purportedly unconstitutional government program where the plaintiffs failed to allege that the program would injure them in the future). Plaintiff fails to do so here.

Specifically, with respect to Defendants' general investigation and visits to Advanced Medicine, the only allegations in the Amended Complaint supporting Plaintiff's requested relief are *past* incidents. Plaintiff alleges that Defendant Burwell and Defendant Cruz went to Advanced Medicine in April and June of 2024, wherein they allegedly questioned Plaintiff, recorded a conversation with him, took photos of the vaccine storage area, and served him with the Subpoena, among other things. *See generally* Am. Compl.[8] However, these alleged "'past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy' with respect to potential future similar wrongs." *Dorce*, 2 F.4th at 96 (citing *Lyons*, 461 U.S. at 103).

Meanwhile, the Amended Complaint is otherwise devoid of any facts suggesting that Defendants are going to return to Advanced Medicine, or that they would return under similar circumstances to the previous visits. As such, any proposition that Defendants will return is hypothetical and conjectural. Without allegations suggesting otherwise, Plaintiff cannot show that

---

[7] Such as Public Health Law §§ 206(4)(a) and 12-a(1), the statute under which the Subpoena was issued.

[8] Even Plaintiff acknowledges, in the Amended Complaint, that Defendants' past visits to Advanced Medicine "are not redressable by injunctive relief." Am. Compl. ¶ 337. Plaintiff also admits that the "past constitutional violations are alleged to give context to the lawsuit and not for the purposes of obtaining any relief." Pl.'s Mem. Opp'n at 7.

he faces certainly impending future injury. Therefore, Plaintiff does not have standing to pursue claims for prospective relief related to Defendants' future investigation and visits to Advanced Medicine. *See Jacobs*, 2021 WL 12147769, at *6 (holding that the plaintiff's "unsupported speculation" that he might be subjected to something unlawful in the future was insufficient to confer standing).

Perhaps Plaintiff's strongest argument that he is suffering an "ongoing" injury is with respect to his NYSIIS access, which had not been restored as of the Amended Complaint's filing. *See* Am. Compl. ¶ 159. The problem for Plaintiff, however, is that he has failed to plausibly establish that losing NYSIIS access will, indeed, cause him a future injury, in light of the Amended Complaint's many allegations downplaying Plaintiff's vaccination practice.

For example, according to the Amended Complaint, Plaintiff "does not routinely vaccinate his patients." *Id.* ¶ 88. In fact, his practice is "not a routine vaccination practice," "does not focus on vaccinations," and "does not have [a] surplus back-up stock" of vaccines. *Id.* ¶¶ 70, 109. Plaintiff even states that his patients "could be categorized as *vaccine hesitant*." *Id.* ¶ 92 (emphasis in original).[9]

Rather than focus on vaccinations, Plaintiff's practice goals—as he explained to Defendant Cruz and Defendant Burwell—"involve using complementary and allopathic medicine modalities to treat chronic disease conditions – neurodegenerative, immune dysregulations, endocrine/fatigue problems, cancer support, orthopedic complaints, chronic pain, autism and others." *Id.* ¶ 88.

---

[9] Plaintiff also devotes multiple pages of his Amended Complaint to discussing problems associated with Covid-19 vaccines, suggesting that Covid-19 vaccinations are not a significant component of Plaintiff's practice (if at all a component). *See id.* ¶¶ 95–108. Indeed, Plaintiff believes that the "disproportionality of vaccine injuries and death related to COVID 19 vaccines when compared with the vaccine injuries for all vaccines" is "nothing short than frightening." *Id.* ¶ 100.

While Plaintiff admits to having previously vaccinated patients, *see e.g.*, *id.* ¶ 150, it is implausible that losing NYSIIS access will cause Plaintiff future harm when his own allegations go to great lengths to minimize the role and frequency of vaccinations at his practice. How could Plaintiff be facing "certainly impending future injury" in losing NYSIIS access when he does not "routinely" vaccinate patients? *Id.* ¶ 88. Even construing these allegations in his favor, Plaintiff simply cannot have it both ways. After all, a "merely hypothetical and conjectural" injury does not "rise to the level of being plausible." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148 (2d. Cir. 2011). Accordingly, Plaintiff's allegations regarding his own vaccination practice are not plausibly pleaded so as to confer standing. *See id.*; *Larsen v. Berlin Bd. of Educ.*, 588 F.Supp.3d 247, 256 (D. Conn. 2022) ("a court need not credit . . . contradictory allegations"); *see also Hibbert v. Cap. One Auto Fin.*, 23-cv-7538 (OEM), 2024 WL 3498536, at *3 (E.D.N.Y. July 22, 2024) ("the Court need not credit allegations where . . . the 'threadbare assertions are conclusory and do not raise a reasonable inference of injury.'" (citing *Calcano v. Swarovski N.A. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022))).

Additionally, for largely all the reasons already discussed, Plaintiff has failed to establish that he faces "certainly impending future injury" from Plaintiff's alleged "systematic pattern of harassment and threats" so as to have standing to seek prospective relief. Am. Compl. ¶ 348; *see id.* ¶ 363. In alleging that Defendants are engaged in a systematic pattern of harassment, Plaintiff relies heavily on his allegation that Defendant Giovannetti sent "an unwarranted threat" in an email to Plaintiff's counsel on July 10, 2024. *Id.* ¶ 192.

However, the email itself, which Plaintiff attached to his Amended Complaint,[10] practically forecloses the possibility of future injury arising from the "systematic pattern of harassment." *See*

---

[10] "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit . . . ." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

*id.* Ex. D. Defendant Giovannetti's email, which was sent in response to an email from Plaintiff's counsel, advises Plaintiff's counsel to "direct all future communication" to the Deputy Directory of the DOH Litigation Bureau, suggesting that there would only be communication through counsel moving forward. *Id.* To that end, the Amended Complaint itself contains no factual allegations suggesting that Defendants will, in the future, contact Plaintiff directly.

Additionally, the text of the email itself contradicts the Amended Complaint's allegations. *See id.* ¶ 193. According to the Amended Complaint, Defendant Giovannetti, in his email, "actually told Dr. Khan's attorney . . . that the attorney should advise Dr. Khan regarding Giovannetti's accusation of destruction of medical records and threatened further prosecution without any evidence that such intended destruction has taken or will be taking place at any time." *Id.* The Amended Complaint also alleges:

> It is astounding that the defendant Giovannetti actually continued his pattern of harassment after the commencement of this action knowing that his conduct will be scrutinized by this Court. His email is nothing short than proof of the actual nature of the interactions between the investigators and Dr. Khan which violated and continue to violate Dr. Khan's constitutional rights.

*Id.* ¶ 194.

The *text* of the email, however, tells a different story. *See id.* Ex. D. Defendant Giovannetti's email reads:

> Counsel,
>
> You misspelled my email address below. Presumably the error is why you were unsuccessful in reaching me prior. Please see the subpoena that was served on your client, and which you attached to your filing, for the correct spelling.
>
> Please instruct your client to preserve all material in his possession relevant to our subpoena and his vaccination practice. **Concealment, alteration, or destruction of this material may subject him to prosecution.**

> I've cc-ed Danielle Rysedorph, Deputy Director, Bureau of Litigation. Please direct all future communication regarding this matter to Ms. Rysedorph or her designee. If you need further assistance connecting with her, I'll be happy to assist.
>
> Thank you,
> Joe Giovannetti

*Id.* (emphasis in original).

As Plaintiff rightly predicted, this Court is "scrutinizing" Dr. Giovannetti's email (as Plaintiff attached the email to the Amended Complaint). *See id*. However, even drawing all inferences in Plaintiff's favor, this Court can only interpret Defendant Giovannetti's email to essentially be a cautionary litigation hold notice—not a threat or accusation. The email does not suggest that Plaintiff faces a certainly impending future injury and, if anything, actually renders implausible Plaintiff's allegations to the contrary. *See Larsen*, 588 F.Supp.3d at 256 ("a court need not credit . . . contradictory allegations.").

In sum, Plaintiff has failed to establish that he faces a certainly impending future injury, and thus lacks standing to seek prospective injunctive and declaratory relief.

## III. PLAINTIFF'S CAUSE OF ACTION SEEKING TO QUASH THE SUBPOENA IS NOT RIPE.

In a purported cause of action brought under Federal Rule 45 of Civil Procedure and the federal declaratory judgment statute, Plaintiff also seeks an order revoking and quashing the Subpoena. *See* Am. Compl. ¶¶ 196–289. However, Plaintiff's request for such an order is premature and thus not ripe for adjudication.

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 (2d Cir. 2008) (Sotomayor, J.) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003)). "A central purpose of this doctrine is to prevent the

22

courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Id.* at 130–31 (citation omitted).

As relevant here, courts have found that seeking to quash an administrative subpoena is premature, and thus not ripe for judicial review, where the government agency has issued the subpoena, but not yet sought to enforce it. *See Mohammadi v. Tong*, 24-cv-01473-KAD, 2025 WL 1029862, at *2 (D. Conn. Apr. 7, 2025) (collecting cases); *see id.* (holding that request to quash a subpoena was premature where the party was not yet required to comply with subpoena). For example, in *Google, Inc. v. Hood*, the Mississippi State Attorney General issued an administrative subpoena to Google seeking documents and answers to interrogatories. *See* 822 F.3d 212, 218, 219 (5th Cir. 2016). "[W]ithout further responding to the administrative subpoena or seeking relief in state court," Google sued the Mississippi AG in federal court to challenge the subpoena. *Id.* at 219. As the Mississippi AG had not yet brought an action to enforce the subpoena, however, the Fifth Circuit found that Google's challenge to the administrative subpoena was not ripe for judicial review, and that the district court had thus erred in not rejecting Google's pre-enforcement challenge. *See id.* at 224–26.

Similarly, in *Schulz v. I.R.S.*, the plaintiff had commenced an action to quash a series of administrative summonses from the IRS seeking testimony and documents. *See* 395 F.3d 463, 464 (2d Cir. 2005) (per curiam). The Second Circuit held that the plaintiff's challenge to the summonses did not amount to a case and controversy subject to judicial review, as the IRS had not yet initiated a procedure to enforce the summonses against the plaintiff. *See id.* Although the court did not assess whether the plaintiff's challenge to the summonses was "ripe," the court found that prematurity of the plaintiff's challenge meant that the plaintiff was not threatened with an injury, and thus there was no case or controversy entitling plaintiff to seek relief. *See id.* at 464–65.

23

In *Exxon Mobil Corp. v. Schneiderman*, the court held, applying *Hood* and *Schulz*, that the plaintiff's challenge to a subpoena issued by the New York State Attorney General *was* ripe for judicial review where a New York State court had previously ordered the plaintiff to comply with the subpoena by producing documents and giving testimony.  *See* 316 F.Supp.3d 679, 695–96 (S.D.N.Y. 2018).  The court further held that because the plaintiff could not "refuse to respond to the document demands without consequence,"—namely, sanctions for failing to comply with the state court's orders—the plaintiff's claims were ripe.  *Id.* at 696.

Here, the only substantive, non-conclusory factual allegation regarding the Subpoena is that Defendant Cruz and Defendant Burwell served it on Plaintiff on June 12, 2024.  Am. Compl. ¶ 188.  Plaintiff does *not* allege that Defendants have sought to enforce the subpoena, let alone follow up on it.  In fact, in his opposition to the Motion to Dismiss, Plaintiff concedes this point— even citing *Hood* in doing so.  *See* Pl.'s Mem. Opp'n at 22.  Plaintiff's opposition reads, in relevant part:

> Moreover, where the defendants merely served a subpoena and have not yet moved in state court to enforce it, *Younger* abstention clearly does not apply. As of now, defendants have not moved to enforce the administrative subpoena in any state court, **nor has any judicial or quasi-judicial tribunal begun proceedings against** the Plaintiff. *Google, Inc. v. Hood*, 822 F.3d at 223 supra citing *Ankenbrandt v. Richards*, 504 U.S. 689, 705, 112 S. Ct. 2206, 119 L. Ed.2d 468 (1992) (holding *Younger* abstention clearly erroneous "[a]bsent any pending proceeding in state tribunals").

*Id.* (emphasis in original).

As such, and by Plaintiff's own concession, Plaintiff's purported cause of action seeking to quash the subpoena is not ripe for adjudication.  Should Defendants eventually seek to enforce or otherwise compel Plaintiff's compliance with the Subpoena, Plaintiff will remain free to challenge the Subpoena at that time—which Defendants concede.  *See* Reply at 4, ECF No 53-4 ("assuming for the sake of argument that Defendants did seek to enforce the Subpoena in the future,

Khan would have notice of such action, [and] an opportunity to object . . . .").  For now, however, Plaintiff's attempt to seek relief from the Subpoena is premature.

## IV.     OTHER GROUNDS FOR DISMISSAL

Defendants also move to dismiss the Amended Complaint on Eleventh Amendment grounds, and for Plaintiff's failure to state a claim.  Given this Court's lack of subject matter jurisdiction over this case—due to Plaintiff's failure to establish Article III standing, as well a case or controversy ripe for judicial review with respect to his claim seeking to quash the Subpoena[11]— this Court need not address Defendants' other arguments for dismissal at this time.  *See Dees v. Zurlo*, 24-cv-1 (MAD), 2024 WL 2291701, at *13 (N.D.N.Y. May 21, 2024) ("there is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed.").

## V.      PLAINTIFF'S PROPOSED ADDITIONAL SUBMISSIONS

On April 24, 2025, Plaintiff filed a letter with the Court seeking leave to submit a "supplemental certification" and additional memorandum of law in support of the Motion for a Preliminary Injunction and in opposition to the Motion to Dismiss.  *See* Pl.'s Letter.  Plaintiff's letter also requested a pre-motion conference to discuss the filing of a possible second amended complaint.  *See id.*  Defendants opposed Plaintiff's requests.  *See* Defs.' Letter.

To summarize, Plaintiff's letter seeks to inform the Court of a recent development. Apparently, Defendants have since placed Plaintiff's name on what Plaintiff calls, "a public branding list."  *See* Pl.'s Letter, Ex. A.  The list in question is a web post from the DOH website entitled "School Vaccination Fraud Awareness."  *See id.*  Under a subheading entitled, "Be aware when reviewing school vaccination records," there is a list of healthcare providers, each

---

[11] Not to mention the Amended Complaint's failure to comply Rule 8.  *See supra* Discussion § I.

accompanied by a warning specific to the particular provider.  *See id.*  Plaintiff is listed among the providers as follows:

> Faiz Khan, MD (Advanced Medicine of Long Island) Currently suspended from using the New York State Immunization Information System as of 5/30/2024. Paper-only records of vaccinations administered after this date from this provider must not be accepted.

*Id.*

Plaintiff asserts that this web post is a "continuous violation" of his due process rights, and that the web post "label[s] and designate[s] the Plaintiff as an individual involved in both criminal and disciplinary conduct of vaccine fraud."  *See id.* at 2.  Plaintiff complains that this "branding" is made without: the due process afforded to him under Public Health Law § 12-a; a formal hearing or determination of misconduct by the State Board of Professional Medicinal Conduct under Public Health Law § 230 and State Administrative Procedure Act §§ 301–401; any trial and criminal conviction of vaccine fraud; and "anything at all short of the unsupported summary official action taken by the state defendants on this web site."  *Id.*  Plaintiff further contends that Defendants "have no statutory authority to maintain this website, to summarily convict and punish medical licensees in such a summary fashion by publication and without due process while restricting Plaintiff's license in the manner stated in the posting."  *Id.*

As a preliminary matter, this Court clarifies that, despite Plaintiff's description, the web post does not state that Plaintiff has been convicted of a crime.  *See generally id.*  As a practical matter, however, this additional submission does not save Plaintiff's claims, as this later development does not impact the Court's original standing analysis.

"[S]tanding is to be determined as of the commencement of the suit."  *Lujan v. Defs.' of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *see Hargrave v. Vermont*, 340 F.3d 27, 34 n.7 (2d Cir. 2003)

("standing determinations must be made on the basis of what was known at the time a suit was initially filed"); *see also Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 337 (S.D.N.Y. 2022) ("It is black-letter law that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" (citation omitted)). While this web post may very well have injured Plaintiff, Plaintiff did not make allegations suggesting that such was a "certainly impending future injury" at the time he filed the Amended Complaint. Accordingly, this Court cannot account for the web post in determining whether Plaintiff has standing to sue, and thus the fact remains that this Court lacks subject matter jurisdiction over this case. Therefore, any supplemental "certification" or memorandum of law that Plaintiff could file regarding this web post would be futile.

Relatedly, as this Court lacks subject matter jurisdiction, Plaintiff should not be granted a premotion conference to discuss the filing of another amended complaint. *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 422 (2d Cir. 2015) ("A court may not permit an action to continue, even where the jurisdictional deficiencies have been subsequently cured, if jurisdiction was lacking at the commencement of a suit" (citations and quotations omitted)); *see id*. (noting that the District Court could not have permitted an amended complaint where there was no valid lawsuit to begin with).

## **CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that the District Court GRANT the Motion to Dismiss, dismiss the Amended Complaint without prejudice, and DENY as moot the Motion for a Preliminary Injunction and Motion to Quash. This Court further respectfully recommends that the District Court deny Plaintiff's request to submit a "supplemental

certification" and additional memorandum of law, as well as Plaintiff's request for a premotion conference regarding the filing of a possible second amended complaint.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, 15-cv-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_/s_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
August 29, 2025.