UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ISADORA GUGGENHEIM,

                Plaintiff,

                                    25-cv-3615 (PKC)

        -against-                        OPINION AND ORDER


JAMES MCDONALD, MD, in his official capacity
as Commissioner of NYS Department of Health;
JOSEPH A. GIOVANNETTI, in his official
capacity as Director of Bureau of
Investigations, NYS Department of Health;
"JOHN DOE" and/or "MARY ROE", the last
two names being fictitious whose identity
is unknown to the Plaintiff, the individual(s)
intended being the director or head officer of
the NYS Department of Health Immunizations
Bureau,

                Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Isadora Guggenheim, a nurse practitioner and registered professional

nurse, brings this action against James McDonald, the Commissioner of the New York State

Department of Health ("DOH"), Joseph Giovannetti, the Director of DOH's Bureau of

Investigations, and a John Doe and/or Mary Roe defendant intended to be the director or head

officer of DOH's Immunizations Bureau, each in their official capacities.  Guggenheim alleges

that defendants violated her due process rights under the Fourteenth Amendment by preventing

her from accessing the State's vaccination database and posting her name on a state-operated

website alleged to be an indicator of vaccination record fraud.  Her claim is brought under 42

U.S.C. § 1983.  Guggenheim moves for a preliminary injunction and defendants move to dismiss

the First Amended Complaint (the "Complaint").  For the reasons below, the motion to dismiss will be granted and the motion for a preliminary injunction will be denied as moot.

BACKGROUND

The following facts are drawn from Guggenheim's Complaint.  (ECF 29.)  The Complaint is verbose, unclear, and contains irrelevant assertions, but the Court distills the following factual allegations relevant to Guggenheim's claims.

Plaintiff Isadora Guggenheim is a licensed nurse practitioner and registered professional nurse.  (Compl't ¶¶ 1, 18.)  During the COVID-19 pandemic, Guggenheim signed up to serve as a designated healthcare provider to administer COVID-19 vaccinations in her offices.  (Id. ¶ 24.)  As required by emergency statutory and regulatory requirements in place at the time, Guggenheim was required to enter COVID vaccination information into the state's centralized database, the New York State Immunization Information System ("NYSIIS").  (Id. ¶ 25.)  While the COVID emergency reporting requirements have since been suspended, New York's Public Health Law still requires that any vaccinations administered to those under the age of 19 be registered in NYSIIS.  (Id.)  See N.Y. Pub. Health Law § 2168(3)(a)(i).

In April 2022, DOH officials inspected Guggenheim's offices and determined that she had stored COVID-19 vaccines using a freezer incapable of achieving the required storage temperature.  (Compl't ¶¶ 32–35.)[1]  Thereafter, DOH served Guggenheim with an administrative subpoena signed by Giovannetti seeking information about Guggenheim's records.  (Id. ¶¶ 44–48.)  DOH officials subsequently informed Guggenheim that data she had entered into NYSIIS contained errors and directed her to rectify those issues.  (Id. ¶ 48.)  Sometime afterwards,

---

[1] The Court notes that there are two paragraphs in the Complaint designated as paragraph 32.  Indeed, the Complaint contains several duplicative and missing paragraph numbers throughout.

Giovannetti informed Guggenheim that DOH would terminate her ability "to change anything that was entered before" in NYSIIS but she "could still have access viewing NYSIIS." (Id. ¶ 50.)

At some point in 2024, Guggenheim learned that certain children she had vaccinated had been barred from attending a public school because the school's nurse could not locate their vaccination status in NYSIIS. (Id. ¶¶ 57–59.) She learned that she had been blocked from accessing NYSIIS since July 2022. (Id. ¶ 52.) Necessarily, this implies that any vaccination of a person under the age of 19 after July 2022 could not have been reported to DOH on NYSIIS, as required. In October 2024, Guggenheim contacted defendant Giovannetti, who informed her that she was under investigation by DOH and that her access to NYSIIS had been blocked. (Id. ¶ 60.)

Guggenheim also discovered that her name had been posted on a state-run webpage entitled "School Vaccination Fraud Awareness" (the "Website"). (Id. ¶¶ 67–68; ECF 29-1.) The webpage states that "[v]accine fraud is serious, and suspected fraud will be thoroughly investigated." (ECF 29-1.) The website contains a list of healthcare providers and directs schools to "[b]e aware when reviewing school vaccination records (these directives may be expanded to include records issued by a provider on any date as investigations continue)." (Id.) Specifically as to Guggenheim, the Website states the following: "Currently suspended from using the New York State Immunization Information System as of 06/29/2022. Paper-only records of vaccinations administered after this date from this provider must not be accepted." (Compl't ¶ 70; ECF 29-1.)

Guggenheim alleges that she was not afforded pre-deprivation notice or an opportunity to be heard before her access to NYSIIS was restricted or her name was posted on

the Website.  She claims that the actions taken against her by DOH violated her due process rights.

Guggenheim's Complaint seeks injunctive relief prohibiting defendants from denying Guggenheim access to NYSIIS and requiring defendants to remove her name from the Website.  (Compl't ¶¶ 120, 122, 125.)  Guggenheim also seeks a declaratory judgment that defendants' actions violated her due process rights.  (Id. ¶ 134.)  Guggenheim has moved for a preliminary injunction.  (ECF 46.)

Defendants oppose the preliminary injunction and have moved to dismiss the Complaint on several bases, including lack of subject matter jurisdiction by reason of sovereign immunity and lack of standing; violations of Rule 8, Fed. R. Civ. P.; and failure to state a claim.

DISCUSSION

I.   Guggenheim's Claim.

In an Order addressing an earlier iteration of the Complaint, plaintiff's counsel was counselled that "a demand for a particular form of relief is not the statement of a claim for relief."  (ECF 28, June 6, 2025 Order.)  Nevertheless, Guggenheim's Complaint alleges four purported claims for relief: (1) "MANDATORY TEMPORARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65;" (2) "PROHIBITIVE PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. PROC. 65;" (3) "INJUNCTION PURSUANT TO 42 U.S.C. §1983;" and (4) "DECLARATORY JUDGMENT UNDER 28 USC § 2201."  (Compl't at 27, 32, 35.)

Requests for injunctions or declaratory judgment are not claims for relief within the meaning of Rule 8(a), Fed. R. Civ. P.  See Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d Cir. 2012) ("Like a preliminary injunction, a declaratory judgment relies on a valid legal predicate."); In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1993) ("The

Declaratory Judgment Act does not . . . provide an independent cause of action."); Chiste v.

Hotels.com L.P., 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) (McMahon, J.) ("Declaratory

judgments and injunctions are remedies, not causes of action.").

The only cause of action that the Court can discern from the Complaint is a claim

made under 42 U.S.C. § 1983.  The Court construes the Complaint to allege that Guggenheim's

procedural due process rights under the Fourteenth Amendment have been violated by state

officials acting under color of state law.  In her submissions to this Court, Guggenheim has

described her claim as asserted under section 1983 and the Court construes the Complaint as

asserting a single cause of action under section 1983, under which she seeks a preliminary

injunction, a permanent injunction and declaratory relief.  (See ECF 39 at 4; ECF 61 at 28–30.)


II.  Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Will Be Denied.

A.  Rule 12(b)(1) Standard.

Defendants, who are sued only in their official capacities, have moved to dismiss

the Complaint for lack of subject matter jurisdiction by reason of the sovereign immunity

recognized in the Eleventh Amendment.  Rule 12(b)(1) permits a defendant to move to dismiss

an action for lack of subject matter jurisdiction.  A Rule 12(b)(1) motion may be either fact-

based or facial.  Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016).  Where, as

here, the motion is directed to the face of the complaint, the court must accept all uncontroverted

allegations as true and draw every reasonable inference in favor of the plaintiff.  Tandon v.

Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).  However, where

"jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues

of fact by reference to evidence outside the pleadings, such as affidavits." Id. (internal quotation marks omitted).

As relevant here, the "doctrine of sovereign immunity is jurisdictional in nature . . . and therefore to prevail, the plaintiff bears the burden" of establishing that her claims are not barred by sovereign immunity. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Furthermore, standing "is a jurisdictional requirement" and "the party invoking federal jurisdiction bears the burden of establishing the elements of Article III standing." Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 74 (2d Cir. 2022) (internal quotation marks omitted).

    B.  Sovereign Immunity Does Not Bar Guggenheim's
        Requests for Injunctive and Declaratory Relief.

        1.  Guggenheim's Requested Relief Is
           Permitted Under Ex parte Young.

The Eleventh Amendment has been construed to mean that "nonconsenting States may not be sued by private individuals in federal court." Bd. of Trs. of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001). However, the "well-known exception to this rule . . . established by the Supreme Court in Ex parte Young and its progeny" permits "suits for prospective relief against an individual acting in his official capacity . . . to end an ongoing violation of a federal law." T.W. v. New York State Board of Law Examiners, 110 F.4th 71, 91 (2d Cir. 2024). Thus, "[i]n determining whether the *Ex parte Young* doctrine applies . . . a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Unkechaug Indian Nation v. Seggos, 126 F.4th 822, 829 (2d Cir. 2025) (quoting W. Mohegan Tribe & Nation v. Orange Cnty., 395 F.3d 18, 21 (2d Cir. 2004) (per curiam)). "[T]he inquiry into

whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." In re Deposit Ins. Agency, 482 F.3d 612, 621 (2d Cir. 2007) (internal quotation marks omitted).

When determining whether requested relief is prospective or retrospective, courts "look to the substance rather than to the form of the relief sought." Vega v. Semple, 963 F.3d 259, 282 (2d Cir. 2020). "[R]elief that is tantamount to an award of damages for a past violation of federal law, even though styled as something else, is barred" but "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment . . . ." Id.; see also Allco Fin. Ltd. v. Roisman, 22-2726, 2023 WL 4571965, at *2 (2d Cir. July 18, 2023) (summary order) ("Prospective relief is defined as relief sought that is not 'retrospective or designed to compensate for a past violation of federal law.'" (quoting In re Deposit Ins. Agency, 482 F.3d at 619)); In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 376 (2d Cir. 2005) (requested relief is prospective when it "does not impose a past liability on the state").

Defendants argue that Guggenheim's claim is barred by the Eleventh Amendment because all of the relief she seeks is retrospective in nature. In particular, defendants assert that the Complaint has failed to plausibly allege that plaintiff's requested injunctions and declaratory relief would remedy any ongoing or future conduct by the defendants and instead would only address defendants' past illegal conduct.

As mentioned, the Complaint seeks three different types of injunctions: a "mandatory temporary injunction," a "prohibitive preliminary injunction," and a "permanent injunction pursuant to 42 U.S.C. § 1983." Although the requested injunctions overlap and are inconsistently formulated in the Complaint,[2] the crux of the injunctive relief Guggenheim seeks

---

[2] For instance, the "mandatory temporary injunction" sought by Guggenheim is described in two different locations in the Complaint. In the second formulation of that injunction, but not the first, the Complaint requests that the Court "direct[] the defendants to affirmatively post on their web site that the defendants are not imposing any

is an order enjoining defendants from "[c]ontinuing to deny the Plaintiff access to NYSIIS" and "from continuously and prospectively maintaining the posting regarding the plaintiff on the [Website]." (Compl't ¶ 125.)

Guggenheim's requested injunctive relief can fairly be characterized as prospective. Guggenheim alleges that her ban from accessing NYSIIS and the directive to schools that they may not accept paper vaccination records from her amounts to an ongoing violation of her procedural due process rights. Guggenheim's requested injunction, if granted, would require DOH to end her suspension from NYSIIS and remove the Website posting. This relief would "bring an end to a present violation of federal law" alleged by Guggenheim. Vega, 963 F.3d at 282. Where, as here, a condition "stem[s] from a past wrong" but "continue[s] to cause constitutional violations," an injunction seeking to end those violations is deemed to be prospective. Seneca Nation v. Hochul, 58 F.4th 664, 671 (2d Cir. 2023). Guggenheim's request for injunctive relief is thus not barred by the Eleventh Amendment.

Guggenheim's requested declaratory relief presents a closer question, but ultimately the Court concludes that Guggenheim's proposed declaratory judgment does not run afoul of the Eleventh Amendment. As with her proposed injunctions, the declaratory judgment Guggenheim asks the Court to render is not well defined and inconsistently articulated in the Complaint. In one place in the Complaint, Guggenheim seeks a judgment "[d]eclaring Defendants' conduct in barring Plaintiff's access to NYSIIS as unconstitutional" and "[d]eclaring the prospective and continuous postings on defendants' official site . . . and further directing school districts to reject Plaintiff's signed written vaccine records as acts which are unconstitutional." (Compl't ¶ 15.) Elsewhere in the Complaint, Guggenheim requests a

---

restriction on the acceptance of vaccine records submitted[] by the Plaintiff." (Contrast Compl't ¶ 12, with id. ¶ 120.)

judgment "declaring defendants' continuous summary action taken against the Plaintiff in restricting her access to NYSIIS[,] . . . defendants' continued actions in maintaining the posting on the DOH site . . . and determination that she is a vaccine fraudster[,] . . . [and] defendants' continued directives given to school officials on the branding site and in writing to reject Plaintiff's signed paper records evidencing vaccinations" as violative of her due process rights. (Id. ¶ 134.)

The Court concludes that these portions of the Complaint, which repeatedly refer to the "continuous" or "continued" actions of the defendants, request declaratory relief of a prospective nature. When, as here, a plaintiff requests "[a] declaration that the status quo constitutes an ongoing violation of federal law," that declaratory relief is properly deemed to be prospective. Seneca Nation, 58 F.4th at 672 n.39.

Nonetheless, the Court acknowledges that "the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* is not as clear cut as the brightness of high noon and the darkness of midnight." In re Dairy Mart, 411 F.3d at 375. An important consideration in determining whether a declaration would have prospective or retroactive effect is whether the requested declaratory relief would result in "a monetary loss [to the state] resulting from a past breach of a legal duty on the part of the defendant state officials." Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 646 (2002) (quoting Edelman v. Jordan, 415 U.S. 651, 668 (1974)). Specifically, where declaratory judgment would be useful "only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed," then the declaration is precluded. Green v. Mansour, 474 U.S. 64, 73 (1985). Thus, where "the declaratory judgment would have a *res judicata* effect as to

- 9 -

liability for damages in a future state court action, thus serving as an end run around the Eleventh Amendment," courts have deemed the declaration to have retroactive effect.  T.W., 110 F.4th at 92.  To defendants, the declaration sought by Guggenheim would in effect declare their past actions unlawful and thus subject the state to monetary liability in a damages action in state court.

The Court nonetheless concludes that, at the motion to dismiss stage, Guggenheim's proposed declaratory judgment clears this bar.  As far as the Court can tell, the Complaint seeks a declaration limited to defendants' "continued" actions, rather than any action taken by defendants in the past.  Indeed, the Supreme Court and Second Circuit generally hold that declaratory relief requested by plaintiffs is barred when the declaration would exclusively address past illegal conduct and not any continuing violation of law.  See Green, 474 U.S. at 73 ("There is no claimed continuing violation of federal law . . ."); T.W., 110 F.4th at 92 ("wholly retrospective, and therefore barred."); Exxon Mobil Corp. v. Healey, 28 F.4th 383, 395 (2d Cir. 2022) ("entirely retrospective"); Clark v. DiNapoli, 510 F. App'x 49, 51 (2d Cir. 2013) (summary order) ("only from past conduct with no plausible threat of future violations"); Ward v. Thomas, 207 F.3d 114, 120 (2d Cir. 2000) ("no claimed continuing violation of federal law or threat of state officials violating the repealed law in the future").  Of course, to the extent that Guggenheim's requested declaratory judgment against McDonald and Giovannetti would "declar[e] that they violated federal law in the past," then that form of declaratory relief would be barred.  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

The Court concludes that insofar as Guggenheim's Complaint seeks prospective relief, the allegations will stand.

2.    The Pennhurst Doctrine Does Not Bar Guggenheim's Claim.

Defendants, invoking the doctrine set out in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984), also argue that Guggenheim's claim is barred under the Eleventh Amendment because they are based on violations of state law.  Under Pennhurst, "sovereign immunity prohibits federal courts from entering injunctions against state officials on the basis of state law, notwithstanding the Ex parte Young exception to sovereign immunity with respect to violations of federal law."  Vega, 963 F.3d at 283.

As discussed above, the Court understands Guggenheim's Complaint to bring a claim under section 1983 seeking relief for a violation of her constitutional rights under the Due Process Clause of the Fourteenth Amendment.  And while the Court agrees that in many places the Complaint appears to allege that defendants violated state law in carrying out their official duties (see, e.g., Compl't ¶¶ 53, 65, 69, 73, 86, 97, 113), Guggenheim concedes that her claim is only that her procedural due process rights under the Fourteenth Amendment were violated.  (ECF 61 at 10, 12, 20.)  Guggenheim further concedes that any claims based on violations of state law would be barred.  (Id. at 10.)  Accordingly, the Court understands the Complaint's references to New York state law to "bolster [her] federal claim," which does not alone preclude her claim under the Eleventh Amendment.  Vega, 963 F.3d at 284 ("[T]he Pennhurst doctrine does not compel dismissal of claims for prospective relief against state officers in their official capacities for alleged violations of federal law simply because the party seeking such relief refers to state law in order to bolster their federal claim.").

Guggenheim's claim is thus not barred by the Pennhurst doctrine.

- 11 -

C. Guggenheim Has Article III Standing.

"Under Article III of the U.S. Constitution, '[t]he judicial Power of the United States' extends only to certain 'Cases' and 'Controversies.'" Lacewell v. Office of Comptroller of Currency, 999 F.3d 130, 141 (2d Cir. 2021) (quoting U.S. Const. art. III §§ 1–2).  "To satisfy the Constitution's 'case-or-controversy requirement,' a plaintiff in federal court 'must establish that they have standing to sue.'"  Id. (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)).  To have standing to bring suit, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

When a plaintiff is seeking prospective relief, such as an injunction or declaratory judgment, she "must show a likelihood that [s]he will be injured in the future."  Carver v. City of New York, 621 F.3d 221, 228 (2d Cir. 2010) (internal quotation marks omitted) (quoting Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004)); see also Connecticut Citizens Def. League, Inc. v. Lamont, 6 F.4th 439, 448 (2d Cir. 2021).  Plaintiff must demonstrate that the future injury is "certainly impending" and "cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought."  Marcavage v. City of New York, 689 F.3d 98, 103 (2d Cir. 2012).

Defendants argue that Guggenheim has failed to plausibly allege that she faces a "certainly impending" future injury.  In particular, they argue that Guggenheim has not plausibly alleged that defendants will engage in any future conduct that will lead to further due process violations.  Defendants also assert any future harm is entirely speculative, because Guggenheim fails to allege that her loss of access to NYSIIS and the Website posting had any effect on her practice.

- 12 -

The Court disagrees.  Guggenheim alleges that the prohibition from using NYSIIS and the directive to schools to not accept vaccination records "restricts Plaintiff's ability to practice nursing through the elimination of her ability to vaccinate patients below 19 years of age and patients of any age who necessitate proof of vaccinations."  (Compl't ¶ 64.)  This allegation implies that Guggenheim intends to continue vaccinating patients but, because she cannot access NYSIIS or submit paper records of such vaccinations, doing so would be a violation of law.  See N.Y. Pub. Health Law § 2168(3)(a)(i) (requiring healthcare providers who administer vaccines to those under the age of 19 to report such vaccinations to DOH).  For standing purposes, this is sufficient.  See Silva v. Farrish, 47 F.4th 78, 88 (2d Cir. 2022).

Defendants' attempt to analogize this case to Khan v. McDonald, 24-cv-4745 (JMA) (ST), 2025 WL 2933168 (E.D.N.Y. Aug. 29, 2025), report and recommendation adopted, 2025 WL 2726607 (E.D.N.Y. Sept. 25, 2025), is unconvincing.  There, as here, DOH prohibited the plaintiff healthcare provider from accessing the NYSIIS system.  Khan, 2025 WL 2933168, at *3–4.  The court concluded that the state's restriction of plaintiff's access to NYSIIS did not confer standing because he failed to allege that loss would cause him future injury.  Id. at *10. But critically, and distinct from this case, the complaint in Khan repeatedly asserted that the plaintiff "does not routinely vaccinate his patients."  Id.  Because the plaintiff did not plausibly allege that he would vaccinate patients in the future, the court concluded "it is implausible that losing NYSIIS access will cause Plaintiff future harm."  Id.  Here, by contrast, Guggenheim has alleged that she continued to vaccinate patients after losing access to NYSIIS and that she intends to continue to do so.  (Compl't ¶¶ 54–56, 64.)  Guggenheim has pled a "likelihood that [s]he will be injured in the future," and thus has standing to bring suit.  Carver, 621 F.3d at 228.

The Court therefore will deny defendants' motion to dismiss premised upon Eleventh Amendment sovereign immunity, the Pennhurst doctrine and lack of Article III standing.

III. The Court Declines to Dismiss the Complaint for Failure to Comply with Rule 8.

Defendants next ask that the Court dismiss the Complaint as violative of Rule 8(a)'s requirement that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Defendants note, correctly, that the Complaint remains excessively long and repetitive, contains extensive legal argumentation, is unclear as to what specific facts supports its claims, and continues to mistake requests for relief as causes of action. Defendants also note that the Court's prior Order catalogued the issues with Guggenheim's initial complaint and warned Guggenheim that failure to comply with Rule 8(a) would result in dismissal with prejudice. (ECF 28.)

Nonetheless, the Court will not dismiss the Complaint on Rule 8 grounds. Guggenheim's Complaint, as amended, is not one "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). As discussed above, the Court is able to discern Guggenheim's section 1983 claim from the Complaint.

Nor will the Court dismiss the Complaint merely because Guggenheim failed to expressly set out her cause of action. See Johnson v. City of Shelby, Miss., 574 U.S. 10, 11 (2014) (per curiam) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd., 655 F. App'x 9, 11–12 (2d Cir. 2016) (summary order) (federal

pleading standards "concern[] the factual allegations a complaint must contain to survive a motion to dismiss" and "do not require [the plaintiff] to identify the substantive legal basis for its claim").

Defendants' motion to dismiss for failure to satisfy the requirements of Rule 8(a) will be denied.

IV. The Court Will Dismiss Guggenheim's Complaint for Failure to State a Claim.

A. Rule 12(b)(6) Standard.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Michael Grecco Productions, Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d Cir. 2024) (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)).

The Court is limited to consideration of the allegations of the complaint but it "is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the

complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted) (quoting

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

> B. Guggenheim Has Failed to State a Section 1983 Claim for
> Violations of Her Procedural Due Process Rights.

To state a claim under section 1983, "a plaintiff must allege that some person

acting under color of state law deprived [her] of a federal right." Ahlers v. Rabinowitz, 684 F.3d

53, 60–61 (2d Cir. 2012) (quoting Washington v. James, 782 F.2d 1134, 1138 (2d Cir. 1986)).

When pleading a section 1983 claim for violation of Fourteenth Amendment procedural due

process rights, a plaintiff must allege "(1) the existence of a property or liberty interest that was

deprived and (2) deprivation of that interest without due process." Radwan v. Manuel, 55 F.4th

101, 123 (2d Cir. 2022) (quoting Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir.

2012)). "Property interests that are protected by the Due Process Clause of the Fourteenth

Amendment . . . are defined by existing rules or understandings that stem from an independent

source such as state law." Spinelli v. City of New York, 579 F.3d 160, 168–69 (2d Cir. 2009)

(internal quotation marks omitted) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Plaintiffs alleging "a property interest in a public benefit . . . must show 'a legitimate claim of

entitlement' to such interest that is grounded in established law." Id. at 169 (quoting Bd. of

Regents, 408 U.S. at 577).

Guggenheim argues that defendants have deprived her of two property interests

without due process: (1) her property interest in her access to NYSIIS and (2) her property

interest in her professional nursing licenses. (Compl't ¶¶ 66, 92; ECF 61 at 12–13.) For the

reasons below, Guggenheim has failed to plausibly allege that defendants deprived her of a

property interest or liberty interest without due process, and thus her section 1983 claim will be

dismissed.

1.  Section 2168 of New York's Public Health Law Does Not Provide
    Guggenheim With a Property Interest in Access to NYSIIS.

When determining whether state law confers a property interest, the Court must "focus initially on the relevant statute, regulation, or contract establishing eligibility for the government benefit at issue." Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991) (quoting Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577, 581 (2d Cir. 1989)). "If the statute, regulation, or contract in issue vests in the state significant discretion over the continued conferral of that benefit, it will be the rare case that the recipient will be able to establish an entitlement to that benefit." Id.; see also Harrington v. Cnty. of Suffolk, 607 F.3d 31, 34 (2d Cir. 2010) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." (quoting Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 756 (2005))); Clubside, Inc. v. Valentin, 468 F.3d 144, 152–53 (2d Cir. 2006) (whether a plaintiff has a property interest in a benefit depends "primarily on the degree of discretion enjoyed by the issuing authority"). By contrast, when "the relevant statutes and regulations meaningfully channel official discretion by mandating a defined administrative outcome," then courts will find a property interest in the government benefit. Handberry v. Thompson, 446 F.3d 335, 353 (2d Cir. 2006) (brackets and internal quotation marks omitted).

Defendants first argue that Guggenheim has no property interest in access to NYSIIS because New York's Public Health Law statute permits DOH officials to regulate access to NYSIIS at their discretion. In particular, defendants point to section 2168 of New York's Public Health Law, which governs the DOH commissioner's implementation and administration of NYSIIS and healthcare providers' use of that system. N.Y. Pub. Health Law § 2168. Section 2168(9) provides that "[t]he commissioner may judge the legitimacy of any request for immunization system information and may refuse access to the statewide immunization

information system based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation." To defendants, this provision confers on DOH discretion to permit access to NYSIIS, which precludes Guggenheim from claiming a property interest in her access to NYSIIS.

The Court agrees. Section 2168(9) expressly provides that the DOH commissioner "may refuse access" to NYSIIS based on the "authenticity" of the request or "credibility" of the user—concepts that are not more specifically defined in the statute—but also based on any "other reasons" that the commissioner may specify under its authority to promulgate regulations under the statute. N.Y. Pub. Health Law § 2168(9) (emphasis added); see also id. § 2168(13) (providing that the DOH commissioner "shall promulgate regulations as necessary to effectuate the provisions of this section"). This is the type of standardless vesting of discretionary authority to confer or deny a benefit that courts typically deem to not create a property interest. See, e.g., Ace Partners, LLC v. Town of E. Hartford, 883 F.3d 190, 197 (2d Cir. 2018) (no property interest when the applicable statute provided that a "license may be revocable for cause, which shall include, but not be limited to, failure to comply with any requirements for licensure specified by the licensing authority"); Clavin v. Cnty. of Orange, 620 F. App'x 45, 48 (2d Cir. 2015) (summary order) (no property interest in license where local law stated that issuing authority "*may* issue" the license (emphasis in original)); Martinez v. Town of Clarkstown, 23-cv-5364 (KMK), 2024 WL 4124717, at *3 (S.D.N.Y. Sept. 9, 2024) (Karas, J.) (declining to recognize a property interest where the statute provided that the issuing entity "*may* issue a permit" and the statute provided "a non-exhaustive list of reasons that a permit could be revoked" (emphasis in original)).

- 18 -

Guggenheim argues that other provisions of section 2168 show that healthcare providers actually have a mandatory right of access to NYSIIS.  Guggenheim points to subsection 2168(8)(c) and its language that "health care providers . . . shall have access" to NYSIIS.  But when that provision is read in its entirety, it is evident that the purpose of subsection 2168(8)(c) is to set out the limited purposes for which healthcare providers may access NYSIIS:

> (c) health care providers . . . shall have access to the statewide immunization information system and the blood lead information in such system only for purposes of submission of information about vaccinations received by a specific registrant, determination of the immunization status of a specific registrant, determination of the blood lead testing status of a specific registrant, submission of the results from a blood lead analysis of a sample obtained from a specific registrant in accordance with paragraph (h) of subdivision two of this section, review of practice coverage, generation of reminder notices, quality improvement and accountability, including professional responsibility proceedings of the office of professional medical conduct and the state education department, and printing a copy of the immunization or lead testing record for the registrant's medical record, for the registrant's parent or guardian, or other person in parental or custodial relation to a child, or for a registrant upon reaching eighteen years of age.

N.Y. Pub. Health Law § 2168(8)(c).  This understanding of subsection 2168(8)(c) is supported by the other subsections of section 2168(8) that enumerate the limited purposes for which other stakeholders may use NYSIIS, including state health officials (subsection 2168(8)(b)); schools, colleges and camps (subsection 2168(8)(d)); and research institutions (subsection 2168(8)(e)).  See United States v. Aleynikov, 676 F.3d 71, 80 (2d Cir. 2012) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989))).  From this context, it is evident that subsection 2168(8)(c) is intended to circumscribe the purposes for which healthcare providers may use NYSIIS, not to guarantee them access to it.

The other provisions of section 2168 to which Guggenheim cites similarly do not support her position.  Subsection 2168(8)(a) states that the DOH "commissioner shall provide a method by which authorized users [including healthcare providers] apply for access to the system."  Subsection 2168(5)(a) requires that "[a]ll health care providers . . . shall submit to the commissioner information about any vaccinee less than nineteen years of age and about each vaccination given after" January 1, 2008.  Subsection 2168(3)(a)(i) states that "[a]ny health care provider who administers any vaccine to a person less than nineteen years of age . . . and immunizations received by a person less than nineteen years of age in the past if not already reported, shall report all such immunizations . . . to the department in a format prescribed by the commissioner within fourteen days of administration of such immunizations."  These provisions merely set out duties for the DOH commissioner in managing NYSIIS and for health care professionals administering vaccinations.  Nothing about these provisions can be read to provide that DOH must give all healthcare professionals unfettered access to NYSIIS.

Accordingly, the Court concludes that section 2168 affords considerable discretion to DOH to refuse access to NYSIIS.  Guggenheim therefore cannot claim a property interest in continued access to that system.

2. Guggenheim's Characterization of Defendants' Actions
as a "De Facto License Restriction" Is Unavailing.

Throughout her Complaint, Guggenheim also alleges that her loss of access to NYSIIS and DOH's posting on the Website directing schools to not accept paper vaccination records from her amount to a "de facto license restriction" of her professional nursing licenses. (Compl't ¶ 64; see also id. ¶¶ 12, 52, 65–66, 92, 96, 99, 110–11, 116, 122, 134–37.)  According to Guggenheim, these restrictions on her nursing licenses were a deprivation of her property interests in those licenses, which could not be effectuated without due process of law.

The Court assumes that Guggenheim has a property interest in her nursing licenses, but Guggenheim cites no authority for the proposition that the actions taken by defendants here amount to a deprivation of that property interest.  Indeed, in each of the cases Guggenheim cites for the proposition that her nursing licenses have been encumbered, the plaintiff's license had either been suspended or revoked or had been threatened with suspension or revocation.  See Barry v. Barchi, 443 U.S. 55, 59–64 (1979) (suspension of horse trainer license); Donk v. Miller, 365 F.3d 159, 163 (2d Cir. 2004) (same); Harris v. Mills, 478 F. Supp. 2d 544, 549 (S.D.N.Y. 2007) (assuming "property interest in [plaintiff's] revoked medical license"); Keney v. Derbyshire, 718 F.2d 352, 353 (10th Cir. 1983) (threat of suspension of medical license).

By contrast, Guggenheim's Complaint repeatedly emphasizes that her nursing licenses are "unrestricted."  (Compl't ¶ 18, see also id. ¶¶ 97, 135.)  The Complaint contains no allegations that Guggenheim's licenses have been suspended or revoked, or that they are under threat of being suspended or revoked.  In fact, the Complaint indicates that Guggenheim has continued to work as a nurse practitioner and registered professional nurse since being barred from accessing NYSIIS.  (E.g., Compl't ¶¶ 1, 18, 64.)

In such circumstances, courts in this Circuit have found that no property interest has been implicated, because the individual claiming the due process violation may still practice their profession.  See Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 176 (2d Cir. 1991) (no property interest in participation in Medicaid program where officials had discretion in terminating such participation and the defendants' actions did "not bear on [plaintiff's] status as a qualified healthcare provider" under the program); Miller v. City of New York, 17-cv-4198 (RJD), 2019 WL 2164100, at *3 (E.D.N.Y. May 10, 2019) (no "de facto" suspension of

- 21 -

equipment operator license where license was never revoked and plaintiff could have continued to work, despite prohibition from operating a specific type of crane); Polito v. City of New York, 15-cv-2301 (ERK) (RML), 2016 WL 3676425, at *4–5 (E.D.N.Y. July 7, 2016) (no deprivation of interest in license to participate in New York special education program where "no formal action has been taken against [plaintiff's] licenses" and plaintiff "was able to continue to use her license"); see also Walker v. Fitzpatrick, 814 F. App'x 620, 623–24 (2d Cir. 2020) (summary order) (administrative bar on participating in criminal court interpreter work, but not civil work, was not a deprivation of a property interest because "a limited restriction on the use of" plaintiff's interpreter certification did not "create[] a harm of constitutional magnitude").  By contrast, in cases where courts in this Circuit have recognized that a plaintiff's property rights in a license were deprived by a "de facto" or "constructive" license revocation, the plaintiff had alleged that they were entirely prevented from working in the profession for which they held the license.  See Mudge v. Zugalla, 13-cv-891, 2014 WL 2453353, at *5 (N.D.N.Y. June 2, 2014) (New York Department of Education employees' acts preventing teacher from working in its schools was "the functional equivalent of a revocation" of plaintiff's teaching license, depriving him of property interest).  But Guggenheim's Complaint alleges that she still practices her profession, albeit with limitations on access to NYSIIS and use of paper verifications of vaccinations for persons under 19 years of age.

Guggenheim's passing citation to New York's Education Law similarly fails to establish that defendants' actions have deprived her of her property interest in her nurse practitioner license.  Specifically, Guggenheim cites to section 6902 of the Education Law, entitled "Definition of practice of nursing," which provides that "[p]rescriptions for drugs, devices and immunizing agents may be issued by a nurse practitioner . . . ."  N.Y. Educ. Law §

6902(3)(a)(ii).  Guggenheim does not provide any support for the proposition that, because a licensed nurse practitioner "may" among other permitted activities issue prescriptions for immunizing agents, any constraint on her ability to document a subset of vaccinations—those administered to patients under 19 years of age—that flows from other statutory provisions amounts to a "de facto restriction" on her nurse practitioner license.

Guggenheim has thus failed to plausibly allege that defendants' actions created a "de facto license restriction" that deprived her of a property interest in her professional nursing licenses.

### 3.    An Article 78 Hearing Was an Adequate Post-Deprivation Remedy.

As discussed, Guggenheim has failed to plausibly allege that defendants deprived her of a property interest in either her access to NYSIIS or her professional nursing licenses.  On that basis alone, Guggenheim's claim fails.  But as an alternative ground for granting the motion to dismiss, the Court concludes that the availability of a post-deprivation remedy dooms Guggenheim's claim.

Ordinarily, due process requires a state to afford persons of "some kind of a hearing" prior to depriving them of a significant property interest.  Chunn v. Amtrak, 916 F.3d 204, 207 (2d Cir. 2019) (quoting Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 299 (1981)).  However, where the deprivation was "random and unauthorized" instead of made pursuant to an established state procedure, a post-deprivation remedy is sufficient to satisfy procedural due process requirements.  Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006).  But "the 'random and unauthorized' exception to the requirement of a pre-deprivation hearing does not apply where the government actor in question is a high-ranking official with 'final authority over significant matters,'" because the state is

deemed to act through its high-level officials.  DiBlasio v. Novello, 344 F.3d 292, 302–03 (2d Cir. 2003) (quoting Burtnieks v. City of New York, 716 F.2d 982, 988 (2d Cir. 1983)).  The Court comfortably concludes that the defendant state officials qualify as high-ranking officials and therefore the random and unauthorized standard does not apply.  See id. at 303 ("The commissioner of the N.Y. D.O.H. is a high-level state official with final authority on many department matters . . . .").

But in DiBlasio, the Second Circuit acknowledged that even in the case of adverse action taken by a high-ranking official, not covered by the "random and unauthorized" standard, there is an exception for bona fide emergency circumstances.  Id. at 304 ("We do not take issue with the proposition that, under certain emergency circumstances, a post-deprivation hearing is all that is required to satisfy due process.").  The physician whose actions were at issue in DiBlasio was a "batch reader" of mammography films who had a low rate of breast cancer detection and whose license to practice medicine was suspended.  Id. at 294–95.  On the record before the Court on an appeal from the grant of a motion to dismiss, the Court concluded that "the issue of whether DiBlasio's alleged misconduct was or was not an emergency, and the necessity of calling the public's attention to DiBlasio's summary suspension in order to address that purported emergency, involves a disputed issue of fact that is inappropriate to consider in the context of a Rule 12(b)(6) motion."  Id. at 304.

Here, the Court need not go further than the four corners of Guggenheim's Complaint to understand the nature of the emergency circumstances prompting state officials to act.  The state's vaccination registry for persons under the age of 19 enabled schools to determine whether a student had received a COVID vaccination.  (Compl't ¶ 84 ("As part of the emergency need of getting information out to the public and identifying the vaccine fraudsters of

the COVID era, the DOH site was born.").)  The Complaint acknowledges that Guggenheim failed to comply with proper procedures related to administering vaccines and preparing vaccination records.  First, there is no dispute that COVID vaccines had to be stored at "minus 80 degrees while Plaintiff only had a freezer that stored the vaccines at minus 25 degrees."  (See id. ¶¶ 32–34.)  This meant that a student, who according to the registry had been properly vaccinated by Guggenheim, may have received a vaccine that was not properly stored.  Second, DOH investigators collected medical records and patient charts from Guggenheim's offices and determined that the data Guggenheim entered into NYSIIS contained errors.  (Id. ¶¶ 47–48.)  Thereafter, her ability to register vaccinations on NYSIIS was suspended in July 2022, although she claims she learned this "at some point in 2024."  (Id. ¶ 52.)  When Guggenheim realized that her access to the registry was blocked, which she thought was related to an issue with her password, she continued to administer vaccines.  (Id. ¶ 54.)  Her bespoke solution to being unable to register vaccinations in NYSIIS was to have the patient "either photograph and or videotape the vaccines and her administration thereof so there would be no question about the administration."  (Id. ¶ 55.)  In one instance recounted in Guggenheim's Complaint, when the vaccination of children of one family who had been vaccinated by plaintiff could not be found in the NYSIIS registry, the children were "thrown out of school and forced to be re-vaccinated against CDC guidelines."  (Id. ¶¶ 57–59.)

These allegations in Guggenheim's own Complaint make it plain that the action allegedly taken by the "high-ranking" state officials in July 2022 to block plaintiff's ability to post entries in the vaccination registry—and to continue that suspension—was made in response to a serious health emergency.  In such circumstances, Guggenheim was entitled only to a post-deprivation hearing regarding her suspension from NYSIIS.  See Hodel, 452 U.S. at 300–01

- 25 -

("Protection of the health and safety of the public is a paramount governmental interest which

justifies summary administrative action.  Indeed, deprivation of property to protect the public

health and safety is one of the oldest examples of permissible summary action." (brackets and

internal quotation marks omitted) (quoting Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594,

599 (1950))); DiBlasio v. Novello, 413 F. App'x 352, 357 (2d Cir. 2011) (summary order)

(noting "the well-recognized principle that due process permits a state to take summary

administrative action without pre-deprivation process, but subject to a prompt post-deprivation

hearing, where such action is needed to protect public health and safety.").

As the Second Circuit has repeatedly held, a hearing pursuant to N.Y. C.P.L.R. §

7801 et seq. (an "Article 78 hearing") "is a perfectly adequate postdeprivation remedy" for due

process purposes.  Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d

877, 881 (2d Cir. 1996); see also Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article

78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process

purposes.").  Moreover, the failure to pursue an Article 78 remedy does not undercut the

meaningful opportunity to challenge the deprivation.  See Anemone v. Metro. Transp. Auth., 629

F.3d 97, 121 (2d Cir. 2011) ("An Article 78 proceeding provides the requisite post-deprivation

process—even if [the plaintiff] failed to pursue it.").  Thus, the availability of an Article 78

hearing to Guggenheim dooms her claim.

Guggenheim's argument that an Article 78 hearing was not available to her lacks

merit.  Specifically, Guggenheim argues that the four-month statute of limitations to initiate an

Article 78 proceeding expired before Guggenheim became aware of her loss of access to

NYSIIS.[3]  But New York courts hold that the statute of limitations for an Article 78 hearing begins to run after the petitioner received notice of the administrative action taken against them. See Vill. of Westbury v. Dep't of Transp., 75 N.Y.2d 62, 72 (1989) ("An article 78 proceeding must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner.  A determination generally becomes binding when the aggrieved party is notified." (internal quotation marks and citation omitted)).  Guggenheim alleges that Giovannetti informed her of her suspension from accessing NYSIIS in October 2024, and that she later discovered the posting about her on the state's Website.  (Compl't ¶¶ 60, 67.)  Guggenheim thereafter had the opportunity to timely initiate a post-deprivation Article 78 hearing.

The availability of a valid post-deprivation remedy, on the allegations of this Complaint, provides an alternative basis for the grant of the motion to dismiss.

### 4.   The Complaint Does Not State a "Stigma Plus" Claim.

Other than her purported property interests in NYSIIS access and her professional nursing licenses, Guggenheim has not pled, and the Court cannot discern, any other property or liberty interest that was implicated by the posting of Guggenheim's name on the "School Vaccination Fraud Awareness" website.  (ECF 29-1.)  However, the Complaint does allege that the posting "suggests that the defendants are branding the Plaintiff as a vaccine fraudster, without any formal due process . . . ."  (Compl't ¶ 69.)  An allegation of a deprivation of a "tangible interest" plus defamation by government officials is characterized as a "stigma plus"

---

[3] See N.Y. C.P.L.R. § 217(1) ("[A] proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents in law or in fact, or after the respondent's refusal, upon the demand of the petitioner or the person whom he represents, to perform its duty . . . .").

claim.  Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010) ("[U]nder limited circumstances, federal constitutional relief is available for defamation committed by government officials" and such "an action can be grounded in 42 U.S.C. § 1983").  Specifically, stigma plus claims are "claim[s] brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process."  DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003).  But Guggenheim has not plausibly alleged a stigma plus claim.

First, the Court notes that stigma plus claims are procedural due process claims premised on the deprivation of a liberty interest.  See Segal v. City of New York, 459 F.3d 207, 213–14 (2d Cir. 2006) (noting that stigma plus claims involve deprivation of "liberty interests"); Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (describing the stigma plus claim as a "§ 1983 liberty interest claim"); Greenwood v. New York, Off. of Mental Health, 163 F.3d 119, 124 (2d Cir. 1998) (stigma plus claims are "liberty interest claims stemming from alleged government defamation").  Guggenheim responded to defendants' argument that she has failed to allege a liberty claim by asserting that she alleged a property claim and that was sufficient.[4]  (ECF 61 at 35–36.)  At no point in her Complaint or in her response to the motion to dismiss does she mention a "stigma plus" claim.

Bypassing Guggenheim's failure to assert a stigma plus claim, such a claim would fail on the facts of this case because of the availability of a prompt post-deprivation Article 78 hearing.  The Second Circuit has repeatedly affirmed that a post-deprivation "name-clearing

---

[4] See ECF 61 at 35 ("To the extent that the defendants contend that the Plaintiff has to show both a deprivation of a property interest and a deprivation of liberty interest to state a claim for procedural due process deprivation the motion must be denied in its entirety. As set forth above, the Plaintiff has already shown that she has a property interest both in her unrestricted professional licenses and in access to NYSIIS."); id. at 36 ("Consequently, whether the Plaintiff is correct or incorrect on the issues of the liberty interest is irrelevant for the purposes of the determination of the motion to dismiss so long as the Plaintiff has shown that she has a property interest in her professional license and in the access to NYSIIS of which she is continuously being deprived without due process.").

hearing" is sufficient due process in the context of a stigma plus claim where only a "tangible interest" and not a property interest is at issue.[5]  A post-deprivation name-clearing hearing "gives the plaintiff an opportunity to hear and answer first-hand any stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation."  Patterson v. City of Utica, 370 F.3d 322, 335 (2d Cir. 2004); see also Segal, 459 F.3d at 214 ("[A] *post-termination* name-clearing hearing is sufficient to protect the sort of liberty interests presented in a stigma-plus claim." (emphasis in original)).  Furthermore, the Circuit has expressly stated that "an Article 78 proceeding provided by New York law is a sufficient post-deprivation remedy, which defeats [a plaintiff's] 'stigma-plus' claim."  McHerron v. Burnt Hills - Ballston Lake Cent. Sch. Dist., 778 F. App'x 54, 55 (2d Cir. 2019) (summary order); see also Guerra v. Jones, 421 F. App'x 15, 19 (2d Cir. 2011) (summary order) (affirming grant of summary judgment in favor of defendant as to plaintiff's stigma plus claim because the plaintiff "had available to him adequate process in the form of a post-deprivation Article 78 hearing in state court").  And indeed, many district courts in this Circuit have held that "Article 78 proceedings . . . [are] adequate post-deprivation procedures and they frequently function as name-clearing hearings."  Piccoli v. Yonkers Bd. of Educ., 08-cv-8344 (CS), 2009 WL 4794130, at *5 (S.D.N.Y. Dec. 11, 2009) (Seibel, J.) (collecting cases) (quoting Walsh v. Suffolk County. Police Dep't, 06-cv-2237 (JFB) (ETB), 2008 WL 1991118, at *14 (E.D.N.Y. May 5, 2008) (Bianco, J.), aff'd, 341 F. App'x 674 (2d Cir. 2009)).

---

[5] The contexts in which the Second Circuit has held that post-deprivation name-clearing hearings satisfy due process in relation to stigma plus claims were cases in which the plaintiffs alleged that they suffered a deprivation of a tangible interest, such as termination of government employment, rather than the deprivation of a property interest. See, e.g., Segal v. City of New York, 459 F.3d 207, 218 (2d Cir. 2006); Guerra v. Jones, 421 F. App'x 15, 19 (2d Cir. 2011) (summary order).  When a stigma plus claim is premised on the deprivation of a property interest, a post-deprivation name-clearing proceeding is sufficient for due process purposes when the deprivation was "random and unauthorized" or otherwise when pre-deprivation process was impossible.  See Mudge, 2014 WL 2453353, at *8.

The Court can discern no reason why an Article 78 hearing would not have been sufficient for name-clearing purposes here.  Guggenheim's reputational harm flows from her name being on a list of healthcare providers whose records may not be used as proof of vaccinations by schools.  Were Guggenheim's name taken off of that list and her access to NYSIIS restored, then her reputation would be repaired.  An Article 78 hearing would provide Guggenheim with the opportunity to submit affidavits and other proof of her claim and, if there is a triable issue of fact presented, to obtain a trial.  Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881.  And again, the fact that Guggenheim may not have availed herself of an Article 78 hearing does not impair the adequacy of that post-deprivation opportunity to be heard.

Therefore, to the extent Guggenheim is asserting a stigma plus claim related to the posting of her name on the state's "School Vaccination Fraud Awareness" Website, she has failed to plausibly state such a claim.

V.  Guggenheim's Motion for a Preliminary Injunction Will Be Denied as Moot.

Because the Court will dismiss Guggenheim's single cause of action for failure to state a claim, Guggenheim's motion for a preliminary injunction will be denied as moot.

CONCLUSION.

Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.  Defendants' motion to dismiss for failure to state a claim is GRANTED.  Guggenheim's motion for a preliminary injunction is DENIED as moot.  The motions at ECF 46 & 56 should be terminated.

- 31 -

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        April 20, 2026